**2023-2138**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

NORTH STAR TECHNOLOGY INTERNATIONAL LTD.,
NORTH STAR TECHNOLOGY LTD.,
*Plaintiffs-Appellants,*

v.

LATHAM POOL PRODUCTS, INC.,
*Defendant-Appellee.*

---

On Appeal from the United States District Court for the Eastern District of Tennessee, Case No. 3:19-cv-120-KAC-DCP

---

# BRIEF OF APPELLANTS NORTH STAR TECHNOLOGY INTERNATIONAL LTD., NORTH STAR TECHNOLOGY LTD.

---

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Ave., NW
Suite 1025
Washington, D.C. 20006
(202) 995-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

Perry J. Saidman
Perry Saidman, LLC
3 Island Ave.
Suite. 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.com

Wade R. Orr
Michael J. Bradford
Luedeka Neely Group, P.C.
900 S. Gay Street, Suite 1504
Knoxville, Tennessee 37902
worr@luedeka.com

## CERTIFICATE OF INTEREST

Counsel for Appellants certifies the following:

1. The full name of every party or amicus represented by me is:

   **North Star Technology International Ltd., and North Star Technology Ltd.**

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**North Star Technology International Ltd., and North Star Technology Ltd.**

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   **None**

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   **Perry J. Saidman, Perry Saidman, LLC**

   **Matthew J. Dowd, Robert J. Scheffel,**
   **Dowd Scheffel PLLC;**

   **Wade R. Orr, Michael J. Bradford**
   **Luedeka Neely Group P.C.; and**

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. See Fed. Cir. R. 47.4(a)(5) and 47.5(b). (The parties should attach continuation pages as necessary):

   **None**

6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6):

   **None**

Date: October 16, 2023

*<u>/s/ Perry J. Saidman</u>*
Perry J. Saidman
*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... viii

STATEMENT OF RELATED CASES .......... xi

STATEMENT OF JURISDICTION .......... 1

STATEMENT OF THE ISSUES .......... 1

STATEMENT OF THE CASE .......... 2

I. Procedural History .......... 2

II. Leisure Pools, North Star, and Their Innovative Designs for Fiberglass Pools .......... 2

III. North Star's D'966 Patent .......... 5

IV. Leisure's Largest Competitor (Latham Pool Products) Traditionally Focused On "Very Curved" Designs But Then Quickly Brought A Similar Design To Market .......... 6

A. Latham Pools Had "Very Curved" "Features" .......... 6

B. In 2018, Latham [redacted] Brought to Market a Non-Curvy Pool, the "Corinthian 16" .......... 10

C. Latham Introduced Corinthian 16 to Compete with Leisure and Undercut Leisure's Sales to a Major Distributor, Boyer Mountain .......... 11

D. Confusion Between The Pinnacle and the Corinthian 16 .......... 13

V. North Star Sues Latham For Infringing The D'966 Patent, And Latham Then Moved For Summary Judgment .......... 14

A. Latham Did Not Offer Any Consumer-Based Testimony About Potential Infringement .......... 15

B. Latham Offered Expert Testimony, And The Expert Agreed that Consumer Inducement Could Show Infringement ........ 17

VI. The District Court Ruled That A Reasonable Homeowner Could View The Designs As Only "Sufficiently Distinct" ........ 18

A. The Court's Decision Focused on the Individual Elements of the Patented and Accused Infringing Designs, Without Full Evaluating the Designs as a Whole ........ 19

SUMMARY OF THE ARGUMENT ........ 21

ARGUMENT ........ 23

I. Standard Of Review ........ 23

II. Granting Summary Judgment Was Erroneous Because Genuine Disputes Of Material Facts Existed About An Ordinary Observer's View Of Infringement ........ 24

A. Infringement of a Design Patent ........ 24

B. The District Court's Analysis was Driven by Latham's Inaccurate Recitation of Design Patent Law ........ 26

C. The District Court Improperly Focused on Individual Elements of the Claimed Design Rather Than Its Overall Appearance ........ 30

1. This Court's Precedent Requires a District Court to Focus on The Overall Design ........ 30

2. The District Court's Analysis Focused on the Minor Differences of Individual Features, Not the Designs as a Whole ........ 32

3. The Court's "Plainly Dissimilar" and "Sufficiently Distinct" Conditions Do Not Properly Consider the Overall Impact of Major Features in Common ........ 35

4. The Approach in Gorham Further Undermines the District Court's "Sufficiently Distinct" Conclusion ....... 39

5. The District Court Made Improper and Unreasonable Inferences About What An Ordinary Observer Would Think ................................................ 42

D. A Proper Consideration of the Prior Art Further Supports Reversal ............................................................... 45

1. The Proper Analysis Using Prior Art Requires a Three-Way Comparison ................................................ 46

2. A Reasonable Jury Could Find Infringement When Assessing the Design in the "Context of The Prior Art" ........................................................................ 47

3. Further Precedent of This Court Supports Reversal..... 55

III. The District Court Erred By Excluding And Not Considering The Lay Opinion Testimony Of David Pain ................................. 57

A. Lay Opinion Testimony Under Rule 701 ............................. 57

B. Pain's Testimony is Proper Lay Opinion from an Experienced Professional, and Proper Consideration of His Testimony Should Have Precluded Summary Judgment.......................................................................... 60

IV. Conclusion ........................................................................... 64

ADDENDUM

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
439 F.3d 1365 (Fed. Cir. 2006) .......... 28, 31

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 33, 42

*Arminak & Assocs., Inc. v. Saint Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) .......... 25

*B&G Plastics, Inc. v. E. Creative Indus., Inc.*,
No. 98 Civ. 0084, 2004 WL 307276
(S.D.N.Y. Feb. 18, 2004) .......... 63

*Braun, Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) .......... 30

*Columbia Sportswear North America v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) .......... 29, 31

*Contessa Food Products, Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) .......... 25, 26

*Crocs, Inc. v. Int'l Trade Comm'n*,
598 F.3d 1294 (Fed. Cir. 2010) .......... 25, 30

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) .......... *passim*

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) .......... 30, 31

*Hardyman v. Norfolk & Western Railway Co.*,
243 F.3d 255 (6th Cir. 2000) .......... 24

*Gorham Co. v. White*,
81 U.S. 511 (1871)............................................................................*passim*

*In re Mann*,
861 F.2d 1581 (Fed. Cir. 1988)............................................................ 28

*International Seaway Trading Corp. v. Walgreens Corp.*,
589 F.3d 1233 (Fed. Cir. 2009)............................................................ 32

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)................................................................... 58

*Litton Sys., Inc. v. Whirlpool Corp.*,
728 F.2d 1423 (Fed. Cir. 1984)...................................................... 29, 46

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986).......................................................................... 23, 42

*Medforms, Inc. v. Healthcare Management Solutions, Inc.*,
290 F.3d 98 (2d Cir. 2002)................................................................... 62

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
998 F.2d 985 (Fed. Cir. 1993).............................................................. 29

*Petrolite Corp. v. Baker Hughes Inc.*,
96 F.3d 1423 (Fed. Cir. 1996)............................................................... 23

*Revision Military, Inc. v. Balboa Mfg. Co.*,
700 F.3d 524 (Fed. Cir. 2012)......................................................... 55, 56

*Richardson v. Stanley Works, Inc.*,
597 F.3d 1288, 1295 (Fed. Cir. 2010).................................................. 15

*Spalding & Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*,
No. 5:90CV0651, 1991 WL 148127 (N.D. Ohio, Mar. 1, 1991) .......... 27

*Verizon Servs. Corp. v. Cox Fibernet Virginia Inc.*,
602 F.3d 1325 (Fed. Cir. 2010)...................................................... 23, 24

*United States v. Faulkenberry*,
614 F.3d 573 (6th Cir. 2010)......................................................... 59, 62

*United States v. Freeman*,
730 F.3d 590 (6th Cir. 2013) .......... 57

*United States v. Munoz-Franco*,
487 F.3d 25 (1st Cir. 2007) .......... 62

*United States v. Rea*,
958 F.2d 1206 (2d Cir. 1992) .......... 58

*United States v. Valdez-Reyes*,
165 Fed. App'x 387 (6th Cir. 2006) .......... 59

*United States v. White*,
492 F.3d 380 (6th Cir. 2007) .......... 59

**Statutes**

28 U.S.C. § 1295(a)(1) .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1361 .......... 1

**Rules**

Fed. R. Civ. P. 56(a) .......... 23

Fed. R. Evid. 701 .......... *passim*

Fed. R. Evid. 704(a) .......... 58

## STATEMENT OF RELATED CASES

Under Federal Circuit Rule 47.5, counsel for Appellants:

1. There are no, nor have there been any other, appeals in or from this same action or proceeding in the lower tribunal before this or any other appellate court.

2. Counsel is unaware of any case that will directly affect or be directly affected by the present appeal.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1295(a)(1) because the appeal is from a final decision arising under an Act of Congress relating to patents. The district court had subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1367.

Final judgment was entered on June 6, 2023. Appx0001. Appellants timely filed their notice of appeal on July 6, 2023. Appx1792-1793.

## STATEMENT OF THE ISSUES

1. Whether, under the current legal analysis for design patent infringement, there was a genuine dispute of material fact that should have precluded the district court from granting summary judgment of no infringement.

2. Whether the district court abused its discretion when granting the defendant's motion to strike portions of the patent owner's declaration, which was submitted in opposition to the summary judgment motion.

# STATEMENT OF THE CASE

## I. Procedural History

North Star Technology International Limited and North Star Technology Limited (together, "North Star") filed its complaint on April 11, 2019, for infringement of its U.S. Patent No. D791,966 (the D'966 patent) in the United States District Court for the Eastern District of Tennessee. Appx0045-0052. On July 30, 2019, North Star filed its amended complaint. Appx0072-0081. On August 20, 2019, Defendant Latham Pool Products, Inc. ("Latham") filed its answer and counterclaims to the amended complaint. Appx0109-0137.

On September 8, 2020, Latham filed a motion for summary judgment of non-infringement and supporting memorandum. Appx0528-0557. A hearing was held by the district court on Latham's motion for summary judgment on September 16, 2021. Appx1697. Almost two years later, on June 6, 2023, the district court granted the motion. Appx0002-0019. This appeal follows.

## II. Leisure Pools, North Star, and Their Innovative Designs for Fiberglass Pools

The fiberglass pool market is a competitive marketplace. Unlike concrete-based in-ground pools, fiberglass pools are installed from one-

piece pool shells that are pre-built in a factory from a mold and shipped to a location where it is installed by a dealer/installer. Appx__. The pool shells can be designed and manufactured in a multitude of forms, include those shown below (which are just a few examples present in the record).




Appx1258.

As a leading innovator in pool design, North Star licenses its patents to a group of world-wide companies that is commercially known as "Leisure Pools." Appx1002 (¶ 2); Appx0615-0616. Leisure Pools has two U.S.-based entities: Leisure Pools and Spas Manufacturing North America Inc. and Leisure Pools and Spas Distribution North America Inc. *Id.*

(¶ 3). The former manufactures the fiberglass pools shells, and the latter distributes and sells the pool shells in the United States. Appx1003 (¶ 4).[1] Leisure Pools also offers direct sales to customers or otherwise matches customers to dealers located in the vicinity of the customer. Appx0616. Through the network of independent dealers and direct sales, North Star's pool products are available throughout the contiguous United States. *Id.*

The president and CEO of Leisure Pools is David J. Pain. Appx1002; Appx1591. Pain has been in the business of selling fiberglass pool shells for over twenty years. Appx1002 (¶ 2). With that experience, he has grown to be "extremely knowledgeable as to the thought process" of "a purchaser or potential purchaser of fiberglass pool sheets (i.e., home-owner)." *Id.*

---

[1] The Appellants in this case are North Star North Star Technology International Limited and North Star Technology Limited (collectively "North Star"). Appx0073 (¶¶ 4-5). As the collective entity that holds the intellectual property for Leisure Pools, North Star brought the patent infringement action against the accused infringer. *Id.* North Star is the owner of ten design patents for pool designs and considers itself to be a trendsetter in fiberglass pool design.

## III. North Star's D'966 Patent

In 2015, Leisure Pools began offering for sale several new fiberglass pool shells designed and developed by North Star. Appx1004 (¶ 12). One model is the "The Pinnacle." *Id.*; Appx0616-0617. The Pinnacle quickly became Leisure Pools' best-selling model. Appx1004 (¶ 12). The Pinnacle model corresponds to the pool design covered by the D'966 Patent. Appx1005 (¶ 15); Appx0616.

The D'966 Patent was issued on July 11, 2017, and it claims "[t]he ornamental design for a swimming pool, as shown and described." Appx0595. The swimming pool shown and described in the D'966 Patent is a one-piece pool shell, as shown in the eight figures in the patent, two of which are shown below, providing a perspective view and a top view.

| **Figure 1** | **Figure 6** |
|---|---|
|  FIG. 1 |  FIG. 6 |

Appx0023; Appx0027.

During the litigation, North Star provided the following description of its claimed design:

> [W]ith respect to the '966 Patent, the overall rectangular shape with a full width tanning ledge in the shape of a rectangle at one end of the pool that is perpendicular to the longer sides of the pool, two full width rectangular steps leading to a gradually sloping deep end, a deep end that is sloping in depth but otherwise rectangular, and generally rectangular benches in the corners of the deep ends extending lengthwise along a portion of the side of the pool are each ornamental features particularly in combination with each other.

Appx0618.

## IV. Leisure's Largest Competitor (Latham Pool Products) Traditionally Focused On "Very Curved" Designs But Then Quickly Brought A Similar Design To Market

### A. Latham Pools Had "Very Curved" "Features"

Leisure's largest competitor in the fiberglass-pool space is a U.S.-based company. Appx1003 (¶ 8). While Latham is a larger company than Leisure in terms of overall business, Latham (like Leisure Pools) uses dealerships to sell its pool products. Appx1021 (26:1-5).

Latham has its own business strategy for developing and producing pools. In strategizing for potential products, Latham "look[s] at [their] offering and ensure[s] that [they are] meeting [their] homeowner demand in certain markets." Appx1019 (18:4-6). The "homeowner demand" is derived from "solicit[ing] feedback through [Latham's] [s]ales [t]eam"

because the sales team "stay[s] close to their customers." Appx1020 (25:10-15).

Latham's former Director of Fiberglass Michael Fox explained that Latham bases its designs off existing homeowner demand that they are seeing in the market, rather than trying to predict new trends.

> Q: Are you ever trying to predict new trends?
>
> …
>
> A: No, I – I believe we – we design based off our homeowner demand…So we – we take what we're seeing out in the data that we collect at Latham as to what homeowners want, and we develop our models. We just elicit feedback from our customers.
>
> Q: So you're looking at existing demands?
>
> A: We look at trends that we've seen over a short period of time and project out whether we think that will continue into the future.

Appx1023 (36:20-37:11).

During the proceeding, a Latham explained that Latham "work[s] to keep [their] style very—[their] features very curved." Appx1020 (22:23-23:1). He further explained: "If you look at several of our models[,] our in-pool features, ledges, benches, steps, have a very curved feature." *Id.* (23:2-4). Along these lines, in designing new pool-shell models, Latham typically made "slight modifications to fit . . . homeowner demand,"

but would generally keep new models within the "Latham kind of branded style." *Id.* (22:7-18).

Latham's "very curved" style is showcased in numerous Latham pools that have been sold and marketed. *See* Appx1108. While Latham certainly designed rectangular pools, its focus was on designs having more flowing lines and less symmetry. For instance, a catalog from one of Latham's dealers (Viking) showed several different models that Latham was offering through its Viking catalog;




Appx0921.

There were also advertisements focused on incorporating a tanning element in pool designs and overall installations. *See* Appx__. For

instance, the following marketing material shows a distinctive curved tanning ledge fitted adjacent to the pool.




Appx0930.

Two additional examples of Latham's typical pool designs are shown below.

| **Latham's Barcelona** | **Latham's Olympia** |
|---|---|
|  |  |

Appx1108.

### B. In 2018, Latham [redacted] Brought to Market a Non-Curvy Pool, the "Corinthian 16"

In 2018, Latham changed its approach. Appx1004-1005 (¶ 13). Based on the evidence of record, Latham decided to [redacted] bring to market a pool design that was very similar to Leisure's successful The Pinnacle. Appx1009; Appx1124. In general, Latham's development of a new pool product [redacted] Appx1025. In other words, for a Latham pool that would be introduced in, *e.g.*, 2017, "the development process usually started [redacted]." Appx1025.

[redacted]

| **North Star's D'966 Patent (Figure 6)** |
|---|
| <br>FIG. 6 |
| **Latham's Corinthian 16** |
|  |

Appx0027; Appx0772.

### C. Latham Introduced Corinthian 16 to Compete with Leisure and Undercut Leisure's Sales to a Major Distributor, Boyer Mountain

Latham's development of its Corinthian 16 stemmed from the demand Latham was seeing for Leisure's The Pinnacle model. Appx1009 (¶ 6); Appx1114. In particular, Boyer Mountain Door and Pool ("Boyer Mountain") is a Latham fiberglass pool dealer/installer based in the Pacific Northwest. Appx1008-1009 (¶ 4). Boyer Mountain has long claimed

to be Washington State's "#1 Viking Pool dealer" (Viking being a Latham pool brand). *Id.*; Appx1109.

Prior to 2018, whether contractually or informally, Boyer Mountain exclusively sold and installed Viking Pools. Appx1009 (¶ 5); Appx1111. In or around February 2018, Boyer Mountain ended its exclusive relationship with Latham and Viking Pools by also becoming a non-exclusive Leisure dealer. Appx0104-0105 (¶ 13). Shortly thereafter, Boyer Mountain started purchasing pool shells designed by Leisure, including primarily The Pinnacle. *Id.* Through 2018, Boyer Mountain also heavily promoted their offering of Leisure's The Pinnacle model on Boyer Mountain's social media accounts while emphasizing the large rectangular tanning ledge of the Pinnacle. Appx1009 (¶ 6); Appx1134.

Soon after, Boyer Mountain started promoting Leisure's Pinnacle model. Despite Latham already having its Barcelona and Olympia models with incorporated tanning ledges in its pool line-up, *see* Appx1011 (¶15); Appx1250, [redacted], Appx1009 (¶ 7); Appx1123. As noted above, Latham's [redacted] of its

Corinthian 16 [redacted] Appx1025 (45:2-6).

[redacted]

As a result of Latham's development and subsequent offering of its Corinthian 16, Boyer Mountain stopped ordering The Pinnacle from Leisure in or about June 2018. Appx1004-1005 (¶ 13). [redacted] Appx1010 (¶ 9); Appx1132. [redacted] Appx1010 (¶ 10); Appx1134.

### D. Confusion Between The Pinnacle and the Corinthian 16

In March 2018, Boyer Mountain posted to its Instagram account a drawing of Leisure's Pinnacle model taken from Leisure's marketing

materials. Appx1318-1323. Boyer Mountain's Instagram post did not identify the specific pool model in the post. *Id.*




Appx1322.

Later, sometime in July 2020, an Instagram user ("katielynnpearce") noticed Boyer Mountain's post and asked information about the pool. *Id.* Specifically, the user asked, "Which pool is this??" *Id.* In response, Boyer Mountain responded by mistakenly identifying the pool as Latham's Corinthian. *Id.*

## V. North Star Sues Latham For Infringing The D'966 Patent, And Latham Then Moved For Summary Judgment

Given the similarity between Latham's new Corinthian 16 pool and The Pinnacle, North Star (as the patent holder) brought suit seeking relief for infringement of its patented design. Appx0045; Appx0072.

Latham counterclaimed seeking a declaration of non-infringement of the D'966 patent. Appx0198-0205. North Star amended its complaint, and then Latham later filed a motion for summary judgment of the same. Appx0528.

### A. Latham Did Not Offer Any Consumer-Based Testimony About Potential Infringement

Latham's motion for summary judgment did not rely on any evidence directly connected to an ordinary observer, *i.e.*, the average homeowner who might be a purchaser of the fiberglass pool shells. *See* Appx0531-0557. Latham's arguments were premised on bypassing the ordinary observer standard to mainly discuss differences between the two designs. *See* Appx0543.

Latham did recognize that the party moving for summary judgment of noninfringement "'must establish that an ordinary observer, would be deceived into believing that the accused product is the same as the patented design.'" Appx0543 (quoting *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010)). Nonetheless, Latham did not include any evidence of a homeowner's perspective, opting to discuss only design similarity and prior art. *See* Appx0543-0555.

Latham offered no such evidence or analysis to address how an average homeowner would perceive The Pinnacle and the Corinthian 16 designs. *See* Appx0543-0555. Instead, Latham's motion targeted a one-to-one comparison of shapes and measurements of four features—the tanning ledge, the steps, the bench, and the safety ledge—without ever considering an average homeowner's perspective of the overall design or appearance. *See* Appx0544-0550.

For example, Latham argued this conclusion on the width of the steps:

> In the D'966 Patent, the top step is significantly wider than the bottom step, whereas the steps in the Corinthian 16 are the same size. (SUF 21, 22). The undisputed evidence shows these differences would be recognizable to the ordinary observer. (SUF 23, 24).

Appx0547. Latham further contended, in conclusory fashion, the individual components of the designs are "plainly dissimilar":

> [T]he deep end benches in the Corinthian 16 are plainly dissimilar from those in the D'966 Patent, and would be readily apparent to the ordinary observer as distinguishing the designs.

Appx0548.

### B. Latham Offered Expert Testimony, And The Expert Agreed that Consumer Inducement Could Show Infringement

During the litigation, Latham offered the declaration from Harold Ray Phillips Jr. Appx0263-0361. Phillips agreed that the infringement analysis is performed from the perspective of the ordinary observer, *i.e.*, "the viewpoint of the person who is the ordinary purchaser of the article charged to be an infringement." Appx0268 (¶ 30). Even so, Phillips did not cite or include any evidence about homeowners, any testimony or statements from homeowners, either directly (such as interviewing homeowners) or indirectly (such as indicia on what a homeowner would purchase). Appx0264-0330.

The Phillips declaration also agreed that "two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." Appx0268 (¶ 25). Phillips did not, however, address this point in his declaration. Phillips also did not address or dispute the evidence regarding Boyer Mountain.

North Star moved to exclude Phillips's testimony (1) under Federal Rule of Evidence 702 as irrelevant, unreliable, and not helpful to the jury

because Phillips is not an ordinary observer, and (2) under Rule 403 for undue prejudice in allowing the expert to opine on the ordinary observer analysis." Appx0250; Appx1131. North Star's opposition to Phillips's testimony was rooted in the fact that an expert cannot testify to the "ordinary observer" standard—the perspective of a homeowner seeking to install a pool. North Star further noted how "'Phillips isolate[d] features of the pool designs that he believes to be different (while generally ignoring similarities and failing to analyze the appearance of the designs as a whole).'" Appx1332 (quoting Appx0251).

The magistrate judge granted the motion to exclude Phillips's legal conclusions "because they supplant the jury's role by simply instructing the jury how to rule." *Id.* ("Accordingly, the Court excludes Phillips's ultimate conclusions as they are not helpful under Rule 702."). The court allowed his other testimony because "Phillips has experience working with the ordinary observer." and his factual testimony on infringement is helpful to the jury." Appx1615.

## VI. The District Court Ruled That A Reasonable Homeowner Could View The Designs As Only "Sufficiently Distinct"

The district court granted summary judgment of noninfringement. Appx0001-0019. It did so without the aid of any expert testimony, and it

did so only after striking portions of the declaration of the owner of Leisure Pools. Appx0003-0004.

### A. The Court's Decision Focused on the Individual Elements of the Patented and Accused Infringing Designs, Without Full Evaluating the Designs as a Whole

The district court concluded that Latham was entitled to summary judgment of non-infringement "because to the ordinary observer," the "overall ornamental appearance" was "sufficiently distinct from and plainly dissimilar to the D'966 Patent." Appx0014 (quotations omitted). The district court's analysis focused entirely on a perceived, visual difference, between the "angular" and "curved" features of the D'966 patent and the Corinthian 16 pool, respectively. Appx0015.

The district court gave four bases for "individual design features" that "work[ed] in concert to create a substantially different overall appearance." *Id.* Only two—the shapes of the full-width entry step and the deep-end benches—had any relation to the district court's articulated rationale of rectangular versus curved design. Appx0015-0017. The other two—the varying length of the steps and the location and depth of the safety ledge—were not discussed with respect to angular or curved orientation. Appx0016-0018. Only the safety ledge was considered "as a

design feature to improve overall flow of the design elements of the pool so it looks good." Appx0017 (quotations omitted).

The district court found "that prominent ornamental elements of the two designs differ," while making mention of North Star's argument that these differences are insignificant. Appx0018. The court invoked the ordinary observer test for the first time in its analysis, concluding that "[n]o 'ordinary observer'—a homeowner considering purchasing a swimming pool for their home—would mistake the angular D'966 Patent design with the curved Corinthian 16 design." *Id.*

The district court placed significant weight on its overview of prior art made of record in the proceeding. Appx0019; Appx0006-0009. The court found "[e]ach of the pertinent design elements included in the D'966 Patent and Corinthian 16—from the entry steps to the deep end benches—existed before Plaintiffs filed the D'966 Patent." *Id.* The court then concluded that no reasonable juror could conclude that the Corinthian 16 is "substantially similar" to the D'966 patent. Appx0019.

This appeal follows.

## SUMMARY OF THE ARGUMENT

Summary judgment was erroneous because, in view of the evidence presented, a reasonable factfinder did not have to conclude that the D'966 design and the Corinthian 16 design were "sufficiently distinct" and "plainly dissimilar." The district court's ruling

Latham rested its summary judgment motion on discrete and minor differences between the claimed design and the accused infringing design. For Latham, the mere fact that there were slight differences was sufficient, in its view, to prevent this case from going to a jury, and the district court erroneously agreed.

The district court's analysis rests on a deficient analysis. First, the district court unduly focused on individual, minor differences between the designs. Second, the court did not give proper weight to the major similarities between the design of the D'966 patent and the accused infringing Corinthian 16. More fundamentally, the court's focus on comparing individual elements led it to overlook the primary consideration—the designs as a whole. Under a proper analysis, an ordinary observer—a homeowner looking to purchase a pool—could reasonably conclude that the designs were not sufficient distinct or plainly dissimilar.

The court's analysis also went astray by not properly considering the prior art, particular given that the overall design impressions were very similar. If the court had performed proper three-way comparisons—comparing the D"966 design, the accused infringing Corinthian design, and the closest prior art design—then it would have been clear that a conclusion of infringement was not unreasonable, and therefore summary judgment was improper.

The error of granting summary judgment is further highlighted by the district court's improper discounting of the evidence of possible or likely consumer confusion. Instead of viewing such evidence in the light most favorable to the moving party—here, North Star—the district court made inferences against the patent owner. That, too, is reversible error.

Finally, the district court abused its discretion by excluding certain parts of the testimony of North Star's president. His full testimony was admissible, either as factual testimony within his personal knowledge or lay opinion testimony under Federal Rule of Evidence 701.

## ARGUMENT

### I. Standard Of Review

The Federal Circuit reviews a district court's grant of summary judgment *de novo*. *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425 (Fed. Cir. 1996). Summary judgment is appropriate if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show the district court that no genuine issue of material fact exists, viewing all evidence in the light most favorable to the nonmoving party, and drawing all justifiable inferences in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

When reviewing a court's decision to exclude testimony, we apply the law of the regional circuit. *Verizon Servs. Corp. v. Cox Fibernet Va.,*

*Inc.,* 602 F. 3d 1325, 1331 (Fed. Cir. 2010). In the Sixth Circuit, a court's decision striking testimony of a witness is reviewed for an abuse of discretion. *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 258 (6th Cir. 2000).

## II. Granting Summary Judgment Was Erroneous Because Genuine Disputes Of Material Facts Existed About An Ordinary Observer's View Of Infringement

The grant of summary judgment was erroneous. When viewing the evidence in the light most favorable to North Star and making all reasonable inferences in its favor, summary judgment should not have been granted. A reasonable fact finder could conclude that, in the eyes of an ordinary observer, *i.e.*, a typical homeowner, Latham's Corinthian 16 pool infringes the D'966 patent.

### A. Infringement of a Design Patent

Whether a product design infringes a patented design is assessed from the perspective of the ordinary observer. *Gorham Co. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc) (establishing the "ordinary observer" test as the sole test for determining whether a design patent has been infringed).

The ordinary observer test provides that, "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528. Importantly, the "ordinary observer" is not an expert but an observer "of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." *Gorham*, 81 U.S. at 528.

More specifically, "the ordinary observer is a person who is either a purchaser of, or sufficiently interested in, the item that displays the patented designs and who has the capability of making a reasonably discerning decision when observing the accused item's design whether the accused item is substantially the same as the item claimed in the design patent." *Arminak & Assocs., Inc. v. Saint Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007).

Just as importantly, "[t]he ordinary observer test applies to the patented design in its entirety, as it is claimed." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *accord Contessa Food*

*Products, Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1377 (Fed. Cir. 2002) ("What is controlling is the appearance of the design as a whole in comparison to the accused product." (citations omitted)).

As explained in further detail below, the district court's infringement analysis was fundamentally flawed because it focused almost entirely on the individual elements of the claimed and accused designs, with little if any consideration of the designs as a whole. The district court's approach would lead to routine dissection of remarkably similar designs, and it would encourage infringers to copy designs that would confuse the ordinary consumer. Moreover, the district court's approach supplants the jury's factfinding role as the ordinary observer, with the judge applying a more discerning expert-like perspective, in contravention of Supreme Court precedent. *See Gorham*, 81 U.S. at 528 ("Experts, therefore, are not the persons to be deceived.").

### B. The District Court's Analysis was Driven by Latham's Inaccurate Recitation of Design Patent Law

The district court's analysis was also led astray by Latham's inaccurate recitation of design patent law. In its briefing for summary judgment, Latham purported to summarize several applicable aspects of design patent law, but Latham's summary was not accurate and may also

have been a cause of the district court's decision to dissect the design into its component parts.

As one example, relying on an unpublished district court decision, Latham contended that "[c]ases involving design patents 'are relatively simple and the failure to grant summary judgment when otherwise appropriate would be an absurd waste of time.'" Appx0539 (quoting *Spalding & Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*, No. 5:90CV0651, 1991 WL 148127, at *3 (N.D. Ohio, Mar. 1, 1991)). To be sure, some design-patent cases are not as technical as utility patent cases involving complex computer-security algorithms or monoclonal antibody technology. But that does not mean that this Court's precedent supports disposing of cases through summary judgment to supposedly avoid "an absurd waste of time" merely because the inventive subject matter is thought to be "relatively simple."[2]

[2] Also overlooked by Latham was that the district court in *Spalding* proceeded to deny the defendant's motion for summary judgment of non-infringement. 1991 WL 148127, at *19-21. Recognizing that the designs at issue had "many different features" and "many similarities as well," the trial court could not say, as a matter of law. that an ordinary observer would not mistake the two products. *Id.* Thus, to the extent relevant, *Spalding* countenanced the denial of Latham's summary judgment motion.

This Court has repeatedly explained "that conclusions about reasonable jurors are difficult to make on an issue of this factual dimension." *See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006) (citing *Bernhardt, L.L.C. v. Collezione Europa USA, Inc.*, 386 F.3d 1371, 1383 (Fed. Cir. 2004) ("Both the ordinary observer and point of novelty tests are factual inquiries that are undertaken by the fact finder during the infringement stage of proceedings, after the claim has been construed by the court.")).

Latham also emphasized its view that "[d]esign patents have almost no scope." Appx0539 (quoting *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)). *Mann*, of course, is a two-page opinion about whether the experimental-use exception applied to ornamental designs, in light of the USPTO's rejection of the claimed design as being on public display more than one year before the application was filed. *Mann* was not addressing the scope of the design patent vis-à-vis an infringement analysis as perceived by the ordinary observer.

Indeed, and contrary to Latham's suggestions to the district court, this Court has explained that "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a

finding of infringement." *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993); *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir. 1984).

Nor did Latham cite one of the more relevant, recent cases from this Court: *Columbia Sportswear North America v. Seirus Innovative Accessories, Inc*. 942 F.3d 1119 (Fed. Cir. 2019). The holding of *Columbia Sportswear* is particularly relevant here and underscores why the district court's thin analysis does not support summary judgment. As explained below, Latham had failed to establish that no reasonable juror could find infringement under the ordinary observer test.

As in *Columbia*, the lower court here made a finding of fact over a disputed factual record. The court erred, and its determination of non-infringement should be reversed and remanded. A reasonable jury, if presented with the above evidence, could readily find in favor of North Star.

### C. The District Court Improperly Focused on Individual Elements of the Claimed Design Rather Than Its Overall Appearance

The ruling on summary judgment was fundamentally flawed because it trained its sights on individual components of the patented and accused designs, rather than comparing the designs as a whole.

#### 1. This Court's Precedent Requires a District Court to Focus on The Overall Design

This Court has always emphasized that it is the overall appearance of a patented design that controls, not the appearance of individual features. The district court's analysis overlooked this settled approach to design-patent infringement.

As this Court has explained, "[t]he ordinary observer test applies to the patented design in its entirety, as it is claimed." *Crocs, Inc.*, 598 F.3d at 1304 (citing *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992)). Accordingly, "[d]ifferences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1336 (Fed. Cir. 2015).

For this reason, this Court has regularly reversed district court rulings when the district court's analysis took an improper myopic approach

by analyzing individual design elements. For instance, in *Amini Innovation*, 439 F.3d at 1372, the Court deemed that such an incorrect legal analysis is a reversible "procedural error." The Court noted specifically that "the trial court mistakenly analyzed each element separately instead of analyzing the design as a whole from the perspective of an ordinary observer." *Id.*; *see Ethicon Endo-Surgery*, 796 F.3d at 1335 ("An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error.").

A recent example of this analytical error was on full display in *Columbia Sportswear*, 942 F.3d at 1131. There, this Court concluded that "the district court's piecemeal approach, considering only if design elements independently affect the overall visual impression that the designs are similar, is at odds with our case law requiring the fact-finder to analyze the design as a whole." *Id.* This Court reemphasized that "[a]n ordinary observer is deceived by an infringing design as a result of 'similarities in the overall design, not of similarities in ornamental features considered in isolation.'" *Id.* (quoting *Amini Innovation*, 439 F.3d at 1371).

In sum, "[t]he mandated overall comparison [between a patented design and an accused design] is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another." *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1243 (Fed. Cir. 2009).

#### 2. The District Court's Analysis Focused on the Minor Differences of Individual Features, Not the Designs as a Whole

Driven by a hyperfocus on individual structural elements, the district court's decision ruled that the two designs were "sufficiently distinct." Appx0014. The ruling was erroneous because it dissected the individual elements of the patented and accused design.

First, the court looked to several YouTube videos and, in doing so, highlighted only snippets of views within the videos. Appx0006-0009. The court's analysis also relied on descriptions of individual features and images that showed only portions of prior art swimming pools and did not compare the prior art pools as a whole.

> As one example, the district court noted that "[a]YouTube video published by "Master Pools Guild" on August 4, 2013 … shows a rectangular pool with a rectangular tanning ledge.

Appx0006. The court's recitation of prior-art videos continued with its explaining of individual elements of the designs shown in the videos.

> Before January 28, 2016, rectangular swimming pools with a rectangular tanning ledge and rectangular steps were also publicly available.[3] *Id.*
>
> And the record reveals that a design for a rectangular pool with a rectangular tanning ledge and deep end benches was also publicly available before Plaintiffs filed their patent. *Id.* at 7.
>
> Some of defendant's own [prior art] pools featured rectangular shapes, tanning ledges, steps, and deep end benches. In fact, as shown below, two of Defendant's prior swimming pool designs featured similar deep end bench and safety ledge designs as the Corinthian 16. *Id.* at 8.

Appx0006-0009.

The images accompanying these statements showed only isolated features of the prior art pools, not their overall appearance. Appx0006-0009. Comparing only portions of the prior art to the D'966 claimed design is clear error.

Second, instead of considering the design as a whole, the Court focused on the differences between individual elements.

---

[3] This prior-art "rectangular" tanning ledge actually includes curved corners.

The trial court focused its attention on comparing details of four relatively minor elements of the D'966 design and the Corinthian 16: (1) the entry steps to the tanning ledge (the D'966 design's full-width entry step versus the Corinthian 16's small corner entry steps); (2) the steps leading from the tanning ledge to the pool (the D'966 design having steps "of two different lengths" while the Corinthian 16's steps are "equal in length"); (3) the benches in the deep end of the pool (the D'966 design having "rectangular benches with smaller rectangular steps stacked on top," the Corinthian 16 having "benches [which are] curved with no steps"); and (4) the location and depth of the safety ledges (the D'966 design extending "around the perimeter of the pool from the top of the main pool entry steps" while the Corinthian 16 has a safety ledge "positioned deeper in the pool"). Appx0015-0018. The trial court erroneously characterized such differences as "prominent" and differed "significantly."

These differences on which the district court focused are relatively minor details. When the design is viewed as a whole, most would be hardly noticeable to average homeowners looking to purchase a pool among the varied types of designs that exist in the marketplace, and there is no evidence of record establishing that the ordinary observer

would even notice these minor differences when comparing the overall appearances of the two designs. Equally important for purposes of this appeal, the minor differences are not the type that can establish a lack of material disputes of fact precluding summary judgment, particularly when compared with the strong overall commonality between the two designs.

### 3. The Court's "Plainly Dissimilar" and "Sufficiently Distinct" Conditions Do Not Properly Consider the Overall Impact of Major Features in Common

More importantly, the district court did not compare several major visual features of the two designs that are present in both designs. Indeed, the lower court identified only four features that the patented and accused designs had in common: "Both designs consist of a roughly rectangular pool with a tanning ledge, full-width stairs, and deep end benches." Appx0015. But that truncated characterization failed to note all common visual features, and it likewise failed to consider the weight to be afforded to significant features in common.

The following relatively major visual features are common to both the patented and accused designs, and those visual features in combination create overall appearances that are substantially the same:

(1) both the patented and accused designs have a large rectangular tanning ledge extending across the full width of the pool;

(2) both the patented and accused designs have two linear rectangular steps leading from the tanning ledge to the shallow end of the pool, both linear steps extending the full width of the pool;

(3) both the patented and accused designs have long, thin substantially rectangular benches in opposite corners of the deep end of the pool;

(4) both the patented and accused designs having the same general proportions of the tanning ledges, linear steps, and rectangular benches;

(5) both the patented and accused designs have a bottom wall that has a gradual slope beginning at the two linear rectangular steps and continuing to the opposite deep end; and

(6) both the patented and accused designs are longitudinally symmetrical with respect to the above elements (1) – (5); in other words, both pool designs have the same appearance from both sides.

When these major visual features are viewed in combination, it would be entirely reasonable for an ordinary observer to conclude that the two designs—viewed as a whole—are substantially the same in their overall visual impression. Had the district court properly compared the common features of the claimed design and accused design—as opposed to placing undue emphasis on the minor differences—the court would

have concluded that a reasonable jury could have found infringement, and therefore Latham's motion should have been denied.

The district court's wayward "plainly dissimilar" conclusion is further underscored by considering the primary case on which the court relied. *See* Appx0014; Appx0015; Appx0018. When concluding that the D'966 design (covering The Pinnacle) was "plainly dissimilar," the trial court's primary case was *High Point Design LLC v. Buyer's Direct, Inc.*, 621 Fed. App'x 632 (Fed. Cir. 2015). But even a cursory review of the facts of that non-precedential case show that it offers little, if any, support for denying a jury trial in the present case.

In *High Point Design*, the patented design covered the ornamental appearance of a slipper. *Id.* at 641. The accused infringing product was a slipper called the "Fuzzy Babba." *Id.* This Court affirmed summary judgment of no infringement, *id.*, and a visual comparison of the patent design and the accused design shows how it was not a close case.




*Id.*

The Court began summarizing the significant differences between the overall shapes and appearances. "The Fuzzy Babba design appears soft and formless, whereas the claimed design appears structured and formed." *Id.* In the context of the overall comparison, the Court then noted how the differences in specific elements of the design, including the Fuzzy Babba's "relatively smooth, downward slope from the rear toward the front area," which contrasted with the "relatively defined, curved opening that is lower in the middle and higher at the edges" for the patented design." *Id.* Significant differences in the profiles and the soles also distinguished "the overall visual effect of the two designs." *Id.*

The above summary further emphasizes how the district court's summary judgment ruling is incorrect. While *High Point Design* was

correctly decided in view of the substantial differences between the overall appearances of the patented design and the accused design, the case in no way supports a ruling of non-infringement. If anything, *High Point Design* further illustrates how the district court's analysis is too narrowly focused on the minor differences between smaller, individual elements as opposed to comparing "the overall visual effect of the two designs."

#### 4. The Approach in Gorham Further Undermines the District Court's "Sufficiently Distinct" Conclusion

The Supreme Court's seminal design patent opinion of *Gorham v. White,* 81 U.S. 511 (1871), established the correct analytical framework for assessing design-patent infringement. Despite *Gorham*'s clear focus on reviewing the overall appearance (and not being swayed by minor ornamental differences), the district court's analysis failed to stay true to *Gorham*.

Consideration of the facts in *Gorham* provide relevant and useful context for assessing the present appeal. Gorham's patented design is shown on the left and the two White designs are shown in the middle and on the right (as excerpted from the Court's opinion):




81 U.S. at 521.

In conducting its analysis, the Supreme Court identified the many features and elements of the designs at issue. Even though the Court saw some differences in the ornamental designs, the Court nonetheless found infringement. For instance, the Court noted that, "[a]t the upper part of the handle, immediately above the point where the broader part

widens from the stem with a rounded shoulder, while the external lines of both designs are first concave, and then gradually become convex, the degree of concavity is greater in the White design." *Id.* at 529. The Court also noted differences in the bead designs, the scroll designs, and thickness of the inner line, as well as "other smaller differences." *Id.*

Even with those differences, the Court focused on the relevant questions: "[I]s the effect of the whole design substantially the same?" *Id.* at 530. Posited more specifically, the Court asked: "Is the adornment in the White design used instrumentally to produce an appearance, a distinct device, or does it work the same result in the same way, and is it, therefore, a colorable evasion of the prior patent, amounting at most to a mere equivalent?" *Id.* at 530. By doing so, the Court concluded infringement, despite the numerous differences.

The contrast between the Supreme Court's approach in *Gorham* and the district court's analysis in this case is stark—so much so that, had the district court applied its approach to the dispute in *Gorham*, the ornamental designs for the infringing silverware would almost certainly have been deemed "sufficiently distinct" and therefore non-infringing. Of course, the Supreme Court's thorough analysis in *Gorham* prevents such

an outcome. Despite *Gorham*'s guidance to remain trained on the overall appearance (as opposed to being unduly influenced by minor design differences), the district court here did just that, as the opinion reads as if the court took a magnifying glass to each minor difference between the patented design and the infringing Corinthian 16 design.

#### 5. The District Court Made Improper and Unreasonable Inferences About What An Ordinary Observer Would Think

On summary judgment, all reasonable inferences must be made in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus.*, 475 U.S. at 587. Here, all reasonable inferences should have been made in favor of North Star. Despite the settled law, the district court made general inferences against North Star, and that is reversible error.

In footnote six of the trial court's opinion, the court erroneously dismissed any value to the evidence that the Boyer Mountain had confused Leisure Pools' "The Pinnacle" model with Latham's Corinthian 16. Appx0018. The only way the trial court did so was by making every possible inference against North Star, which was improper.

First, the evidence of confusion speaks directly to the standard set forth in *Gorham*. There, the Supreme Court explained: "We hold, therefore, that if in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

Second, the court incorrectly dismissed the evidentiary value of the social media posts. With respect to the Instagram post about The Pinnacle model, the court irrelevantly noted that "there is no evidence that this post was made to intentionally mislead consumers." Appx0019. But the intent that motivated the post has no bearing on whether the post is evidence that Boyer Mountain and homeowners—both probative of the ordinary consumer—considered the designs to be similar enough such that the Corinthian 16 might infringe.

Similarly, the trial court made the wrong inference that "Boyer Mountain is not representative of the 'ordinary observer.'" *Id.* Boyer Mountain undoubtedly and regularly interacts with homeowners looking to purchase pools. How Boyer Mountain conveys information about pool

design can be probative of how homeowners might understand that information. At a minimum, and at the summary judgment stage, that is the correct inference to make. If Latham wants to establish otherwise, it can do so during trial.

In fact, other evidence of possible confusion was discovered during the litigation. Latham produced a photoshopped image of The Pinnacle model. Appx1008-1012. Boyer Mountain had posted an original version of the photo to both its Instagram and Facebook accounts on April 13, 2018. *Id.* The social media posts explicitly identified the pool as "[Boyer Mountain's] new Leisure Pinnacle [that] is the perfect pool for those looking for a tanning ledge." *Id.* Boyer Mountain's posts were made shortly before Latham beginning its development of the Corinthian 16 pool.

<table>
<tr><th>Original Photo as Posted to Boyer Mountain's Instagram Account (Ex. 15)</th><th>Photoshopped Image Produced by Latham (Ex. 14)</th></tr>
<tr><td>
</td><td></td></tr>
</table>

Appx1008-1012.

The photoshopped image was not only produced by Latham in this litigation, Latham originally identified the photo in response to North Star's interrogatory requests as a document from which responsive information may be determined with respect to Latham's "process of conception, design, reduction to practice, selection for commercialization, and/or development of the designs of the [Corinthian 16]." Appx1008-1012.

Latham's own expert in this litigation identified the photoshopped image as a "[p]hotograph[] of the Corinthian 16 Pool" that he considered in forming his opinions. Appx1011.

All of this evidence strongly suggests that Latham and Latham's own expert considered the designs to be so similar such that they were not always able to distinguish between the two. At a minimum, based on this evidence, it is more than reasonable to infer confusion, and thus genuine disputes about these material facts existed, which should have precluded summary judgment.

### D. A Proper Consideration of the Prior Art Further Supports Reversal

The district court's grant of summary judgment also exhibits an incorrect consideration or analysis of the prior art. Had the district court properly considered the prior art in the infringement analysis, it would

have ruled that Latham had failed to show that no reasonable jury could find infringement.

#### 1. The Proper Analysis Using Prior Art Requires a Three-Way Comparison

The district court's analysis further fails to heed this Court's analytical guidance in *Egyptian Goddess*.[4] There, this Court held that the *Gorham* test is the sole test for design patent infringement. *Egyptian*, 543 F.3d at 678. The Court's ruling also re-injected a degree of objectivity that was arguably provided by the now-rejected point-of-novelty test. Specifically, the Court required that the similarity between the patented and accused designs be evaluated "in the context of the prior art." *Egyptian Goddess*, 543 F.3d at 676.

The overwhelming emphasis throughout *Egyptian Goddess* is that comparing the patented and accused designs must be done in view of the prior art. Without such a comparison, a trier of fact lacks the proper frame of reference in assessing the minor differences that exist in almost every design patent case that is litigated. A prior-art-based comparison

[4] In *Egyptian Goddess*, this Court abolished the "point of novelty" test, which had required that, to prove infringement, the patented design's point of novelty must be found in the accused design. *See, e.g.*, *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984).

provides a degree of objectivity that guides the infringement determinations in a better way than as compared to the point-of-novelty test.

### 2. A Reasonable Jury Could Find Infringement When Assessing the Design in the "Context of The Prior Art"

When one applies a proper three-way comparison using the patented design, the accused design, and the closest prior-art design, the only reasonable conclusion is that summary judgment was erroneous. The following three-way comparisons demonstrate that a reasonable juror could conclude that Latham's Corinthian 16 pool infringes the D'966 patent.

Below are four three-way comparisons which further exemplify why summary judgment was incorrect here. Each comparison includes the patented design (the D'966 patent covering The Pinnacle), the accused design (Corinthian 16), and one of four closest prior-art references. The comparisons illustrate how, when viewed as a complete design (as opposed to being dissected into individual components), it would be entirely reasonable for an ordinary observer to view Latham's pool design as infringing. Indeed, Latham's pool design appears much more similar in

overall appearance to the patented design as compared to any of the closest prior art.

The first comparison shows the patented design and the accused infringing design as compared to Latham's own St. Thomas design.

| **D'966 Patented Design** | **Accused Design: Corinthian 16** | **Prior Art: St. Thomas** |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Appx0023-0029; Appx0768-0774; Appx0973-0975.

As is evident, the prior-art St. Thomas pool lacks a major visual feature shared by the patented and accused designs: a large rectangular tanning ledge. It also lacks other features that are common to the D'966 design and the Corinthian 16: The two linear rectangular steps leading

from the tanning ledge to the shallow end of the pool that span the full width of the pool. Instead, the St. Thomas pool includes diagonal steps in one corner of the shallow end of the pool. Similarly, the bottom of the St. Thomas pool does not have a gradual slope; instead, it has a slope in the shallow end but the other end is quite deep and not sloped. The St. Thomas pool is not longitudinally symmetrical, as are both the D'966 design and the Corinthian 16. The bottom line: An ordinary observer could view the D'966 and Corinthian 16 designs as being much more similar to each other than either is to the St. Thomas prior art.

The next comparison is based on Latham's Olympia pool. The left image again shows the D'966 patented design, the middle shows the accused Corinthian 16 design, and the right column is the prior-art Olympia design.[5]

[5] Note that the image of the Olympia design is rotated 180 degrees, as compared to the other two is shown reversed. This is merely an artefact of the record and does not affect the comparison.

| D'966 Patented Design | Accused Design: Corinthian 16 | Prior Art: Olympia Pool |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Appx0023-0029; Appx0768-0774; Appx1108.

Again, the three-way comparison provides a clear indication that a close prior-art design (the Olympia) lacks major visual features shared by the patented and accused designs. The prior-art Olympia design does not have the large, rectangular tanning ledge. It instead employs a large series of steps in one corner that are noticeably curvilinear (which are more similar to Latham's traditional "very curvy" designs). The other corner has much smaller steps, also having curved front edges. Both sets of steps terminate at the bottom of the shallow end of the pool. The

Olympia lacks the two linear rectangular steps leading from the tanning ledge to the shallow end of the pool that extend across the full width of the pool—features that are present in both the D'966 design and the Corinthian 16. Similarly, the Olympia pool is not longitudinally symmetrical. This -three-way comparison provides another example in which an ordinary observer could see how the D'966 and Corinthian 16 designs are much more similar to each other and in fact not "sufficiently distinct."

The next three-way comparison uses the prior-art Barcelona pool (on the right) with the D'966 patented design and Latham's accused infringing Corinthian 16.[6]

[6] The first two images of the Barcelona are reverse images compared to the images of the patented and accused design. The Barcelona images were the best available from the record.

| **D'966 Patented Design** | **Accused Design: Corinthian 16** | **Prior Art: Barcelona Pool** |
|---|---|---|
|  FIG 7 |  |  |
|  FIG 6 |  |  |
|  FIG 2 |  |  |

Appx0023-0029; Appx0768-0774; Appx1108.

Here, the three-way comparison illustrates how the Corinthian 16 is nearly identical to the D'966 design when both are compared to the Barcelona design. The Barcelona design lacks the large rectangular tanning ledge, the rectangular steps extending the full width of the pool, and the longitudinal symmetry. Appx1108. These features are all common to the patented and accused infringing designs. Additionally, the Barcelona's entry steps are significantly curved, as are its steps at the pool's deep end.

Once again, the patented and accused designs share the six major features noted above and, when comparing the overall appearance, are

much more similar in design to each other than either is to the Barcelona prior art design. This three-way comparison again confirms that the ordinary homeowner could reasonably view the Corinthian 16 as infringing the D'966 patent.

The last three-way comparison uses the prior-art Barrier Reef's Outback design.

| **D'966 Patented Design** | **Accused Design: Corinthian 16** | **Prior Art: Barrier Reef Outback** |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  | |

Appx0023-0029; Appx0768-0774; Appx0143-0144.

Here, while The Barrier Reef design includes a tanning ledge, the three-way comparison shows how that component of the overall design creates a much different visual appearance as compared to the same

tanning-ledge component in the patented and accused designs. Appx0143-0144. Further, Barrier Reef's steps from the tanning ledge to the pool's shallow end are at the sides of the tanning ledge near the pool's mid-length, rather than extending across the full width. The benches at the deep end also appear considerably different than the benches in both the patented and accused designs—or at least a homeowner may conclude so. Taken together, a reasonable fact finder could view the overall appearances of the patented and accused designs as being highly similar when compared to the overall appearance than to the Barrier Reef prior art.

Working through the above three-way comparisons demonstrates the value of the analytical framework and the increased objectivity that it adds to the infringement analysis. Every design-patent infringement analysis will involve some subjectivity, but, to have reasonable certainty and uniformity in design-patent law, the infringement analysis must maximize objectivity as much as is permitted under current precedent. As emphasized in *Egyptian Goddess*, the prior art provides the correct frame of reference for assessing if the patented and accused designs are

"substantially similar" in *overall* appearance, as viewed by an ordinary observer. 543 F.3d at 678.

Importantly, the three-way comparison refutes the district court's finding that the patented and accused designs are "sufficiently distinct." The district court's opinion does not provide any meaningful three-way comparison. It does not have a single side-by-side comparison of the D'966 design, the Corinthian 16 design, and a prior art design. Instead, the court comparing only bits and pieces of prior-art designs to support its incorrect conclusion that, as a matter of law, a reasonable factfinder would have to see the patented and accused designs as "sufficiently distinct."

### 3. Further Precedent of This Court Supports Reversal

Since *Egyptian Goddess*, the Court has regularly refused infringement when the patented and accused infringing designs are considered fully in the context of the prior art. These examples further support reversal of the trial court's grant of summary judgment.

For instance, in *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524 (Fed. Cir. 2012), the district court refused to consider the prior art in determining the likelihood of proving infringement (in the context of a

preliminary injunction) on the basis that the designs were sufficiently distinct. On appeal, this Court reversed and remanded. "Although individual features may indeed serve in assessing the 'impact on the overall appearance,'" the Court explained, "it is often helpful to refer to any prior art with which the ordinary observer would reasonably be familiar" when trying to determine if "minor differences between specific features would be recognized as distinguishing the designs." *Id.* at 527. Accordingly, because the district court had failed to consider the prior art because the district court thought it was "not a particularly close case," this Court reversed and ordered that the trial court to apply the "the design-as-a-whole criterion" in view of the prior art. *Id.*

The same should apply here. A proper three-way comparison targeted to the overall appearance of the most relevant prior art shows how the Corinthian 16 is more similar to the D'966 design than to any of the pre-existing pool designs. With that comparison—and buttressed by the list of major features in common—a reasonable jury could easily reach a finding of infringement, even with the minor design differences noted by the district court. A reasonable ordinary observer—when applying the correct analysis—could have concluded that the Corinthian 16 design is

not sufficiently distinct from the D'966 patent design. That reasonable possibility of an infringement finding is enough to preclude summary judgement.

## III. The District Court Erred By Excluding And Not Considering The Lay Opinion Testimony Of David Pain

The district court's grant of summary judgment is also in error because it rests on the court's erroneous exclusion of proffered testimony of the CEO of Leisure Pools, David Pain. *See* Appx1697. The court struck certain paragraphs (Paragraphs 15-22) from his declaration, but doing so was an abuse of discretion. The stricken paragraphs constituted either factual testimony based on Pain's personal knowledge or proper lay opinion testimony, permissible under Rule 701.

### A. Lay Opinion Testimony Under Rule 701

Under the rules of evidence, "[a] witness may testify based on opinion, as opposed to testifying to facts of which he has direct knowledge, under two circumstances: as a lay person under Rule 701 or as an expert under Rule 702." *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013).

Further, lay opinion testimony does not become inadmissible for the mere reason that such testimony may bear on an ultimate issue in the

case. Fed. R. Evid. 704(a); *see United States v. Rea*, 958 F.2d 1206, 1214-15 (2d Cir. 1992) ("Since neither Rule 701 nor Rule 704(a) limits the subject matter of lay opinion testimony, there is no theoretical prohibition against allowing lay witnesses to give their opinions as to [the ultimate issue in the case].").

The Advisory Committee notes provide further guidance on the scope of permissible lay opinion testimony. "For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701, adv. Committee notes (2000). Citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993), the Advisory Committee explained that there is "no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business." *Id.* Lay opinion testimony can be admissible "not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.*

The Sixth Circuit has similarly explained the distinction between lay testimony (under Rule 701) and expert testimony (under 702). "Lay testimony 'results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.'" *United States v. Faulkenberry*, 614 F.3d 573, 588 (6th Cir. 2010) (quoting *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007)). "Thus, a lay witness may testify, for example, that a footprint in snow looked like someone had slipped, or that a substance appeared to be blood[,] but cannot testify that skull trauma caused the bruises on a victim's face." *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (internal quotation marks and citation omitted).

"In applying Rule 701, 'the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.'" *Id.* (citing *United States v. Valdez-Reyes*, 165 Fed. App'x 387, 392 (6th Cir. 2006)).

### B. Pain's Testimony is Proper Lay Opinion from an Experienced Professional, and Proper Consideration of His Testimony Should Have Precluded Summary Judgment

The district court struck several paragraphs of the Pain Declaration. Each of the stricken paragraphs constituted acceptable lay opinion testimony based on Pain's "particularized knowledge that [he] has by virtue of his . . . position in the business." Fed. R. Evid. 701, adv. Committee notes (2000). When that additional testimony is properly considered, it is a further reason why the grant of summary judgment was in error.

The district court struck paragraphs 15-22 of Pain's declaration. For ease of reference, those paragraphs are reproduced below in full.

> ¶ 15: "The most visually dominant/significant features of the pool design of the D'966 Patent is the combination of (1) the large, rectangular, full-width tanning ledge; (2) two full width steps from the tanning ledge to the shallow end; (3) a constant slope running from the steps to the deep end; (4) 'I-shaped' / rectangular benches in opposite corners of the deep end; and (5) each of those features incorporated into an overall rectangular pool shell. The shape, size, and positioning of each of these features gives the pool shell of the D'966 Patent a unique appearance, particularly from the top and side views."

> ¶ 16: "Given the similarities between the dominant/significant features of the Corinthian 16 and the design of the D'966 Patent, both pools would be considered to create the same overall distinctive look when compared in their entireties by an ordinary observer."

¶ 17: "I understand that Latham asserts that its curved entry steps to the Corinthian 16 creates a distinct visual impression when compared to the D'966 Patent. I strongly disagree. The entry steps of the Corinthian 16 would not be readily apparent to an ordinary observer because they are tucked into the corners and their positioning/size is minimized in appearance when compared to the large tanning ledge."

¶ 18: "I am not aware of any homeowners ever recognizing or mentioning the Pinnacle's top step adjacent the ledge having a greater width than the second step."

¶ 19: "In comparison, I also note that the deep end benches of the design of the D'966 Patent also includes a slight curvature as perfect 90-degree corners are not possible when designing fiberglass pool shells given certain manufacturing limitations."

¶ 20: "The steps [on the deep end benches of the D'966 Patent] are also tucked into the deep end corners of the pool…Further, the steps are largely functional in that they provide an access point to the benches while being necessarily limited in size and shape based on the size and shape of the much larger benches."

¶ 21: "I understand that Latham asserts that the different location and size of the safety ledge distinguishes the appearance of the pools. I strongly disagree. In this regard, I am not aware of any homeowners ever recognizing or mentioning the appearance of Pinnacle's safety ledge as this is a purely functional feature (provide support to structure and a safety ledge for children). In fact, safety ledges are generally designed to be discreet. Further, it is my experience that the vast majority of homeowners are not even aware of the safety ledge until the pool shell is delivered and installed (i.e., after purchasing decision has been made). Even if the ordinary observer was aware of the feature prior to purchasing the pool, the chosen height of the ledge (Leisure's Pinnacle) or a foot ledge (Latham's Corinthian 16)."

> ¶ 22: "The ribs shown on the outside of the drawings of the Corinthian 16 used by Latham in its Memorandum serve an entirely functional purpose of providing additional support to the pool shell. Virtually all fiberglass pool shells now include these types of ribs, though the orientation, spacing, etc. may vary. Ordinary observers would not view the ribs as part of the design as evidenced by the fact that ribs are never shown in marketing materials for pool shells."

Appx1005-1007.

As is evident from the noted paragraphs in Pain's declaration, his statements are either factual statements based on his personal knowledge or lay opinion testimony entirely permissible under Rule 701. His lay opinion testimony "results from a process of reasoning familiar in [Mr. Pain's] everyday life" through his personal observations with customers of fiberglass pools and the designs at issue in this case. *Faulkenberry*, 614 F.3d at 588.

This is precisely the type of lay opinion testimony that is permitted under Federal Rule of Evidence 701. *See United States v. Munoz-Franco*, 487 F.3d 25 (1st Cir. 2007) ("Here, [a witness's] testimony was based on knowledge of [a bank's] banking practices that he acquired during his employment there, and thus the opinions he expressed were properly within the scope of Federal Rule of Evidence 701."); *Medforms, Inc. v. Healthcare Management Solutions, Inc.*, 290 F.3d 98, 110-111 (2d Cir.

2002) (ruling that a computer programmer could testify regarding the meaning of various terms in a copyright registration because he had personal knowledge of their meaning); *B&G Plastics, Inc. v. E. Creative Indus., Inc.*, No. 98 Civ. 0084, 2004 WL 307276, at *21-25 (S.D.N.Y. Feb. 18, 2004) (president of company could present lay witness testimony in a case that involved both a design patent and a utility patent regarding "his perception of the benefits of certain design modifications" when the opinion was based on both his observations of the designs at issue and background information he had acquired about the industry from his experience).

The district court's decision to exclude portions of the Pain Declaration also conflicts with its decision to rely on the deposition testimony of the inventor Kerry Pain.[7] Based on the record, both are similarly knowledgeable about the pool industry and various aspects of pool designs. The court's disparate approach to the testimony is not consistent with decisionmaking at the summary judgment stage, where all

[7] Kerry Pain is the named inventor of the D'966 patent, and David Pain (Kerry's son) is the President and CEO of Leisure Pools. Appx0646.

reasonable inferences should have been made in favor of North Star as the non-moving party.

Finally, the district court's erroneous exclusion of Pain's testimony is not harmless error. The excluded portions of Pain's testimony provide important context about how homeowners, *i.e.*, ordinary observers, would view the patented design and whether they would consider the Corinthian 16 to be substantially the same.

## IV. Conclusion

For the foregoing reasons, the district court's grant of summary judgment should be reversed, the court's decision striking the testimony should be reversed, and the case should be remanded to proceed to trial before a jury.

Date: October 16, 2023

Respectfully submitted,

By: */s/ Perry J. Saidman*

Perry J. Saidman
Perry Saidman, LLC
3 Island Ave.
Apt. 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.com

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
(202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

Wade R. Orr
Michael J. Bradford
Luedeka Neely Group, P.C.
900 S. Gay Street, Suite 1504
Knoxville, Tennessee 37902
worr@luedeka.com

# ADDENDUM

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NORTH STAR TECHNOLOGY INTERNATIONAL LIMITED and NORTH STAR TECHNOLOGY LIMITED, | ) | |
| Plaintiffs, | ) | No.: 3:19-CV-120-KAC-DCP |
| v. | ) | |
| LATHAM POOL PRODUCTS, INC., | ) | |
| Defendant. | ) | |

**JUDGMENT**

Pursuant to the Court's "Memorandum Opinion and Order Granting Defendant Latham Pool Products, Inc.'s Motion for Summary Judgment" [Doc. 112], the Court **DISMISSED** Plaintiffs' claims against Defendant. Accordingly, the Court **DIRECTS** the Clerk to close the case.

**SO ORDERED**.

s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge

ENTERED AS A JUDGMENT:
*s/ LeAnna R. Wilson*
CLERK OF COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| NORTH STAR TECHNOLOGY INTERNATIONAL LIMITED and NORTH STAR TECHNOLOGY LIMITED, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No.: 3:19-CV-120-KAC-DCP |
| LATHAM POOL PRODUCTS, INC., | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT LATHAM POOL PRODUCTS, INC.'S MOTION FOR SUMMARY JUDGMENT**

This case is before the Court on "Defendant Latham Pool Products, Inc.'s Motion for Summary Judgment of Non-Infringement" [Doc. 64]. Because the overall ornamental appearance of Defendant's pool is "sufficiently distinct" from and "plainly dissimilar" to Plaintiff's design patent, the Court grants summary judgment to Defendant.

## I. BACKGROUND[1]

### A. Plaintiffs North Star Technology International Limited and North Star Technology Limited and U.S. Design Patent Number D791,966

Plaintiffs North Star Technology International Limited and North Star Technology Limited are "intellectual property holding companies for a world-wide family of entities commercially known as 'Leisure Pools'" [Doc. 75-1 ¶ 3 (Declaration of David J. Pain[2] ("Pain, D. Decl.")].

[1] Because Plaintiffs are the non-moving Parties, the Court describes the facts in the light most favorable to them. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).
[2] Pain is the President and CEO of Leisure Pools and Spas Manufacturing North America Inc. and Leisure Pools and Spas Distribution North America Inc. [Doc. 75-1 ¶ 2 (Pain, D. Decl.)].

Leisure Pools is the second largest manufacturer of fiberglass pools in the United States and manufactures and sells fiberglass pool shells covered by U.S. Design Patent Number D791,966 (the "D'966 Patent") under the trademark "The Pinnacle" [Doc. 75-1 ¶¶ 4, 8 (Pain, D. Decl.)]. Plaintiffs applied for the D'966 Patent on January 28, 2016 [Doc. 11-1 at 2]. The D'966 Patent, titled "Swimming Pool," was issued on July 11, 2017; it covers the ornamental design for a swimming pool [*Id.*]. The following figures are consistent with the D'966 Patent:



FIG. 1 FIG. 2 FIG. 3 FIG. 4 FIG. 5 FIG. 6 FIG. 7 FIG. 8

[Doc. 11-1 at 4-10].

As shown in the figures above, the D'966 Patent is for a rectangular pool with angular design features [*Id.*]. A rectangular entry step extends the full width of the pool and leads to a rectangular tanning ledge [*Id.*]. From the rectangular tanning ledge, the full-width steps leading into the main body of the pool differ in length, with the top step being longer than the bottom [*Id.*].

A rectangular bench is located in each corner of the deep end of the pool, with smaller rectangular steps stacked on top of each bench [*Id.*]. A safety ledge extends around the perimeter of the pool at the same level as the top surface of the tanning ledge and deep end benches [*Id.*].

### B. Defendant Latham Pool Products, Inc. and the Corinthian 16 Swimming Pool

Defendant Latham Pool Products, Inc. is the largest manufacturer of fiberglass pools in the United States [Doc. 75-1 ¶ 8]. Defendant manufactures and sells the "Corinthian 16"[3] fiberglass swimming pool [Doc. 14 ¶ 6]. The following figures are consistent with the Corinthian 16 design:



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8

[Doc. 67-9 at 2-8].[4]

---

[3] Plaintiffs allege that Defendant's Corinthian 16, "Seahaven," and "Solara" pools all violate Plaintiffs' patent [*See* Doc. 11-3 at 2]. Those pools have the same design, so the Court refers to them collectively as "Corinthian 16" [*See id.*; Doc 11 ¶ 16].

The Corinthian 16 is a rectangular pool with curved edges and design features [*Id.*]. Two curved corner entry steps that do not extend the full width of the pool lead to a tanning ledge [*Id.*]. The tanning ledge extends the full width of the pool, and the edges of the tanning ledge curve into the walls of the pool [*Id.*]. From the tanning ledge, the full-width steps leading into the main body of the pool are each equal in length [*Id.*]. A curved bench is located in each corner of the deep end of the pool, but neither bench features steps [*Id.*]. A safety ledge extends around the pool at the midway point of the deep end benches and terminates at the pool floor at the bottom of the full-width steps leading into the main body [*Id.*].

**C. Prior Art**

The swimming pool, of course, was not invented on January 28, 2016. Prior to January 28, 2016, when Plaintiffs filed the D'966 Patent, various other swimming pool designs were already publicly available. Defendant identified existing swimming pool designs, including rectangular pools with rectangular tanning ledges. A swimming pool designed by Brian Van Bower in 2007, pictured below, has similarities to the D'966 Patent [Doc. 67-3 (Declaration of Brian Van Bower)].

[4] Plaintiffs argue that Defendant may not properly rely upon drawings of the Corinthian 16 to satisfy its burden of establishing that no genuine dispute of material fact exists [Doc. 75 at 9]. Plaintiffs specifically argue that Defendant must compare the D'966 Patent drawings to the Corinthian 16 itself, not drawings depicting the Corinthian 16 [Doc. 75 at 10]. However, Plaintiffs fail to cite any authority for that proposition, and the law suggests the contrary. *See, e.g., Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1292, 1295-96 (Fed. Cir. 2010) (comparing patent figures to drawings of accused design); *Dyson, Inc. v. SharkNinja Operating LLC*, No. 14-CV-779, 2018 WL 1906105, at *13 (N.D. Ill. Mar. 29, 2016) (same). In any event, photographs of the Corinthian 16, [*see* Docs. 67-10–67-29], confirm the accuracy of the above drawings.



[Doc. 66 at 17]. A YouTube video[5] published by "Master Pools Guild" on August 4, 2013 (a screenshot of which is captured below) shows a rectangular pool with a rectangular tanning ledge [Doc. 66 at 17-18 (citing Master Pools Guild, *Pool Tron 2012*, YouTube (Aug. 4, 2013), https://www.youtube.com/watch?v=_l0g3DU2Wuo)].



Before January 28, 2016, rectangular swimming pools with a rectangular tanning ledge and rectangular steps were also publicly available [Doc. 66 at 18-21]. The below screenshots provide just some examples.

[5] The Parties stipulated all YouTube videos cited herein to be "authentic and admissible subject to any potential relevancy objections for all purposes" [Doc. 67-2 at 3].







[Doc. 66 at 18-20 (citing Eddy Smith, *Sun ledge vinyl liner pool renovation*, YOUTUBE (Aug. 4, 2014), https://www.youtube.com/watch?v=tN4hsi73Waw)].



[Doc. 66 at 20 (citing Coral Pool, *Coral Pool Construction, Inc.*, YOUTUBE (Sept. 5, 2008), https://www.youtube.com/watch?v=6E4ux4yOebI)].



[Doc. 66 at 21 (citing Precision Pool Construction, *Vinyl Liner Pool With SpaDeck and Waterfall in Danvers Ma*, YOUTUBE (Aug. 21, 2012), https://www.youtube.com/watch?v=opqYDN3Ll10)].

And the record reveals that a design for a rectangular pool with a rectangular tanning ledge and deep end benches was also publicly available before Plaintiffs filed their patent [*See* Doc. 66 at 21-24]. Images of some of those designs are below.





[Doc. 66 at 22 (citing Coral Pool and Spa San Jose, Ca, *Rectangular Pool and Spa with Auto Cover, Baja Ledge, and Swim Outs*, YOUTUBE (July 16, 2015), https://www.youtube.com/watch?v=KN 99-WDGpD4)].





[Doc. 66 at 23-24 (citing All Aqua Pools – New Smyrna Beach, *Modern Pool with Sun Shelf*, YOUTUBE (Oct. 21, 2013), https://www.youtube.com/watch?v=GCOpXWK9v8M)].



[Doc. 66 at 23 (citing 3D Pool Designs by FS Landscaping Contractors, *Rectangle Pool Design*, YOUTUBE (Sept. 16, 2013), https://www.youtube.com/watch?v=NdE2zONM3Ok)].



[Doc. 66 at 24 (citing Chaz Connell, *RL Pool with Large Beach Step*, YOUTUBE (Nov. 30, 2015), https://www.youtube.com/watch?v=orJzYhEm1iM)].

Some of Defendant's own pools produced before January 28, 2016 featured rectangular shapes, tanning ledges, steps, and deep end benches [Doc. 66 at 24-26]. In fact, as shown below, two of Defendant's prior swimming pool designs featured similar deep end bench and safety ledge designs as the Corinthian 16 [Docs. 65 at 9; 67-9; 67-37; 67-39].

| Corinthian 16 (Ex. 9) | Olympia (Ex. 37) | St. Thomas (Ex. 39) |
|---|---|---|
|  |  |  |

And the designer of Plaintiffs' D'966 Patent admits that rectangular pools with tanning ledges, steps, and deep end benches existed before the D'966 Patent was filed [Doc. 67-7 at 8-9 (Deposition of Kerry Robert Pain ("Pain, K. Dep."), 23:23-24:1, 24:10-25:7, 28:6-16)].

### D. Procedural History

Plaintiffs initially filed this patent infringement suit in April 2019 [*See* Doc. 1]. Plaintiffs asserted two counts against Defendant: one for a declaration of infringement of the D'966 Patent (Count One) and one for a declaration of infringement of U.S. Design Patent Number D794,213 (Count Two) [*See* Doc. 11]. Defendant answered, asserting counterclaims for declarations of non-infringement on both patents [*See* Doc. 36 at 10, 18]. On June 18, 2020, Plaintiffs dismissed Count Two and Defendant dismissed its corresponding counterclaim [*See* Doc. 58]. Accordingly, only the D'966 Patent remains at issue in this action.

Defendant filed the instant "Motion for Summary Judgment of Non-Infringement," [Doc. 64], and a "Memorandum of Law in Support," [Doc. 65]. Defendant argues that it is entitled to summary judgment because (1) "the appearance of the Corinthian 16 is 'plainly dissimilar' from the [D'966 Patent]" design, especially considering prior art; and (2) "any similarities that do exist between the [D'966 Patent] and Corinthian 16 designs stem from their use of design elements that were commonly used in pool designs before the [D'966 Patent]" [Doc. 65 at 2]. Plaintiffs respond that Defendant's "arguments focus on insignificant differences in isolation and ignore[] the critical issue of whether the designs, when viewed in their entireties, are deceptively similar pursuant to the ordinary observer test," asserting that "it is clear that the significant features of the two designs are virtually identical such that the two pools share the same overall distinctive look" [Doc. 75 at 1, *sealed]. The Court held a hearing on the Motion, and the matter is ripe for adjudication.

## II. APPLICABLE LAW

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences that can be drawn from those facts. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *Nat'l Satellite Sports, Inc.*, 253 F.3d at 907. The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the opposing party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; Fed. R. Civ. P. 56). "A genuine issue for trial exists only when there is sufficient 'evidence on which the jury could reasonably find for'" the non-moving party. *See Nat'l Satellite Sports, Inc.*, 253 F.3d at 907 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48).

### B. Patent Infringement

"When presiding over a patent case, a district court applies 'the law of the circuit in which the district court sits' to non-patent issues and the law of the Federal Circuit 'to issues of substantive patent law and certain procedural issues pertaining to patent law.'" *Ford Motor Co. v. Versata Software, Inc.*, No. 15-11624, 2015 WL 5968754, at *2 (E.D. Mich. Oct. 14, 2015)

(quoting *In Re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999)); *see also In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1290 (Fed. Cir. 2016). Federal Circuit law is, therefore, applicable to the bulk of the Court's inquiry here.

"Design patents have almost no scope." *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). "The claim at bar, as in all design cases, is limited to what is shown in the [design patent] application drawings." *Id.* "Infringement is a question of fact . . . and must be proved by a preponderance of the evidence" by the party alleging infringement. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 640 (Fed. Cir. 2015) (citing *Lockheed Martin Corp. v. Space Sys. / Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)). "Summary judgment of non-infringement is appropriate when no reasonable fact-finder could find the accused design [the design that is allegedly infringing on a design patent] substantially similar to the claimed design [the design for which a party holds a design patent]." *Id.* at 640-41 (citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995)).

In determining whether an accused design infringes a design patent, the Court applies the "ordinary observer" test. *See Egyptian Goddess*, 543 F.3d at 678. Under this test, a design patent is only infringed "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). Typically, the "ordinary observer" is the purchaser of the item. *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d 665 (Fed. Cir. 2008). Here, the Parties agree that

the "ordinary observer" is "a homeowner that is considering purchasing and installing a swimming pool at their home" [*See* Doc. 111].

"The ordinary observer test applies to the patented design in its entirety." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (citing *Braun, Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992)). This includes the "overall ornamental visual impression, rather than 'similarities of ornamental features in isolation.'" *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). "[T]he aggregation of [ornamental] differences can create a distinct overall visual impression and overwhelm the similarities between the designs." *Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 3:06-CV-995-K, 2009 WL 691594, at *6 (N.D. Tex. Mar. 16, 2009). A "proper comparison requires a side-by-side view of the drawings of the patent design and the accused products." *Crocs, Inc.*, 598 F.3d at 1304.

"[W]here the claimed design and the accused design are 'sufficiently distinct' and 'plainly dissimilar,' the patentee does not meet its burden of proving infringement." *High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). But even where the Court is satisfied that an "accused design [is] readily distinguishable to an ordinary observer, a full analysis may include 'a comparison of the claimed and accused designs with the prior art,'" that is, other designs that were in existence at the time the patent was filed. *See Minka*, 2009 WL 691594, at *6 (quoting *Egyptian Goddess*, 543 F.3d at 678). In assessing whether an ordinary observer would consider two designs to be substantially the same, "[t]he context in which the claimed and accused designs are compared, i.e., the background prior art, provides . . . a frame of reference and is therefore often useful in the process of comparison." *Egyptian Goddess*, 543 F.3d at 677. Prior art designs "can highlight the distinctions between the claimed design and the accused design." *Id.*

"[I]f the accused infringer elects to rely on the comparison art as part of its defense against the clam of infringement, the burden of production of that prior art is on the accused infringer." *Id.* at 678. But even if the accused infringer presents evidence of prior art, "the ultimate burden of proof to demonstrate infringement by a preponderance of the evidence" rests with the party, or parties, alleging infringement. *See id.* at 679.

## III. ANALYSIS

Here, Defendant is entitled to summary judgment of non-infringement because to the ordinary observer, the Corinthian 16's overall ornamental appearance is "sufficiently distinct" from and "plainly dissimilar" to the D'966 Patent. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). Beginning with the overall design, as shown in the below comparison images, "the patented and accused designs bring to mind different impressions." *See id.*

D'966 Patent [Doc. 11-1 at 8]



Corinthian 16 [Doc. 67-9 at 6]



The D'966 Patent design is angular in appearance [*Id.*]. But the Corinthian 16 design is curved [*Id.*]. The D'966 Patent is based on geometric shapes—namely, rectangles. By contrast, the Corinthian 16 includes curved, rounded shapes. Both designs consist of a roughly rectangular pool with a tanning ledge, full-width stairs, and deep end benches, but these "high-level similarities" "are not sufficient to demonstrate infringement." *See High Point Design*, 621 F. App'x at 642 (citing *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1332 (Fed. Cir. 2012) (finding error where district court looked to "general concept" of a tablet, as opposed to the distinctive "visual appearance" of the claimed design); *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996)). The visual appearance of the Corinthian 16 is distinct with rounded and curved edges to the entry steps, tanning ledge, steps entering the body of the pool, and benches [*See* Doc. 67-9 at 6].

Further, the individual design features of the D'966 Patent and the Corinthian 16 are noticeably different, working in concert to create a substantially different overall ornamental appearance. ***First***, the D'966 Patent has one rectangular full-width entry step, while the Corinthian 16 has two separate curved entry steps in the corners of the pool. These differences are highlighted in the below side-by-side comparison.

| D'966 Patent | Corinthian 16 [Doc. 66 at 16] |
| --- | --- |
|  |  |
|  |  |

The inventor of the D'966 Patent design, himself, acknowledged the distinct visual impression created by the D'966 Patent's entry step design:

> Q: Okay. And just so I understand your testimony, you also extended the entry step to be the width of the pool because that looked better to you as well; right?
>
> A: It did.
>
> Q: Okay.
>
> A: ***It looked more in balance with the other steps*** . . . if you're going to put your other steps all of the way across, then you might as well do the other one all of the way across to make it look more in balance.

[Doc. 67-7 at 18 (Pain, K. Dep., 64:21-65:6) (emphasis added)].

***Second***, the steps leading from the tanning ledge into the main body of the pool are also significantly different. In the D'966 Patent design, the steps are two different lengths, while the

steps in the Corinthian 16 design are equal in length. These differences are highlighted in the below comparison.

| D'966 Patent | Corinthian 16<br>[Doc. 66 at 17] |
|---|---|
|  |  |

***Third***, the benches in the deep end of the two designs are plainly dissimilar. The D'966 Patent design includes rectangular benches with smaller rectangular steps stacked on top. In contrast, the Corinthian 16's benches are curved with no steps. These differences are shown below.

| D'966 Patent | Corinthian 16<br>[Doc. 66 at 18-19] |
|---|---|
|  |  |
|  |  |

***Finally***, the location and depth of the safety ledge differs between the two designs. The safety ledge of the D'966 Patent extends around the perimeter of the pool from the top of the main

pool entry steps. In contrast, the safety ledge of the Corinthian 16 is positioned deeper in the pool, starting at the bottom of the main pool entry steps. The below graphic illustrates that difference.

| D'966 Patent | Corinthian 16<br>[Doc. 66 at 20] |
|---|---|
|  |  |
|  |  |

The inventor of the D'966 Patent chose the location of the safety ledge as "a design feature" to improve overall "flow" of the design elements of the pool so it "looks good" [Doc. 67-7 at 16 (Pain, K. Dep., 54:5-19)]. Indeed, the safety ledge's design impacts the overall design appearance.

As the drawings show, prominent ornamental elements of the two designs differ significantly, creating an overall "plainly dissimilar" appearance. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). Plaintiffs argue that these differences are "insignificant" [*See* Doc. 75 at 19]. But these individual differences, acting in concert, have a substantial impact on the overall appearance of the designs. *See High Point Design*, 621 F. App'x at 641 (quoting *Egyptian Goddess*, 543 F.3d at 678). No "ordinary observer"—a homeowner considering purchasing a swimming pool for their home—would mistake the angular D'966 Patent design with the curved Corinthian 16 design.[6]

[6] Plaintiffs argue that an Instagram post in which Boyer Mountain, a retail establishment selling pools, identified an image of Plaintiffs' "The Pinnacle" model (the commercial embodiment of the

An evaluation of the prior art confirms this understanding. Each of the pertinent design elements included in the D'966 Patent and Corinthian 16—from the entry steps to the deep end benches—existed before Plaintiffs filed the D'966 Patent. Where, as here, "the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer." *Egyptian Goddess*, 543 F.3d at 678. The small differences, and large differences, between the D'966 Patent and Corinthian 16 are likely to be important to the eye of a homeowner considering purchasing a swimming pool for his or her home. *See id.* And these important differences feed into the overall ornamental design of each pool, which is distinct. "[A] patented design that consists only of bringing together old elements with slight modifications of form is not infringed by another who uses the same elements with his own variations of form . . . if his design is distinguishable by the ordinary observer from the patented design." *Minka*, 2009 WL 691594, at *6 (cleaned up). Because no reasonable juror could conclude that the Corinthian 16 is "substantially similar" to the D'966 Patent, Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** "Defendant Latham Pool Products, Inc.'s Motion for Summary Judgment of Non-Infringement" [Doc. 64]. No claims remain in this action. An appropriate judgment shall enter.

IT IS SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

D'966 Patent) as Defendant's Corinthian 16 shows that an ordinary observer would mistake the Corinthian 16 for the D'966 [*See* Doc. 75 at 18]. But Boyer Mountain is not representative of the "ordinary observer"—a homeowner seeking to purchase a pool. And there is no evidence that this post was made to intentionally mislead consumers.

# EXHIBIT A

US00D791966S

(12) **United States Design Patent** (10) **Patent No.: US D791,966 S**
**Pain** (45) **Date of Patent: ** Jul. 11, 2017**

(54) **SWIMMING POOL**

(71) Applicant: **North Star Technology International Limited**, Marsa (MT)

(72) Inventor: **Kerry R. Pain**, Queensland (AU)

(73) Assignee: **North Star Technology International Limited**, Marsa (MT)

(**) Term: **15 Years**

(21) Appl. No.: **29/553,069**

(22) Filed: **Jan. 28, 2016**

(51) **LOC (10) Cl.** ............................................. **25-03**

(52) **U.S. Cl.**
USPC ............................................................ **D25/2**

(58) **Field of Classification Search**
USPC ............ D23/276, 277, 280.1, 316; D24/203, D24/204, 205, 206; D25/2
CPC .... E04H 4/00; E04H 4/06; E04H 4/08; E04H 4/10; E04H 4/12; E04H 4/14; E04H 4/16; Y10T 137/6988; H05B 33/08; H04W 4/00; H04W 4/02; G09B 19/00; G08B 21/04; G08B 21/08
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 3,568,392 | A | | 3/1971 | Stark | |
| 3,738,515 | A | | 6/1973 | Monten | |
| D241,643 | S | * | 9/1976 | Bonsack | D23/280.1 |
| D251,201 | S | * | 2/1979 | Mathis | 4/488 |
| 4,227,266 | A | * | 10/1980 | Russell | E04H 4/12 137/362 |
| D266,697 | S | * | 10/1982 | Topete | D23/277 |
| D266,789 | S | * | 11/1982 | Topete | D23/277 |
| D269,813 | S | * | 7/1983 | Topete | D23/280.1 |
| D271,522 | S | * | 11/1983 | Wiley | D23/277 |
| D271,995 | S | * | 12/1983 | Topete | D23/280.1 |
| D278,932 | S | | 5/1985 | Sullivan | |
| D278,933 | S | | 5/1985 | Sullivan | |
| D285,350 | S | | 8/1986 | Sullivan | |
| D300,360 | S | * | 3/1989 | Jacuzzi | D24/204 |
| D321,923 | S | * | 11/1991 | Ross | D21/815 |
| D324,729 | S | * | 3/1992 | Yvetot | D23/280.1 |
| 5,195,191 | A | | 3/1993 | Stefan et al. | |
| 5,400,556 | A | | 3/1995 | Favaron | |
| 5,680,730 | A | | 10/1997 | Epple | |
| D394,907 | S | | 6/1998 | Duffy | |
| D397,231 | S | | 8/1998 | Saxer | |
| 5,887,295 | A | | 3/1999 | Williamson | |
| 5,941,030 | A | | 8/1999 | Williamson | |
| D417,286 | S | * | 11/1999 | Sullivan | D25/2 |
| D420,143 | S | | 2/2000 | Gagon | |
| D420,413 | S | | 2/2000 | Gonzalez | |
| D444,242 | S | | 6/2001 | Epple | |

(Continued)

*Primary Examiner* — Manpreet Matharu
*Assistant Examiner* — Suzanne Tisdell
(74) *Attorney, Agent, or Firm* — Luedeka Neely Group, PC

(57) **CLAIM**

The ornamental design for a swimming pool, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective top view of a swimming pool
FIG. **2** is a side view of the swimming pool
FIG. **3** is a side view of the swimming pool from the opposite direction as FIG. **2**;
FIG. **4** is a front view of the swimming pool with the shallow end toward the viewer;
FIG. **5** is a rear view of the swimming pool with the deep end toward the viewer;
FIG. **6** is a top view of the swimming pool with the deep end toward the viewer;
FIG. **7** is a bottom view of the swimming pool with the deep end toward the viewer; and,
FIG. **8** is a sectional view taken from line **8-8** in FIG. **6**.

**1 Claim, 7 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,324,706 B1 | 12/2001 | Epple | |
| D455,838 S | 4/2002 | Erdelac | |
| 6,384,726 B1 | 5/2002 | Epple et al. | |
| 6,393,632 B1 | 5/2002 | Epple | |
| 6,418,572 B1 | 7/2002 | Epple et al. | |
| 6,446,276 B2 | 9/2002 | Mathis | |
| 6,457,189 B1 | 10/2002 | Kindness | |
| 6,519,788 B1 | 2/2003 | Epple | |
| D471,282 S | 3/2003 | Sullivan | |
| D471,283 S | 3/2003 | Sullivan | |
| 6,526,604 B1 | 3/2003 | Mathis | |
| 6,622,318 B2 | 9/2003 | Mathis | |
| D485,914 S | 1/2004 | Lucas et al. | |
| 6,671,895 B2 | 1/2004 | Lewis | |
| D490,161 S | 5/2004 | Erdelac | |
| D490,903 S | 6/2004 | Erdelac | |
| D490,904 S | 6/2004 | Erdelac | |
| D491,277 S | 6/2004 | Erdelac et al. | |
| 6,769,141 B2 | 8/2004 | Epple et al. | |
| 6,862,756 B2 | 3/2005 | Mathis | |
| 6,886,188 B2 | 5/2005 | Epple et al. | |
| 6,928,671 B2 | 8/2005 | Pagano et al. | |
| D509,593 S | 9/2005 | Sullivan | |
| D510,630 S * | 10/2005 | Sullivan | D25/2 |
| D512,515 S | 12/2005 | Lucas | |
| D514,228 S | 1/2006 | Sullivan | |
| D514,229 S | 1/2006 | Sullivan | |
| 6,991,700 B2 | 1/2006 | Smith | |
| D514,708 S | 2/2006 | Sullivan | |
| 7,010,817 B2 | 3/2006 | Smith | |
| 7,011,782 B2 | 3/2006 | Smith | |
| 7,093,784 B2 | 8/2006 | Smith | |
| 7,114,297 B2 | 10/2006 | Mathis et al. | |
| 7,146,773 B2 | 12/2006 | Wilson | |
| 7,150,129 B2 | 12/2006 | Elder et al. | |
| 7,152,254 B2 | 12/2006 | Smith | |
| 7,171,703 B2 | 2/2007 | Mathis | |
| 7,311,867 B1 | 12/2007 | Cronise, IV et al. | |
| 7,318,243 B2 | 1/2008 | Smith | |
| D608,902 S * | 1/2010 | Gill | D25/2 |
| 7,861,471 B2 | 1/2011 | Smith | |
| D653,770 S | 2/2012 | Olmsted et al. | |
| D653,771 S | 2/2012 | Olmsted et al. | |
| D660,442 S * | 5/2012 | Sullivan | D24/201 |
| D685,500 S * | 7/2013 | Sullivan | D25/2 |
| 8,584,271 B2 | 11/2013 | Mathis et al. | |
| D703,795 S * | 4/2014 | Licini | D23/277 |
| 9,132,488 B2 | 9/2015 | Stojanovski | |
| RE45,820 E * | 12/2015 | Jiang | D23/277 |
| D782,631 S * | 3/2017 | Schachter | D23/277 |
| 2001/0023506 A1 | 9/2001 | Mathis et al. | |
| 2003/0084617 A1 | 5/2003 | Smith | |
| 2004/0018051 A1 | 1/2004 | Dalton | |
| 2005/0091736 A1 | 5/2005 | Smith | |
| 2005/0091738 A1 | 5/2005 | Smith | |
| 2006/0064812 A1 | 3/2006 | Smith | |
| 2006/0123536 A1 | 6/2006 | Smith | |
| 2008/0134426 A1 | 6/2008 | Cronise et al. | |
| 2009/0188178 A1 | 7/2009 | Lucas et al. | |
| 2011/0061158 A1 | 3/2011 | Smith | |
| 2012/0167494 A1 | 7/2012 | Brooks et al. | |
| 2012/0175578 A1* | 7/2012 | Boudreau | G08B 21/086 256/26 |
| 2012/0227213 A1 | 9/2012 | Karsten et al. | |
| 2015/0000764 A1 | 1/2015 | Johnson et al. | |
| 2015/0089732 A1* | 4/2015 | Khamis | E04H 4/0037 4/506 |
| 2015/0122080 A1 | 5/2015 | Meyer | |
| 2015/0240509 A1* | 8/2015 | Ferriss | A63B 69/125 4/492 |
| 2015/0275536 A1 | 10/2015 | Baudendistel et al. | |
| 2016/0102470 A1* | 4/2016 | Brooks | E04H 4/14 4/506 |
| 2016/0130828 A1* | 5/2016 | Moody | E04H 4/10 4/503 |

* cited by examiner



FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5




FIG. 6



FIG. 7



FIG. 8

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2138

**Short Case Caption:** North Star Technology v. Latham Pool Products

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 11,006 words.

- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.

- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 10/16/2023

Signature: /s/ Perry Saidman

Name: Perry Saidman