# United States Court of Appeals for the Federal Circuit

---

NORTH STAR TECHNOLOGY INTERNATIONAL LTD.,
NORTH STAR TECHNOLOGY LTD.,

*Plaintiffs-Appellants,*

– v. –

LATHAM POOL PRODUCTS, INC.,

*Defendant-Appellee.*

---

*On Appeal from the United States District Court for the Eastern
District of Tennessee in No. 3:19-cv-00120-KAC-DC,
Honorable Katherine A. Crytzer, Judge*

---

## BRIEF FOR DEFENDANT-APPELLEE

MEGAN E. BUSSEY
KILPATRICK TOWNSEND
  & STOCKTON LLP
The Grace Building
1114 Avenue of the Americas,
  21st Floor
New York, New York 10036
(212) 775-8700
mbussey@ktslaw.com

RUSSELL A. KORN
MICHAEL A. BERTELSON
COURTNEY DABBIERE
KILPATRICK TOWNSEND
  & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, Georgia 30309
(404) 815-6500
rkorn@kilpatricktownsend.com
mbertelson@ktslaw.com
cdabbiere@ktslaw.com

*Counsel for Defendant-Appellee Latham Pool Products, Inc.*

JANUARY 26, 2024


CP COUNSEL PRESS     (800) 4-APPEAL • (327166)

## PATENT CLAIM AT ISSUE

The ornamental design for a swimming pool, as shown and described.

Appx21.

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellees certifies the following:

1. **Represented Entities.** The full names of all entities represented by undersigned counsel are:

Latham Pool Products, Inc.

2. **Real Party in Interest.** The full names of all real parties in interest for the entities is:

Not Applicable

3. **Parent Corporations and Stockholders.** The full names of all parent corporations for the entities and all publicly held companies that own 10 percent or more of the stock in the entities:

Latham Group Inc.

Latham Intermediate Holdings, LLC

Latham U.S., LLC

Latham Purchaser Holdings, LLC

Latham Purchaser Parent, Inc.

Latham Purchaser, Inc.

LLP Holdings, Inc.

Latham International Holdings, Inc.

Latham International Manufacturing Corp.

4. **Legal Representatives.** List of all law firms, partners and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

Richard Keshian

Kramer Rayson LLP

William J. Carver

5.      **Related Cases.** The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. *See* Fed. Circ. R. 47.4(a)(5) and 47.5(b).

Not applicable.

6.      **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not applicable.

# Table of Contents

STATEMENT OF RELATED CASES ................................................. 1

INTRODUCTION ........................................................................ 2

STATEMENT OF THE ISSUES ...................................................... 4

COUNTERSTATEMENT OF THE CASE ......................................... 5

I.   The Parties ........................................................................ 5

II.  The D'966 Patent ............................................................... 6

III. Latham's Corinthian 16 Design ........................................... 9

IV.  The Prior Art Includes Numerous Similar Pool Designs ........... 15

V.   Latham Designed the Corinthian 16 Using Its Own Previous Design Features And Styles ................................................ 19

VI.  Procedural History ........................................................... 23

   A.   The District Court Granted Summary Judgment of Non-Infringement ..... 23

      1.   The District Court Determined No Ordinary Observer Would Find the Designs Substantially the Same in a Side-By-Side Comparison ......... 23

      2.   The District Court Determined the Prior Art Confirmed Noninfringement ................................................... 25

   B.   The District Court Granted Latham's Motion to Strike the Pain Declaration ................................................... 27

SUMMARY OF ARGUMENT ...................................................... 29

STANDARD OF REVIEW .......................................................... 31

ARGUMENT ........................................................................... 32

I.   On the Record, the District Court Correctly Granted Summary Judgment of Non-Infringement ........................................... 32

   A.   The Corinthian 16 is Plainly Dissimilar to the D'966 Patent ............ 33

   B.   The District Court Conducted a Proper Infringement Analysis that Considered the Overall Designs and Followed this Court's Precedent ..... 42

i

1.    The District Court Followed This Court's Precedent ...........................42

2.    The District Court Considered the Overall Designs ...........................44

3.    The District Court Properly Drew Inferences......................................50

C.   The Similar Prior Art Designs Confirm Summary Judgment of Non-Infringement is Appropriate. ...................................................................56

II.  The District Court Did Not Abuse Its Discretion When It Excluded the Testimony of David Pain in Paragraphs 15-22 of the Pain Declaration ...........64

A.   The District Court Properly Concluded David Pain's Testimony was Inadmissible ...............................................................................................65

B.   Even If Mr. Pain's Declaration Had Been Considered, The District Court's Grant of Summary Judgment Is Still Proper .............................................70

CONCLUSION ......................................................................................................71

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 247-48 (1986) ..............................................................31

*Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ..........................................................45

*B&G Plastics, Inc. v. E. Creative Indus.*,
2004 WL 307276 (S.D.N.Y. Feb. 18, 2004)......................................69

*Baker Hughes Inc. v. S&S Chem., LLC*,
836 F.3d 554 (6th Cir. 2016) ................................................. 31, 32, 64

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992) ............................................................51

*Braun v. Ann Arbor Charter Twp.*,
519 F.3d 564 (6th Cir. 2008) ..............................................................31

*Columbia Sportwear North America v. Seirus Innovative Accessories, Inc.*,
942 F.3d 1119 (Fed. Cir. 2019) ..........................................................43

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
282 F.3d 1370 (Fed. Cir. 2002) ............................................ 45, 52, 55

*Dyson, Inc. v. SharkNinja Operating LLC*,
2018 WL 1906105 (N.D. Ill. Mar. 29, 2018) ....................................24

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ................................................... passim

*Elmer v. ICC Fabricating, Inc.*,
67 F.3d 1571 (Fed. Cir. 1995) ............................................................32

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312, 1336-37 (Fed. Cir. 2015)....................................passim

*Gorham Mfg. Co. v. White*,
81 U.S. 511 (1871)........................................................................ 32, 40

*High Point Design LLC v. Buyer's Direct, Inc.*,
    621 F. App'x 632 (Fed. Cir. 2015) ........................................................ 33, 44, 48

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988) ............................................................ 29, 43, 64

*Jones v. City of Franklin*,
    677 F. App'x 279 (6th Cir. 2017) ..........................................................70

*Lanard Toys Ltd. v. Dolgencorp LLC*,
    958 F.3d 1337 (Fed. Cir. 2020) ................................................ passim

*Lanard Toys Ltd. v. Toys "R" Us-Del., Inc.*,
    2019 WL 1304290 (M.D. Fla. Mar. 21, 2019) ....................................62

*Lee v. Dayton-Hudson Corp.*,
    838 F.2d 1186 (Fed. Cir. 1988) ..........................................................49

*Lemon v. Norfolk S. Ry. Co.*,
    958 FDA 417 (6th Cir. 2020)..............................................................70

*Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*,
    290 F.3d 98 (2d Cir. 2002) ..................................................................69

*MRC Innovations, Inc. v. Hunter Mfg., LLP*,
    747 F.3d 1326 (Fed. Cir. 2014) ..........................................................31

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ..........................................................48

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*,
    998 F.2d 985 (Fed. Cir. 1993) ............................................................52

*Phigenix, Inc. v. Immunogen, Inc.*,
    845 F.3d 1168 (Fed. Cir. 2017) ..........................................................70

*Pierce v. Ocwen Loan Servicing, LLC*,
    2021 WL 4129526 (6th Cir. Sept. 10, 2021) ......................................70

*Revision Military Inc. v. Balboa Manufacturing Co.*,
    700 F.3d 524 (Fed. Cir. 2012) ............................................................63

*Richardson v. Stanley Works, Inc.*,
  597 F.3d 1288 (Fed. Cir. 2010) ................................................. passim

*Smith v. Whitman Saddle Co.*,
  148 U.S. 674 (1893) ...........................................................................60

*Spalding & Enflo Cos., Inc. v. Graco Metal Prods., Inc.*,
  18 U.S.P.Q.2d 2029, 1991 WL 148127 (N.D. Ohio 1991) ................................43

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
  836 F. App'x 895 (Fed. Cir. 2020) ............................................... 29, 33

*Treehouse Avatar LLC v. Valve Corp.*,
  54 F.4th 709 (Fed. Cir. 2022) ...........................................................31

*U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land In Tenn.*,
  821 F.3d 742 (6th Cir. 2016) .............................................................67

*United States v. Faulkenberry*,
  614 F.3d 573 (6th Cir. 2010) .............................................................68

*United States v. Freeman*,
  730 F.3d 590 (6th Cir. 2013) ...................................................... passim

*United States v. Ganier*,
  468 F.3d 920 (6th Cir. 2006) ........................................................ 66, 69

*United States v. Lucas*,
  2021 WL 4099241(6th Cir. Sept. 9, 2021) ...........................................66

*United States v. Munoz-Franco*,
  487 F.3d 25 (1st Cir. 2007) ...............................................................69

*United States v. White*,
  492 F.3d 380 (6th Cir. 2007) ........................................................ 68, 69

*United States v. Young*,
  847 F.3d 328 (Fed. Cir. 2017) ...........................................................70

*Wallace v. Ideavillage Prods. Corp.*,
  640 F. App'x 970 (Fed. Cir. 2016) ......................................................33

*Zidell v. Dexter*,
  262 F. 145 (9th Cir. 1920) ...................................................................................60

## Rules

Fed. R. Civ. P. 26 ................................................................................... 28, 69

Fed. R. Civ. P. 56(a) ...................................................................................31

Fed. R. Civ. P. 56(c)(4) ...............................................................................64

Fed. R. Evid. 701 .........................................................................................69

Fed. R. Evid. 702 ................................................................................... 28, 69

Federal Circuit Rule 47.5(a) .........................................................................1

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5(a), counsel for Appellee Latham Pool Products, Inc. states that no appeal from this civil action has previously been before this or any other appellate court. Counsel is unaware of any other case pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

# INTRODUCTION

Appellant North Star is attempting to misapply patent law to effectively claim ownership of the idea of a rectangular pool with steps, a tanning ledge, deep end benches, and a safety ledge. North Star points to inadmissible evidence and asserts that conceptual similarities of the parties' pool designs are sufficient to prove infringement of its patent—they are not. In doing so, North Star discounts both the differences between its design and the accused pool and the similarities of its design to prior art pool designs.

The district court correctly resolved this case at summary judgment based on a well-developed record and properly exercising its discretion to exclude testimony North Star submitted at summary judgment. After reviewing the briefing, numerous exhibits, and hearing argument, the court issued a detailed order granting summary judgment of noninfringement. The order is well-reasoned and diligently applies this Court's precedent to North Star's design patent claims.

On appeal, North Star does not challenge the factual recitations in the district court's summary judgment order. Instead, North Star attacks Appellee Latham's character in an apparent attempt to bolster its legal shortcomings, misstates key aspects of the court's order to argue for error that does not exist, and mischaracterizes stricken testimony to argue for abuse of discretion that likewise does not exist.

Applying established precedent, the court found that North Star could not satisfy its burden of proof on its infringement claim because differences in the parties' designs affect the overall appearance of the designs—alone and in light of the prior art—and support the entry of summary judgment. Thus, the court's granting of Latham's motion to strike is irrelevant here, as it does not impact the grant of summary judgment. Nevertheless, substantial evidence supported the court's granting of Latham's motion to strike.

Thus, Latham respectfully requests that this Court affirm the court's judgment.

## <u>STATEMENT OF THE ISSUES</u>

1.    Whether the district court correctly granted summary judgment of noninfringement of U.S. Design Patent D791,966?

2.    Whether the district court did not abuse its discretion in granting Appellee's Motion to Strike?

## <u>COUNTERSTATEMENT OF THE CASE</u>[1]

The U.S. District Court of the Eastern District of Tennessee granted summary judgment that Appellee Latham Pool Products, Inc.'s ("Latham") Corinthian 16 pool (the "Corinthian 16") does not infringe U.S. Design Patent D791,966 (the "D'966 Patent"). Appx1-19.

The D'966 Patent shows and claims a modern swimming pool design with linear, rectangular design elements, that create a geometric and angular overall appearance. Appx21-29. The district court found that the D'966 Patent's design and the Corinthian 16 were "plainly dissimilar" in appearance and "[n]o 'ordinary observer'—a homeowner considering purchasing a swimming pool for their home— would mistake the angular D'966 Patent with the curved Corinthian 16 design." Appx18. The district court also found that "the claimed design is close to the prior art designs" and that "no reasonable juror could conclude that the Corinthian 16 is 'substantially similar' to the D'966 Patent." Appx19. Thus, the district court found as a matter of law that Latham was entitled to summary judgment. Appx19.

## I.    The Parties

Appellants North Star Technology International, Ltd. and North Star Technology Ltd. (collectively, "North Star") are "intellectual property holding

---

[1]Appellee submits this Counterstatement of the Case because Appellants' Statement of the Case is incomplete, inaccurate, and argumentative. Appellee denies all accusations of misconduct.

companies for a world-wide family of entities commercially known as 'Leisure Pools.'" Appx2. North Star licenses its patents, including the D'966 Patent to Leisure Pools, which manufactures and sells fiberglass pool shells, and is the second largest manufacturer in the United States. Appx2-3; Appx47 (¶11); Appx1002 (¶3). Leisure Pools markets "The Pinnacle" pool, which North Star alleges is covered by the D'966 Patent. Appx3; Appx1003 (¶4).

Latham is the largest manufacturer of fiberglass pools in the United States and has marketed pools under several brand names including Trilogy Pools, Viking Pools, and Blue Hawaiian. Appx4; Appx46 (¶5); Appx1003 (¶8). North Star accuses Latham's "Corinthian 16" pool[2] of infringing the D'966 Patent. Appx4; Appx76 (¶18).

## II. The D'966 Patent

The D'966 Patent, entitled "Swimming Pool," shows and claims a modern swimming pool design. Appx21-29. As shown in the annotated figures from the D'966 Patent below, the patented design uses linear, rectangular design elements, creating a pool with a geometric and angular overall appearance:

---

[2]Appellant also accused Latham's "Seahaven" and "Solara" pools, which have the same design as the Corinthian 16, so they are collectively referred to as "Corinthian 16." Appx4; Appx64; Appx76 (¶16).



Appx27; Appx24.

The district court recognized the D'966 Patent claims a specific design, explaining "the D'966 Patent is for a rectangular pool with angular design features." Appx3. The overall appearance of the D'966 Patent is distinct as it is "is angular in appearance" and "based on geometric shapes—namely, rectangles." Appx15. As shown above, not only is the pool a rectangle, but also every feature within the pool is a rectangle:

- A full-width "rectangular entry step" "leads to a rectangular tanning ledge." Appx3 (citing Appx85-91); *see also* Appx563-569 (¶¶18, 19, 21, 24); Appx1326 (¶¶18, 19, 21, 24).

- Two rectangular "full-width steps leading into the main body of the pool," the top one being larger than the bottom step. Appx3 (citing Appx85-91); *see also* Appx563-569 (¶¶18, 19, 21, 24); Appx1326 (¶¶18, 19, 21, 24).

- A "rectangular bench" "in each corner of the deep end of the pool, with smaller rectangular steps stacked on top of each bench." Appx3-4 (citing Appx85-91); *see also* Appx569 (¶¶25, 27); Appx1327 (¶¶25, 27).

In addition, a straight, linear safety ledge extends around the pool at the same level as the top of the benches and the tanning ledge, creating straight lines that connect the angular design elements within the rectangular pool. Appx4; Appx23-29; Appx572-573 (¶32); Appx1328 (¶32). The inventor of the D'966 Patent, Mr. Kerry Pain, testified that he intentionally located the safety ledge in the design so that it would "flow" from the tanning ledge to the benches, and that other locations for the safety ledge would not have looked as "nice." Appx572-573 (¶32).

Mr. Pain also acknowledged the distinct visual impression created by these rectangular features and straight edges of the D'966 Patent. For example, Mr. Pain

stated the square corners in the design created "a much cleaner look." Appx559 (¶10). Mr. Pain also chose a single rectangular entry step extending across the width of the pool, as opposed to corner steps, because it "looked better" and was "more in balance" with the other full-width rectangular steps. Appx563-566 (¶18).

Leisure's general manager of sales, Lesa Kidd, also confirmed that Leisure's pools, including the Pinnacle—the commercial embodiment of the D'966 Patent— "look very modern" to consumers and homeowners, with a "modern" design being characterized by "very straight edges, very sharp corners, very clean, modern, European-looking designs." Appx561 (¶13).

## III.   Latham's Corinthian 16 Design

In contrast to the modern, angular D'966 Patent design "based on geometric shapes—namely rectangles," Latham's Corinthian 16 "includes curved, rounded shapes" that create a softer look and an overall appearance plainly dissimilar from the D'966 Patent. Appx5 (citing Appx768-774); *see also* Appx15; Appx800; Appx808.



Appx772; Appx769.

As the district court observed, while the Corinthian 16 has a tanning ledge, steps, a safety ledge, and deep-end benches, it does not have the *same* tanning ledge, steps, safety ledge, and deep-end bench designs as the D'966 Patent and has a distinct overall visual appearance. Appx15 (citing Appx768-774); *see also* Appx562 (¶¶15-16); Appx1325-1326 (¶¶15-16); Appx566 (¶20); Appx1326 (¶20); Appx569-70 (¶¶26, 28); Appx1327 (¶26); Appx571 (¶31); Appx1327 (¶31); Appx572 (¶¶33-34); Appx1328 (¶¶33-34); Appx965-967.

The Corinthian 16 has two, separate curved entry steps that are tucked into the corners of the shallow end. Appx5 (citing Appx768-774); Appx15-16 (citing Appx637 (64:21-65:6); Appx562 (¶16); Appx1326 (¶16); Appx782; Appx788.

| D'966 Patent – Portion of Figure 6 (Appx27) | Corinthian 16 (Appx772) |
|---|---|
|  |  |
|  |  |

The corner entry steps lead to a tanning ledge with a shape highlighted in yellow above. Appx772 (annotated). As is apparent, the Corinthian 16's tanning ledge is not a rectangle but instead includes curves around the entry steps and a protrusion providing space between the entry steps. Appx5 (citing Appx768-774); Appx566 (¶20); Appx1326 (¶20); Appx778; Appx780; Appx965-966.

The Corinthian 16 also has two identical full-length steps leading into the pool from the tanning ledge that curve into the sides of the pool, which softens the transition between the step and the pool wall. Appx5 (citing Appx768-774).

| D'966 Patent Portion of Fig. 6 (Appx27) | Corinthian 16 (Appx772) |
|---|---|



Unlike the D'966 Patent, the full width steps in the Corinthian 16 are of equal size to one another. Appx967; Appx567 (¶22); Appx1326 (¶22). Further, the Corinthian 16's full width steps are not in balance with the curved corner entry steps, contrary to the balance of having all full-width steps Mr. Pain admitted makes the D'966 Patent design "look[] better." Appx563-564 (¶18); Appx1326 (¶18); Appx630 (35:19-36:24); Appx637 (63:18-65:6).

The deep end benches of the Corinthian 16 are curved on the end and are much smaller than what is shown in the D'966 Patent. Appx5 (citing Appx768-774); Appx17; Appx569-70 (¶28); Appx965; Appx967. The Corinthian 16 designer

explained that the deep end benches "sweep into the walls on both sides." Appx825 (34:1-8). The deep end benches also lack the "rectangular box on top of a rectangular box" look of the D'966 Patent's benches. *See* Appx17; Appx569 (¶26); Appx1327 (¶26); Appx772; Appx784; Appx789-96; Appx802.



| D'966 Patent – Portion of Fig. 6 (Appx27) | Corinthian 16 (Appx772) |
|---|---|
| D'966 Patent – Portion of Figure 1 (Appx23) | Corinthian 16 (Appx768) |

Further, the Corinthian 16's safety ledge does not "flow" from the top of the tanning ledge to deep end benches—a distinction that Mr. Pain admitted does not look as "nice" as the safety ledge design claimed in the D'966 Patent. Appx635 (54:5-19); Appx571-572 (¶¶32-34); Appx1328 (¶¶32-34). Instead, as shown in the

annotated figures below, the safety ledge of the Corinthian 16 is positioned lower at a midway point of the deep end benches and terminating at the pool floor at the bottom of the full width steps. Appx5 (citing Appx768-774); Appx17-18 (quoting Appx635 (54:5-19)); Appx789-798.



| D'966 Patent – Fig. 1 (Appx23) | Corinthian 16 (Appx768) |
| D'966 Patent – Figure 2 (Appx24) | Corinthian 16 (Appx769) |

Looking at the design features as a whole, the Corinthian 16 lacks most of the geometric, angular shapes set forth in the modern design of the D'966 Patent. Instead, the Corinthian 16 incorporates the curved design elements consistent with a "Latham style" employed in many of Latham's pools. *E.g.*, Appx906 (22:7-23:9); Appx1026-1027 (49:14-50:2). Latham's sales director testified that the "Latham style" is "very curved" and is based on customer feedback about what they like:

**Q**. And how would you describe the Latham style?
**A**. So we really worked to keep our style very -- our features very curved. If you look at several of our models our in-pool features, ledges, benches,

steps, have a very curved feature. And, you know, that -- that brand and the style that **we've gained feedback from homeowners that they like**. And that's, you know, been where we've been going with many of our models over the last several years.

Appx1020 (22:25-23:9) (emphasis added). Indeed, the district court recognized the deep end benches and safety ledge in the Corinthian 16 are similar to those in Latham's prior Olympia and St. Thomas pool designs, which were marketed and/or sold before the D'966 Patent:

| Corinthian 16 (Appx965) | Olympia (Appx969) | St. Thomas (Appx973) |
|---|---|---|
|  | | |

*See* Appx9; Appx581-584 (¶¶42-45); Appx1328 (¶¶42-45); Appx965-975.

## IV.   The Prior Art Includes Numerous Similar Pool Designs

The filing date for the D'966 Patent is January 28, 2016. Appx21. While North Star claims it started the design trend of rectangular pools using large tanning ledges Appx1004 (¶10), the record shows otherwise. As North Star and the inventor of the D'966 Patent acknowledge, rectangular pools with large rectangular tanning ledges were common in the prior art.[3] Appx572-581 (¶¶35, 38-41); Appx1328-1329 (¶¶35,

---

[3]Much of the above prior art is in the form of YouTube videos. Appx613. North Star asserts the district court "highlighted only snippets of views within the videos" of

38-41). For example, the court pointed to the following pools from 2007 and 2013 as showing rectangular pools with rectangular tanning ledges:

| Rectangular Pool with Rectangular Tanning Ledge |
| --- |
|  |

Appx5-6; Appx609-612; Appx574 (¶39); Appx1328 (¶39).

    As the court recognized, it was undisputed that rectangular pools with rectangular tanning ledges and rectangular steps existed before January 28, 2016, a few of which are reproduced below. Appx575-578 (¶40); Appx1328 (¶40); Appx6-8.

---

this prior art (Brief, p. 32), but the videos showing these prior art designs, which were all part of the record before the district court, show the overall appearance of the pools from several angles, not just in "snippets." Appx613.



Appx613.

 And, as the court found, the record contained evidence that rectangular pools with rectangular tanning ledges and deep end benches were publicly available before the D'966 Patent was filed. Appx578-581 (¶41); Appx1328-1329 (¶41); Appx8-9.

| Rectangular Pools with Rectangular Tanning Ledge and Deep End Benches |
|---|

 



 

Appx613.

Even Latham was using tanning ledges, benches, and safety ledges in its designs before the application leading to the D'966 Patent was filed. Appx581-584 (¶¶42-45); Appx1329 (¶¶42-45); Appx9. Indeed, the safety ledge and deep-end benches in the Corinthian 16 are similar in style and design of features to prior art Latham pools. Appx1026-1027 (49:14-50:2); Appx583 (¶43); Appx584 (¶45); Appx1329 (¶¶43, 45).



## V. Latham Designed the Corinthian 16 Using Its Own Previous Design Features And Styles

North Star's allegation that Latham copied its Pinnacle pool is simply attorney argument that is unsubstantiated by and contrary to the record and irrelevant to this appeal. The record evidence shows that Latham had been designing rectangular pools with full-width rectangular tanning ledges, safety ledges, and benches into its own designs before 2016. Appx1024-1025 (41:7-42:7).

Below are design schematics from Latham illustrating its own designs of rectangular pools with full-width rectangular tanning ledges (highlighted) showing that Latham was incorporating these features before the D'966 Patent was filed:



Appx302 (¶113).

Appx303 (¶115).

Appx307 (¶124).

Appx308 (¶125).

Although the Corinthian 16 uses a tanning ledge with curved features distinct from the purely rectangular elements in the above schematics, these early schematics make clear that North Star's attorney argument of copying lacks evidence and merit.

Further, Latham also designed rectangular pools with curved deep end benches and safety ledges before the application leading to the D'966 Patent was filed, including the Olympia pool shown below, marketed in 2015. Appx581-584 (¶¶42-45); Appx1329 (¶¶42-45).



Appx969; Appx971.

Ultimately, the Corinthian 16 was developed through Latham's own design efforts incorporating features from its previous pools and design work. Mr. Fox explained that, when designing new models, Latham typically uses models it is currently producing "that we know are our brand, and we make slight modifications to fit that homeowner demand, but keeping within our Latham kind of branded style." Appx906 (22:12-16). The features in the Corinthian 16, including the safety ledge and deep-end benches, are based on the design and style of the Olympia. Appx1329 (¶¶42-45); *see also* Appx1027-1028 (53:6-55:7).

North Star's speculation about the Corinthian 16's design history is not supported by the record; in fact, it is contradicted by it. For example, North Star speculates that Latham's development of the Corinthian 16 was in response to Boyer

Mountain's marketing of Leisure's Pinnacle in 2018. (Br. at 11-13). However, North Star cites no actual evidence establishing that and ignores the undisputed evidence that Latham began designing the Corinthian 16 in 2017, **before** Boyer Mountain began selling Leisure's Pinnacle.[4] Appx843 (106:1-10); Appx1124-27.

North Star also cites a Latham capital expenditure report in support of its story that Latham supposedly developed the Corinthian 16 to compete with Leisure's Pinnacle at Boyer Mountain.[5] (Br. at 13). But that report simply shows that Mr. Fox was seeking approval to build three molds at factories in West Virginia, Indiana, and California ("WV, IA, CA") and that the pool model would fit the demand regionally and help them compete. Appx1128. There is no mention of Boyer Mountain, Leisure Pools, or the Pinnacle anywhere in the document. *Id.* North Star advocates a design history for the Corinthian 16 that is based on pure speculation, not on evidence.

---

[4]North Star also asserts Boyer Mountain stopped selling the Pinnacle in response to Latham's introduction of the Corinthian 16 to suggest foul play. (Br. at 13). Again, however, North Star never sought discovery from Boyer Mountain and is thus speculating.

[5]North Star suggests this report shows Latham copied its design because Boyer Mountain received some of the first Corinthian 16 pool shells manufactured at *one* of Latham's facilities at a price lower than the list price. (Br. at 13). This tenuous assertion should be disregarded.

## VI.     Procedural History

### A.     The District Court Granted Summary Judgment of Non-Infringement

After discovery, Latham filed a motion for summary judgment of non-infringement of the D'966 Patent, asserting there is no genuine dispute of fact on the issue of infringement. Appx528-975. The court heard oral argument and granted Latham's motion for summary judgment of non-infringement. Appx1698-1791; Appx1-19. The court agreed with Latham that there could be no design patent infringement because a visual comparison of the D'966 Patent and Corinthian 16 supported a finding that the two design are sufficiently distinct and North Star cannot, as a matter of law, prove the designs appear substantially the same. Appx2-19.

#### 1.     The District Court Determined No Ordinary Observer Would Find the Designs Substantially the Same in a Side-By-Side Comparison

Latham moved for summary judgment of noninfringement because a simple visual comparison of the D'966 Patent's figures to the Corinthian 16 shows the two designs are different such that no reasonable juror could conclude the Corinthian 16 infringes the D'966 Patent. *See* Appx528. The court agreed, finding there was no genuine dispute and granted summary judgment of noninfringement. *See* Appx2-19.

The court conducted an extensive analysis and closely followed this Court's precedent in its Order, starting with a review of all figures of the D'966 Patent and

an assessment of the overall design, noting "the D'966 Patent is for a rectangular pool with angular design features." Appx3-4. The order then assesses corresponding views of the Corinthian 16[6] and its overall design, describing it as "a rectangular pool with curved edges and design features." Appx4-5.

The court found the "overall design[s]" of the D'966 Patent and the Corinthian 16 "bring to mind different impressions." Appx13. In reaching this conclusion, the court considered both the similarities and differences in the overall designs:

> The D'966 Patent design is angular in appearance. But the Corinthian 16 design is curved The D'966 Patent is based on geometric shapes-namely rectangles. By contrast, the Corinthian 16 includes curved, rounded shapes. Both designs consist of a roughly rectangular pool with a tanning ledge, full-width stairs, and deep end benches, but these "high-level similarities" "are not sufficient to demonstrate infringement."

Appx0015 (citations omitted).

The court further found "prominent ornamental elements of the two designs differ significantly, creating an overall 'plainly dissimilar' appearance." Appx18. In rejecting North Star's argument that "these differences are 'insignificant,'" the court

---

[6]The district court rejected North Star's argument that Latham may not properly rely on drawings of the Corinthian 16 to demonstrate noninfringement and must instead compare the D'966 Patent drawings to the Corinthian 16 itself. Appx5. As the court explained, "the law suggests the contrary." Appx5 (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1292, 1295-96 (Fed. Cir. 2010); *Dyson, Inc. v. SharkNinja Operating LLC*, 2018 WL 1906105, at *13 (N.D. Ill. Mar. 29, 2018)). Moreover, the court noted "photographs of the Corinthian 16, [] confirm the accuracy of the [Corinthian 16] drawings." Appx5.

found the "individual differences, acting in concert, have a substantial impact on the overall appearance of the design." Appx18. The court also rejected North Star's purported evidence of confusion. Ultimately, the court determined "[n]o ordinary observer—a homeowner considering purchasing a swimming pool for their home— would mistake the angular D'966 Patent design with the curved Corinthian 16 design." Appx18.

### 2.     The District Court Determined the Prior Art Confirmed Noninfringement

The court then found that in light of the prior art, which demonstrated "[e]ach of the pertinent design elements included in the D'966 Patent and Corinthian 16— from the entry steps to the deep end benches," the differences between the designs— small and large—"are likely to be important to the eye of a homeowner considering purchasing a swimming pool for his or her home" and "feed into the overall ornamental design of each pool, which is distinct." Appx19.

Latham identified numerous pieces of undisputed prior art showing the common use of the features in the D'966 Patent—rectangular shape, steps and a large tanning ledge in the shallow end, benches in the deep end, and a safety ledge. Appx553. After reviewing the prior art and following this Court's guidelines in *Egyptian Goddess*, the district court found the claimed design was close to the prior art designs, and thus the "small differences, and large differences, between the D'966 Patent and Corinthian 16 are likely to be important to the eye of a homeowner

considering purchasing a swimming pool for his or her home." Appx19. In doing so, the court cited *Minka Lighting's* recognition that "a patented design that consists only of bringing together old elements with slight modifications of form is not infringed by another who uses the same elements with his own variations of form…if his design is distinguishable by the ordinary observer from the patented design." Appx19 (alteration in original)(citing *Minka Lighting, Inc. v. Maxim Lighting Int'l Inc.*, 2009 WL 691594, at *6 (N.D. Tex. Mar. 16, 2009)); *see also Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008). Thus, the court concluded, "these important differences feed into the overall ornamental design of each pool, which is distinct." Appx19.

At the hearing, the court addressed North Star's arguments. North Star asserted that the prior art Latham identified was not "close in appearance" to the pool shell in the D'966 Patent because Latham did not identify fiberglass pools having these features. Appx999. However, North Star conceded the D'966 Patent is not limited to fiberglass pools. Appx1751; Appx1775-1776 (78:13-79:10).

North Star also asserted that Latham failed to identify prior art with the combinations of features claimed in the D'966 Patent, and thus the closeness of the prior art with respect to these combinations of features is a material issue of fact that precludes a finding of summary judgment. Appx998-1000. The court asked about the import of the "combination" of features in one design as opposed to the existence

of each feature in the prior art. Appx1749. As Latham's counsel explained, and the court recognized, with the question of infringement, there is no requirement that one piece of prior art must include all of the elements in the patented design for it to be considered under *Egyptian Goddess*. Appx1749-1750.

The court accordingly entered summary judgment on the issue of infringement. Appx1.

### B.    The District Court Granted Latham's Motion to Strike the Pain Declaration

Latham moved to strike certain paragraphs of the Pain Declaration as improper and untimely expert opinion. Appx1337-1352. North Star filed an opposition, and the court heard oral argument on the motion at the summary judgment hearing. Appx1701-1734 (4:25-37:14). After hearing argument, the court granted in part Latham's motion, striking paragraphs 15-22 of the Pain Declaration and holding "paragraph five is admissible to the extent that it describes Leisure's processes based on Mr. Pain's personal knowledge as the CEO of Leisure." Appx1734 (37:1-14).

Paragraphs 15-22—reproduced on pages 60-62 of North Star's Opening Brief—included testimony opining on the scope of the D'966 Patent and significance of its features, comparing the patented and accused designs, and opining on how the "ordinary observer" would perceive the patented and accused pool designs. Appx1339-1340; Appx1346. This testimony, Latham demonstrated,

constituted expert testimony subject to the requirements of Fed. R. Evid. 702 and disclosure requirement of Fed. R. Civ. P. 26(a) and the court's schedule. Appx1344-1349. The court provided a reasoned analysis based on the Federal Rules and precedent, finding "the vast majority of the challenged statements in Mr. Pain's declaration are inadmissible and must be struck." Appx1731 (34:10-13); *see also* Appx1727-1731 (30:10-34:9). First, the court rejected North Star's assertion that the Pain Declaration included only "factual assertions / personal observations" or was proper lay opinion, finding North Star "failed to establish Mr. Pain's personal firsthand knowledge required to lay a sufficient foundation for numerous paragraphs of testimony in the declaration." Appx1731 (34:14-17). Moreover, the court recognized "Mr. Pain admitted in his deposition that he hasn't had a discussion with a consumer regarding the differences between the Corinthian 16 and the Pinnacle, the precise question on which he expounds in several paragraphs of his declaration" and thus, determined "plaintiffs have not established the foundation for Mr. Pain's testimony regarding how an ordinary observer, a defined term of art, would view, compare, recognize, consider, or distinguish the Corinthian 16 pool shell as opposed to the '966 patent pool shell." Appx1732 (35:2-12).

Then, as an independent basis, the court determined paragraphs 15-22 of the Pain Declaration included "numerous statements [that] rely on Mr. Pains application of his specialized knowledge to the precise facts of the case." Appx1732 (36:19-22).

These, the court found, were "inadmissible explanations and opinions" that must be excluded. Appx1733 (36:5-16).

## SUMMARY OF ARGUMENT

1.    The district court correctly found the record could not support a finding of patent infringement given the different overall appearances of Latham's Corinthian 16 pool and the patented design, especially in light of the prior art. This Court has made clear that a design patent's scope is defined by its drawings. *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988). For this reason, and because the material facts are often undisputed, summary judgment of noninfringement is common in design patent cases. *See, e.g.*, *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895 (Fed. Cir. 2020); *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1336-37 (Fed. Cir. 2015); *Egyptian* Goddess, 543 F.3d at 678.

A simple side-by-side comparison confirms the D'966 Patent's modern design with prominent rectangular features is plainly dissimilar from the Corinthian 16's softer design with discrete curved features. Nevertheless, North Star attempts to downplay the plain differences between the designs with an over-generalized "major features" comparison of generic design concepts and an unsupported argument that the actual and numerous differences in the pools are somehow insignificant in the eye of the ordinary observer. But design patents do not extend to all designs

including the same "major features" and generic design concepts; they only cover designs that have the same or substantially the same overall appearance as what is shown in their figures. The district court correctly rejected North Star's arguments and attempt to expand the scope of its patent to cover a design that is clearly different.

Here, the material facts are undisputed and show the accused Corinthian 16 is plainly dissimilar to the claimed design. No homeowner would purchase one of these pools supposing it to be the other under the ordinary observer test. And if there was any doubt, the many examples of similar prior art cement the fact that an ordinary observer would clearly be able to discern between the patented and accused designs and would not purchase one thinking it was the other. Accordingly, noninfringement was properly found as a matter of law.

2.    The district court did not abuse its discretion when it granted-in-part Latham's motion to strike paragraphs of the Pain Declaration. Having failed to produce any evidence of infringement during discovery, North Star sought to inject expert testimony under the guise of a fact declaration in an attempt to avoid summary judgment. However, the district court properly determined several paragraphs of the Pain Declaration went beyond Mr. Pain's personal knowledge and improperly extended into the realm of expert opinion. Thus, the court appropriately struck the testimony as neither permissible fact testimony nor permissible lay opinion

testimony. And, because such disclosure of expert testimony came well after the court's deadline, the court properly exercised its discretion to preclude it.

## <u>STANDARD OF REVIEW</u>

This Court reviews the district court's grant of summary judgment *de novo*. *MRC Innovations, Inc. v. Hunter Mfg., LLP*, 747 F.3d 1326, 1330-31 (Fed. Cir. 2014) (citing *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 569 (6th Cir. 2008)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Wavetronix LLC v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009) (citation omitted). Thus, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

This Court reviews the grant or denial of a motion to strike under regional circuit law, here the Sixth Circuit. *See Treehouse Avatar LLC v. Valve Corp.*, 54 F.4th 709, 713 (Fed. Cir. 2022). The Sixth Circuit "review[s] such rulings 'under the highly deferential abuse-of-discretion standard.'" *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016)(citation omitted). "An abuse of discretion occurs if the district court 'relies on erroneous findings of fact, applies the

wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Id.*(citation omitted).

## ARGUMENT

## I.    On the Record, the District Court Correctly Granted Summary Judgment of Non-Infringement

The district court correctly ruled that, as a matter of law, the Corinthian 16 does not infringe the D'966 Patent because the overall designs are "plainly dissimilar." Appx2-19.

"Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design." *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1341 (Fed. Cir. 2020)(citing *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995)).

For step two, the "ordinary observer" test is used to determine whether an ordinary observer, giving such attention as a purchaser usually gives, would view the patented and accused designs to be "substantially the same…such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess*, 543 F.3d at 670 (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)). The focus of the ordinary observer test is on the overall ornamental visual impression, rather than "similarities of ornamental features in isolation." *Ethicon*, 796 F.3d at 1335. A proper comparison involves viewing the patent figures

and accused design, considering both the overall designs and ornamental differences to determine "the impact of the ornamental differences on the overall design." *Lanard Toys*, 958 F.3d at 1343-44.

Here, the material facts regarding the patent and accused pool are undisputed and show the Corinthian 16 is plainly dissimilar to the claimed design. Accordingly, the summary judgment of noninfringement should be affirmed, as this Court routinely does in such cases. *See, e.g.*, *Super-Sparkly*, 836 F. App'x at 899; *Lanard Toys*, 958 F.3d at 1344; *Wallace v. Ideavillage Prods. Corp.*, 640 F. App'x 970 (Fed. Cir. 2016); *Ethicon*, 796 F.3d at 1336-37; *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015).

### A.    The Corinthian 16 is Plainly Dissimilar to the D'966 Patent

Contrary to North Star's assertions, the district court's findings are correct because a side-by-side comparison makes readily apparent that the D'966 Patent design and the Corinthian 16 are plainly dissimilar. Accordingly, the noninfringement judgment should be affirmed. *See, e.g.*, *Ethicon*, 796 F.3d at 1336-37; *Richardson*, 597 F.3d at 1296; *Egyptian Goddess*, 543 F.3d at 678.

The design of the D'966 Patent uses prominent, square-edged, rectangular features, and is plainly dissimilar from the design of the accused Corinthian 16 pool, which uses softer, smaller, and curved features. These differences would be immediately apparent to anyone viewing the two designs and thus, no ordinary

observer—here, a homeowner selecting a swimming pool to install in his or her backyard—could mistake one of these designs for the other. So unsurprisingly, North Star proffered no real evidence that the ordinary observer would purchase one design supposing it to be the other. Accordingly, no reasonable juror could conclude that the Corinthian 16 infringes the D'966 Patent, and summary judgment of noninfringement is appropriate.

The district court correctly recognized that mere conceptual similarities between the two designs, with both being rectangular pools with tanning ledges, stairs, and deep end benches, were not enough to demonstrate infringement. Appx14-15. That is because, as the district court found, the "visual appearance of the Corinthian 16 is distinct with rounded and curved edges to the entry steps, tanning ledges, steps entering the body of the pool, and benches." Appx15. Also, as the court found, many of the individual design features of the pools were "noticeably different," and those features work "in concert to create a substantially different overall appearance." Appx15-18. In light of this, the court found the overall appearances of the two designs were "plainly dissimilar" and "[n]o 'ordinary observer' – a homeowner considering purchasing a swimming pool for their home – would mistake the angular D'966 Patent design with the curved Corinthian 16 design." Appx18.

The district court reached the correct conclusion. A simple comparison of the Corinthian 16 against the figures of the D'966 Patent shows there is no genuine dispute that the Corinthian 16 does not infringe. *See* Appx965-967. The most obvious difference is the rectangular and squared-angle style of the D'966 Patent design as compared to the curved and radiused style of the Corinthian 16 design:



**D'966 Patent – Figure 1 (Appx23)**

**Corinthian 16 (Appx768)**

As detailed above, the D'966 Patent design has a modern, linear look with straight edges, sharp corners, all rectangular features, and perpendicular angles that do not appear in the Corinthian 16. *See supra* Counterstatement §II, *supra*. In contrast, the Corinthian 16 has a distinct, softer look with curved features, making the designs "plainly dissimilar." *See supra* Counterstatement §III, *supra*. This distinction alone is sufficient to find the D'966 Patent and Corinthian 16 are not "substantially similar." *See Richardson*, 597 F.3d at 1293, 1296 ("In a side-by-side comparison with the [claimed] design, the overall effect of this streamlined theme makes the [accused] tools significantly different from [the boxy claimed] design. Overall, the accused products clearly have a more rounded appearance and fewer blunt edges than the patented design."); *Ethicon*, 796 F.3d at 1336-37 ("[T]he most obvious difference between the claimed and accused designs [w]as 'the overall contoured shape' of the claimed design and the 'overall linear shape' of the accused design." (citation omitted)). Noninfringement should be affirmed.

Moreover, the overall appearance of a pool design is impacted by the elements used to define the pool, especially to a homeowner considering the purchase of an expensive swimming pool to be permanently installed in their yard. Thus, the clear dissimilarity in the design elements of the D'966 Patent and the Corinthian 16 makes the overall appearances different, as the district court properly found. Appx15-18. In particular, the court properly considered the following undisputed differences

between the D'966 Patent design and the Corinthian 16 design using side-by-side comparisons before concluding "these individual differences, acting in concert, have a substantial impact on the overall appearance of the designs:"

| D'966 Patent | Corinthian 16 |
|---|---|
| • One rectangular full-width entry step and a full-width tanning ledge that is a complete rectangle (Appx27; Appx561 (¶14); Appx1325 (¶14); Appx562-566 (¶¶17-19); Appx14-15) | • Two, smaller curved entry steps tucked into the corners of the pool and a tanning ledge that extends between the steps to the edge of the shallow-end and is thus not a complete rectangle (Appx772; Appx562 (¶¶15-16); Appx1325-1326 (¶¶15-16); Appx566 (¶20); Appx1326 (¶20); Appx14-15) |
|  |  |
| • Two full-width rectangular steps of different lengths leading into the pool from the tanning ledge (Appx566-567 (¶21); Appx1326 (¶21); Appx567-569 (¶¶23-24); Appx1327 (¶¶23-24); Appx16-17) | • Two steps with edges that curve into the pool wall of equal length leading into the pool from the tanning ledge (Appx772; Appx567 (¶22); Appx1326 (¶22); Appx17) |

- Two rectangular box-like benches in the deep-end with smaller rectangular, box-like steps stacked on top of the benches (Appx27; Appx569 (¶¶25, 27); Appx1327 (¶25); Appx17)



- Two smaller, curved deep end benches that are radiused to match the curved entry steps (Appx772; Appx569 (¶26); Appx1327 (¶26); Appx569-570 (¶28); Appx17)



- A safety ledge that extends from the top surface of the deep end bench to the top surface of the tanning ledge (Appx23-24; Appx571-572 (¶32); Appx1328 (¶32); Appx17-18)



- A safety ledge positioned much deeper in the pool, extending from a midway point of the deep end benches to the bottom step. (Appx768-769; Appx572 (¶33); Appx1328 (¶33); Appx17-18)



Considering all these undisputed differences and their impact on the overall appearances of the pools in light of the limited scope of design patent protection makes this a straightforward case for summary judgment. As the court noted, there's no genuine dispute that the size, arrangement, and design of the Corinthian 16's corner steps and tanning ledge create a distinct visual impression when compared to the D'966 Patent, as the inventor of the D'966 Patent design recognized:

> Q Okay. And just so I understand your testimony, you also extended the entry step to be the width of the pool because that looked better to you as well; right?
> A It did.
> Q Okay.
> A It looked more in balance with the other steps . . . if you're going to put your other steps all of the way across, then you might as well do the other one all of the way across to make it look more in balance.

Appx637 (64:21-65:6); *see also* Appx562-566 (¶¶17-18); Appx1326 (¶¶17-18); Appx16. Likewise, there's no genuine dispute that the location and size of the safety ledge distinguishes the designs' appearances. Appx18 ("The inventor of the D'966 Patent chose the location of the safety ledge as 'a design feature' to improve overall 'flow' of the design elements of the pool so it 'looks good.' Indeed, the safety ledge's design impacts the overall design appearance.")(quoting Appx635 (54:5-19)); *see also* Appx571-572 (¶32); Appx1328 (¶32). Thus, the evidence in the record compelled the court's findings that the individual design features of each pool were "noticeably different," and those features worked "in concert to create a substantially

39

different overall appearance." Appx15-18; *see also, e.g.*, Appx718 (64:9-65:9); Appx1020 (22:7-23:9). And because these "plainly dissimilar" designs are "sufficiently distinct" that no reasonable fact-finder could find that an ordinary observer would be deceived into thinking one was the other, the judgment of noninfringement should be affirmed. *Egyptian Goddess*, 543 F.3d at 678; *Gorham*, 81 U.S. at 528.

Moreover, though not legally necessary as North Star suggests (Br. at 15-16), the record before the district court included undisputed evidence that the ordinary observer would appreciate the differences between the modern, geometric design of the D'966 Patent and the softer, curved design of the Corinthian 16. For example, as set forth above in Counterstatement Sections II and III, North Star's witnesses explained how the D'966 Patent and its commercial embodiment, the Pinnacle, use linear features with squared-angles to create a clean and modern look and that customers recognize that look. *See supra* Counterstatement, §§II-III. On the other hand, the undisputed evidence demonstrated Latham's Corinthian 16 incorporates curved features to appeal to consumers who prefer that style. *Id.*

Latham's expert, Mr. Harold Phillips, explained that, from the perspective of the ordinary observer—a homeowner spending tens of thousands of dollars on a pool that will become a permanent and prominent feature of his or her home—the two designs, as a whole, would not appear "substantially the same." Appx316-332; *see*

*Ethicon*, 796 F.3d at 1337. Contrary to North Star's assertions, Mr. Phillips' opinions take into account the perspective of the ordinary observer based on his thirty plus years of experience in the industry working with homeowners. (Br. at 17-18). Specifically, Mr. Phillips opined that "[s]wimming pools are a very large investment, and will be a prominent feature of the purchaser's home for many years," so the purchaser "will consider their decision very carefully, and will closely inspect the various options on the market, paying close attention to, among other things, the various design features and aesthetics of each pool since they will likely be living with that decision for many years." Appx278. Mr. Phillips noted there are "prominent visual differences between the two designs that would be immediately noticeable to a purchaser viewing the two designs." Appx316; *see also* Appx326 (noting "rectilinear and angular" entry features in patent were significantly different from "curved" entry features in Corinthian 16, and this was significant difference to overall appearances of pool designs because "entry features are some of the most visually prominent features of just about every back yard pool, and are particularly so in the North Star 966 Patent's design"); Appx327 (discussing "strong visual impact on the viewer" of patent's rectilinear features). Thus, the record raises no genuine dispute as to the dissimilarity of the overall appearances of the patented and accused designs to an ordinary observer, and summary judgment of noninfringement is appropriate and should be affirmed.

**B.     The District Court Conducted a Proper Infringement Analysis that Considered the Overall Designs and Followed this Court's Precedent**

Notably, North Star does not challenge the facts demonstrating the D'966 Patent and the Corinthian 16 are plainly dissimilar. Instead, North Star attempts to suggest some flaw in the district court's analysis based on misguided assertions that Latham mischaracterized design patent law and led the court astray, the court improperly focused on individual elements of the designs rather than their overall appearances, the court did not consider the overall impact of common features, and the court made improper inferences about the ordinary observer. However, North Star's arguments were already (properly) rejected by the district court and are simply wrong in view of the record and the district court's order.

**1.     The District Court Followed This Court's Precedent**

North Star's bold allegation that "[t]he district court's analysis was [] led astray by Latham's inaccurate recitation of design patent law" (Br. at 26) is entirely unsubstantiated and ignores the two and a half pages in the court's order that accurately sets forth this Court's law on design patent infringement. Appx11-14. Indeed, the court's legal section cites much of the same case law North Star cites (*compare* Appx11-14, *with* Br. at 24-26), and the court's analysis applies that law to the facts (Appx14-19). This entirely undercuts North Star's argument.

Confirming the baselessness of its theory, North Star does not identify any instance where it contends the district court was led astray by Latham's citation of case law. Nor can it. The two cases Latham cited that North Star takes issue with—*Spalding & Evenflo Cos., Inc. v. Graco Metal Prods., Inc.*, 18 U.S.P.Q.2d 2029, 1991 WL 148127, at *3 (N.D. Ohio 1991) and *In re Mann*, 861 F.2d at 1582—are not cited by the court in its analysis. And that Latham did not cite *Columbia Sportswear North America v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019), is inapposite. Indeed, while North Star now contends *Columbia* is "one of the more relevant, recent cases from this Court," it did not cite *Columbia* in its opposition to Latham's summary judgment motion before the district court. Even so, North Star has not presented any basis for its claim that Latham led the court astray, and nothing in *Columbia* prevents summary judgment of non-infringement from being proper in this case.

Moreover, even if Latham inaccurately recited any of the law—it did not—the court did not misapprehend or misapply the law. The district court's analysis made clear the ultimate question being considered was whether a reasonable fact finder could find that North Star could meet its burden of showing that the Corinthian 16 is "substantially similar" to the D'966 Patent, following this Court's precedent. Appx19. That North Star does not like the conclusion the court reached after applying the law to the facts does not warrant reversal.

## 2.    The District Court Considered the Overall Designs

North Star's assertion that the court focused on individual elements of the designs without fully evaluating the designs as a whole or considering the impact of the common features is baseless. (Br. at 19-20). As set forth in Counterstatement Section VI.A, the court focused on the overall appearance of each design to the ordinary observer. *E.g.*, Appx13 (stating ordinary observer test "applies to the patented design in its entirety" and includes "overall ornamental visual impression, rather than 'similarities of ornamental features in isolation'").

While the court discussed the differences in the parties' designs and differences among the features of the designs, the order is clear that the ultimate question is whether "to the ordinary observer, the Corinthian 16's overall ornamental appearance is 'sufficiently distinct' from and 'plainly dissimilar' to the D'966 Patent." Appx14 (citing *High Point*, 621 F. App'x at 641; *Egyptian Goddess*, 543 F.3d at 678). Indeed, the order is replete with the terms "overall ornamental appearance," "overall design," "visual appearance," "overall design appearance," "overall 'plainly dissimilar' appearance," "overall appearance," and the like. *E.g.*, Appx2; Appx14; Appx15; Appx18; Appx19. This was a proper analysis.

The ordinary observer standard requires that the analysis "must extend to *all ornamental features visible during normal use of the product*, *i.e.*, 'beginning after completion of manufacture or assembly and ending with the ultimate destruction,

loss, or disappearance of the article.'" *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1380 (Fed. Cir. 2002)(emphasis added)(citation omitted); *see also Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1323 (Fed. Cir. 2007). This Court has explained the ultimate question of infringement requires comparison of "overall" designs, but to do so, "***necessarily*** consider[s] how the ornamental differences ***in each element*** would impact the ordinary observer's perception of the overall designs." *Lanard Toys*, 958 F.3d at 1343-44; *see also, e.g.*, *Ethicon*, 796 F.3d at 1336-37 (affirming summary judgment of noninfringement where district court recognized differences included "overall contoured shape" of claimed design and "overall linear shape" of accused design and considered "plain dissimilarities" between individual trigger, knob, and button elements of two designs).

While North Star does not dispute the existence of these differences in the designs, it characterizes them as "minor details" that "would be hardly noticeable to average homeowners looking to purchase a pool." (Br. at 34). However, North Star's argument is contradicted by the evidence in the record that was before the court— images of the designs and witness testimony (*e.g.*, Appx538-975; Appx1013-1323; Appx1376-1513)—that undisputedly demonstrates the differences are not "minor details" in the designs—in fact, they are the only details—and they come together "to create a substantially different overall ornamental appearance." Appx15.

The court properly examined specific features of the designs in the context of evaluating those features' impact on the overall designs of the pools. *See, e.g.*, Appx16 (citing inventor's testimony that entry step design "looked more in balance with the other steps"); Appx18 (noting safety ledge's design impacts overall design appearance based on inventor's testimony that it "improve[d] overall 'flow' of the design elements of the pool").

Even in considering individual features, the court's analysis remained properly focused on the appearance of each design as a whole. *See, e.g.*, Appx3-4 (assessing all figures and overall appearance of patented and accused designs); Appx14 ("Beginning with the **overall design**…'the patented and accused designs bring to mind different impressions.'"(emphasis added)); Appx15 (recognizing "individual design features" of designs "are noticeably different, **working in concert** to create a substantially different **overall** ornamental appearance"(emphasis added)).

This Court has repeatedly upheld non-infringement summary judgment rulings that follow the same analysis the district court used here. For example, in *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, the Court affirmed the district court's grant of summary judgment of non-infringement based on differences in the "overall contoured shape" of the claimed design and "overall linear shape" of the accused

design and the "plain dissimilarities" between the trigger, knob, and button elements of the two designs (below). 796 F.3d at 1336-37.



D'804 patent, Fig. 1          Covidien's accused product

*Id*. at 1335.

The district court's analysis of the overall designs and how the individual features of those designs impacted on the overall designs was proper, and summary judgment of noninfringement was appropriate given the court's analysis and findings. *See, e.g.*, *Ethicon*, 796 F.3d at 1336-27; *Lanard Toys*, 958 F.3d at 1343-44.

Moreover, North Star's assertion that "the minor differences are not the type that can establish a lack of material disputes of fact precluding summary judgment, particularly when compared with the strong overall commonality between the two designs" is simply incorrect. (Br. at 35). North Star's theory that the infringement analysis should focus only on "major features" is meritless, having no basis in law or fact. (Br. at 35-36). As an initial matter, the district court did consider common

features in its comparison. Appx15 ("Both designs consist of a roughly rectangular pool with a tanning ledge, full-width stairs, and deep end benches,…"). However, as the court properly determined, these "'high-level similarities' 'are not sufficient to demonstrate infringement.'" Appx15 (quoting *High Point*, 621 F. App'x at 642). Indeed, this Court has consistently rejected North Star's position that alleged similarity in overall shape precludes summary judgment of non-infringement. *E.g.*, *Ethicon*, 796 F.3d at 1337; *Egyptian Goddess*, 543 F.3d at 682; *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Nevertheless, attempting to manufacture a factual dispute, North Star suggests the court's analysis improperly ignored what North Star considers "major visual features" that are common to both designs and sufficient to make the designs "substantially similar" to an ordinary observer. (Br. at 35-36). However, the "major visual features" North Star identifies are simply generic design concepts that are not unique to the D'966 Patent and Corinthian 16 designs and were undisputedly in the prior art. *See supra* Counterstatement §IV. Large tanning ledges are common in the prior art. *Id.* Rectangular steps are common through the prior art, including in combination with large tanning ledges. *Id.* Deep end benches are common throughout the prior art including in combination with tanning ledges. *Id.* Sloped bottoms and symmetry are also common design features in pools. *Id.* Under the ordinary observer analysis, North Star cannot ignore the plain differences in

appearance that are immediately apparent from a visual comparison of the two designs, especially in light of the prior art. Thus, even under North Star's "major feature" analysis, the generic conceptual similarities are not sufficient to create a genuine dispute as to design patent infringement. *See, e.g.*, *Ethicon*, 796 F.3d at 1336 ("On a general conceptual level, both designs include an open trigger, a small activation button, and a fluted torque knob in relatively similar positions within the underlying ultrasonic device. Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs.").

North Star's proposed comparison is not based in law and would improperly expand the scope of the D'966 Patent. Specifically, under North Star's analysis, any rectangular pool with a large tanning ledge, rectangular steps, corner benches in the deep-end, sloped bottoms, and symmetry would infringe the D'966 Patent. This is improper and has been rejected by this Court. *See Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1188 (Fed. Cir. 1988)(holding design patents do not cover "general configuration," they are limited to "ornamental design" of article). As set forth above in Counterstatement Section VI.A, the court's analysis appropriately considered all ornamental features of the designs when comparing the overall designs. And, contrary to North Star's argument, the court's analysis followed this Court's analysis in *High Point* and the Supreme Court's analysis in *Gorham*. (Br. at 37-42). As this Court and Supreme Court prescribe, the district court started with a summary of the

differences between the overall appearances of the D'966 Patent and Corinthian 16 and then noted the differences in the specific features in the context of the overall comparison. *See supra* Counterstatement §VI.A. North Star's unsupported arguments otherwise should be rejected.[7]

### 3.    The District Court Properly Drew Inferences

Finally, North Star misrepresents the record in asserting the district court made general inferences against North Star. (Br. at 42-45). North Star argues that a purported social media posting by Boyer Mountain (the "Instagram Post") somehow shows confusion between Latham and North Star's designs, and further argues that the district court improperly discounted the value of this purported "evidence." Brief, 13-14 and 42-44. Not so.

As an initial matter, the district court did not need to consider the Instagram Post in its infringement analysis. *Cf. Richardson*, 597 F.3d at 1292, 1295-96 (affirming summary judgment of non-infringement and comparing patent figures to

---

[7]North Star argues the facts at issue in *High Point Design* and *Gorham* show that summary judgment should not have been granted here. (Br. at 37-42). But the facts of those cases have little applicability here. As North Star's Brief demonstrates, *High Point Design* involved a design patent for slippers and *Gorham* involved design patents for silverware. *Id.* Neither involved a purchasing decision similar to that of swimming pools. Because the ordinary observer test is applied from the perspective of the hypothetical purchaser of the patented design (*Egyptian Goddess*, 543 F.3d at 670), how a hypothetical purchaser of slippers or a hypothetical purchaser of silverware would view those designs has little factual bearing on how a hypothetical purchaser of a swimming pool would view these designs.

drawings of accused design); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992)("Nothing in *Gorham* suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design.").

Moreover, the district court properly disregarded the Instagram Post shown below because it is not evidence.



Appx1322. North Star never made any attempt to authenticate it during discovery, never sought or obtained any depositions or other discovery from Boyer Mountain to lay the foundation for admissibility, never sought or obtained any depositions or other discovery from anyone else involved in the Instagram Post, and never showed that the "evidence" was anything more than inadmissible hearsay. Appx1629-1639.

North Star's characterizations of the Instagram Post are attorney speculation, not evidence.

Even if it was evidence (which it is not), the Instagram Post, which North Star alleges is a rendering of Leisure's Pinnacle pool, has little to no probative value on the issue of infringement and the district court properly discounted it. Design patent infringement must be assessed from the perspective of the overall appearances of the design, which requires consideration of all the ornamental features shown in all the figures of the patent. *Contessa*, 282 F.3d at 1378 ("Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement."). Further, "[t]he test for infringement requires that 'an accused design be compared to the claimed design, not to a commercial embodiment.'" *Lanard Toys*, 958 F.3d at 1344-45 (quoting *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993)). The Instagram Post and any alleged confusion related to it has little to no bearing on these issues because only shows a simplified top-down view of a swimming pool, and the pool is filled with water, so few if any of the pool's features, such as deep end benches and steps, are clearly visible. Accordingly, the Instagram Post does not have sufficient detail or views corresponding to all the figures of the D'966 Patent. As such, any alleged confusion stemming from it (of which North Star only speculates) has no bearing on whether an ordinary observer would consider the

overall appearance of the D'966 Patent's claimed design and the Corinthian 16 to be substantially the same. Thus, the court properly disregarded this post when determining the Corinthian 16 does not infringe the D'966 Patent.

In addition, North Star has not presented or identified any evidence showing that any alleged confusion represented by the Instagram Post is due to the pool's ornamental appearance. Without such evidence, the Instagram Post has little to no probative value to the question of infringement. *See OddzOn Prods.*, 122 F.3d at 1405-07 (affirming summary judgment of no infringement despite proffered evidence of purported "actual confusion" between patented and accused designs because "'actual confusion' evidence is of little probative value because it does not establish whether the balls were returned to OddzOn simply because they had a tail and fins or because they have an ornamental design similar to that of the patented design"). North Star points to no evidence (as it has none) that any "confusion" reflected in the Instagram Post is due to confusion between the ornamental appearances of the patented and accused designs as opposed to some other reason. Without foundational evidence to support, there is not even any evidence as to who made the post and what the post was intending to convey. Moreover, as the court properly recognized, Boyer Mountain is a dealer, and not representative of the ordinary observer. Appx18-19. Thus, the court did not improperly make inferences against North Star; rather, the court properly disregarded the Instagram Post as

"evidence" of confusion and correctly determined the record did not create a genuine dispute of material fact as to infringement.

Likewise, North Star's reliance on the court's dismissal of the alleged "photoshop" image as error is misplaced. (Br. at 44-45). As an initial matter, North Star has provided no foundational evidence regarding what this image is, whether it was "photoshopped" or who may have performed the alleged "photoshopping." As with the image in the Instagram Post, the singular image of a pool in the "photoshop" image shows very little of the pool's overall appearance and has no bearing on whether an ordinary observer would view the patented and accused designs as substantially the same. As shown below, the "original" (Appx1285-88) and allegedly "photoshopped" (Appx1284) images simply show a rectangular pool with a tanning ledge in one end:

| Appx1285-88 | Appx1284 |
|---|---|
|  |  |

As such, these images have no probative value as to whether an ordinary observer would think the patented and accused designs are substantially the same. *See Lanard Toys*, 958 F.3d at 1343; *Contessa*, 282 F.3d at 1378.

North Star's attempt to characterize its allegations as evidence of confusion is improper. Indeed, the record does not even contain enough evidence to definitively say what the "photoshopped" image is. Although the "photoshopped" image was produced during discovery, the parties have been unable to determine where it came from, when it was created, or what it even shows. *See* Appx1059 (178:1-15); Appx1378 (22:14-24:13). And North Star's reliance on alleged confusion of Latham's expert, Mr. Phillips, is misplaced. (Br. at 45). When asked about the image, Mr. Phillips stated:

> Why do I think it's a photograph of a Corinthian 16? I can't see the entire vessel. The parts that -- the part I do see, which is the two inside radius steps and the shallow shelf, resemble that; but without, you know, deconstructing the whole pool, I wouldn't know if it's an exact duplicate.

Appx1388 (33:14-19). Given the "photoshopped" image depicts part of a pool with two rounded corner entry steps like the Corinthian 16 and unlike the Pinnacle and D'966 Patent, any alleged confusion as to whether the image depicts the Corinthian 16 has no bearing on whether an ordinary consumer would be confused when comparing the Corinthian 16 and D'966 Patent.

Thus, the court properly disregarded this photo when assessing whether the record evidence raised a genuine dispute of fact. And based on the evidence in the record, the court correctly determined a simple visual comparison of the D'966 Patent and the Corinthian 16 establishes that the designs are plainly dissimilar, and no ordinary observer would confuse one for the other. None of the arguments North Star advances changes that simple fact. Summary judgment of non-infringement was appropriate and should be affirmed on that basis alone. *E.g.*, *Lanard Toys*, 958 F.3d at 1343-44; *Ethicon*, 796 F.3d at 1336-37; *Richardson*, 597 F.3d at 1292, 1295-96.

### C.    The Similar Prior Art Designs Confirm Summary Judgment of Non-Infringement is Appropriate.

The district court correctly granted summary judgment of non-infringement because the D'966 Patent and Corinthian 16 designs are plainly dissimilar. As such it is not necessary to consider the impact of the prior art on the non-infringement analysis. *See Egyptian Goddess*, 543 F.3d at 678 (holding prior art only considered when the patented and accused designs are not "plainly dissimilar"). Nevertheless, the district court correctly recognized that summary judgment is further warranted due to the presence of many similar pool designs in the prior art. *See id.* at 678 ("Where there are many examples of similar prior art designs, as in a case such as *Whitman Saddle*, differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art.").

As the court noted, it was undisputed that each of the design elements in the D'966 Patent and Corinthian 16 existed before the D'966 Patent was filed. Appx19. Specifically, as set forth above in Counterstatement Section IV, the record demonstrated—and North Star did not dispute—that rectangular pools with a rectangular tanning ledge, rectangular pools with a rectangular tanning ledge and rectangular steps, and rectangular pools with a rectangular tanning ledge and deep end benches were all publicly available before the D'966 Patent was filed. Appx5-9. Thus, because the D'966 Patent design, with its rectangular tanning ledge, rectangular steps, and deep end benches, is similar to the prior art designs, even small differences between the Corinthian 16 and the D'966 Patent design are likely to be important to the eye of the hypothetical ordinary observer and take on greater significance. *Egyptian Goddess*, 543 F.3d at 676; *Ethicon*, 796 F.3d at 1336. North Star points to no competent evidence in its brief that the identified differences between the parties' designs would not be "immediately apparent" to an ordinary observer familiar with the prior art. Thus, when the prior art is considered here, noninfringement of the D'966 Patent by the Corinthian 16 is confirmed.

Further, the primary way that the D'966 Patent design differs from the prior art is that the claimed design has unique rectangular box-on-box deep-end benches. Therefore, the attention of the hypothetical ordinary observer will be drawn to this major design difference. *Egyptian Goddess*, 543 F.3d at 676. And, given the

Corinthian 16's deep end benches are smaller and curved, that the attention of the hypothetical ordinary observer will be drawn to these distinct features of the claimed and accused designs due to the prior art, confirms the overall appearance of the claimed and accused designs do not look the same to an ordinary observer as a matter of law. *Id.*

In light of this record and this Court's precedent, the district court correctly concluded that because "[e]ach of the pertinent design elements included in the D'966 Patent and Corinthian 16—from the entry steps to the deep end benches—existed before Plaintiffs filed the D'966 Patent," "[t]he small differences, and large differences, between the D'966 Patent and Corinthian 16 are likely to be important to the eye of a homeowner considering purchasing a swimming pool for his or her home." Appx19 (citing *Egyptian Goddess*, 543 F.3d at 678).

North Star does not challenge the facts demonstrating that the pertinent design elements and concepts were known; instead, North Star argues that the district court incorrectly analyzed the prior art because its order does not have a "side-by-side comparison of the D'966 design, the Corinthian 16 design, and a prior art design." (Br. at 55). Specifically, North Star improperly faults the court for not performing a "three-way comparison," alleging it "compared only bits and pieces of prior-art designs." *Id.* North Star's argument is based on a mischaracterization of what the law requires and misrepresentation of the court's analysis.

As an initial matter, North Star misrepresents the district court's analysis of the prior art. As set forth above, the record before the court included numerous examples of prior art pool designs, several of which were in the form of YouTube videos that show "walk-arounds" of the prior art pool designs in their entireties. Appx5-9; Appx613; Appx574-581 (¶¶39-41); Appx1328-1329 (¶¶39-41). While the district court includes screen shots from the videos in its order (Appx5-9), North Star's suggestion that the court did not consider the designs as a whole when that evidence was in the record is entirely unsubstantiated. As set forth above, the court's analysis expressly considers the elements and their arrangement within entire pools, not just "bits and pieces" of the prior-art designs as North Star alleges.

Moreover, North Star's argument is based on the faulty premise that the court needed to assess the prior art. However, there is no requirement that the prior art be assessed at all here, where the patented and accused designs are "plainly dissimilar." *Egyptian Goddess*, 543 F.3d at 678. Indeed, North Star had the burden to show the Corinthian 16 was "not plainly dissimilar" to the claimed design to potentially bring the prior art into play. *Id.* at 678-69. As shown above, North Star did not and could not carry that burden. *E.g.*, *supra* Counterstatement §§II-III; Argument §I.A. Accordingly, an examination of the prior art was unnecessary. *Egyptian Goddess*, 543 F.3d at 679-79. Thus, even if the district court's analysis was improper—it was

not—the analysis could be disregarded and summary judgment of noninfringement still appropriate.

Nevertheless, even when consideration of the prior art is appropriate, there is no requirement that the court conduct North Star's prescribed "three-way-comparison." To the contrary, this Court's holding in *Egyptian Goddess* states simply that the ordinary observer analysis "will benefit from a comparison of the claimed and accused designs with the prior art;" it does not specify how the comparison must be done. 543 F.3d at 678. *Egyptian Goddess* recognizes that it is not only the overall appearance of the prior art that may be relevant, but also the ornamental features included in various prior art references. *See, e.g., id.* at 680 (noting it may be helpful to point out "various **features** of the claimed design as they relate to the accused design and the prior art." (emphasis added)); *see also Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893); *Zidell v. Dexter*, 262 F. 145 (9th Cir. 1920).

The *Whitman Saddle* and *Zidell* cases are discussed in *Egyptian Goddess* and demonstrate how the design features in prior art references can be considered in the non-infringement analysis. *See, e.g., Egyptian Goddess*, 543 F.3d at 673-674 (discussing *Whitman Saddle*, 148 U.S. 674, and *Zidell*, 262 F. 145). In *Whitman Saddle*, the Supreme Court "characterized the patented saddle design as a combination of elements from two saddle designs that were well known in the art"

with the patented design being a "combination of the front half of the so-called Granger saddle and the back end of the so-called Jenifer saddle." *Egyptian Goddess*, 543 F.3d at 673 (emphasis added). The Supreme Court ruled that because of the similarities in the prior art, the small differences between the patented and accused designs required a holding of non-infringement. *Id.* at 673-674. In *Ziddell*, the Ninth Circuit "cited *Whitman Saddle* for the proposition that under the ordinary observer standard, a patented design that consists 'only of bringing together old elements with slight modifications of form' is not infringed by 'another who uses the same elements with his own variations of form'…'if his design is distinguishable by the ordinary observer from the patented design.'" *Id.* at 674. Thus, under *Egyptian Goddess*, which cites *Whitman Saddle* and *Zidell* with approval, it is not only the overall appearance of individual prior art references that is relevant, but also the elements of those designs and how they may be combined.

The Federal Circuit has reiterated this assessment of prior art in design patent infringement. For example, in *Lanard Toys*, the Court affirmed summary judgment of noninfringement of a design patent for a pencil-like chalk holder. 958 F.3d at 1342-43. The district court granted summary judgment after considering the prior art, finding:

> Here, Lanard's patented design consists of no more than 'bringing together old elements,' the conical tapered end, the hexagonal body, the ferrule, the columnar eraser, 'with slight modifications of form,' to create its unique pencil-shaped chalk holder design. This design is not

61

infringed by Ja-Ru using 'the same elements with [its] own variations of form,' because the accused design 'is distinguishable by the ordinary observer from the patented design.'

*Lanard Toys Ltd. v. Toys "R" Us-Del., Inc.*, 2019 WL 1304290, at *17 (M.D. Fla. Mar. 21, 2019)(citations omitted). This Court affirmed that grant of summary judgment and approved of the district court's analysis of the prior art. *Lanard Toys*, 958 F.3d at 1342-43.

The reasoning in *Whitman Saddle*, *Zidell*, and *Lanard Toys* supports affirmance of non-infringement here. The D'966 Patent's design consists of elements that are well known in the prior art—rectangular pools, rectangular tanning ledges, rectangular steps, deep end benches, and the other design elements of the D'966 Patent are all common design elements in swimming pools. As discussed in Counterstatement Sections III and V, while the Corinthian 16 uses functionally similar elements, it does so with its own variations in forms. The entry step designs, the shape of the tanning ledge, the location of the safety ledge, and the shape and configuration of the deep end benches are all very different between the D'966 Patent and the Corinthian 16. Even if the two designs were not plainly dissimilar (which they are), the ordinary observer could not fail to notice the differences in overall appearance of the two designs given the commonality of these design features throughout the prior art. North Star's subjectively chosen "three way

comparisons" cannot dilute the obvious relevance of this prior art, which the court correctly analyzed consistent with controlling legal authority.

Finally, North Star's reliance on *Revision Military Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524 (Fed. Cir. 2012), is misplaced. Br. at 55-56. *Revision Military* merely holds that when patented and accused designs are not plainly dissimilar it is necessary to factor prior art into the ordinary observer analysis. *Id.* at 527 (noting disagreement with the district court's holding that it was not a "close case" and that therefore the prior art should have been considered before ruling on a motion for preliminary injunction). *Revision Miliary* is not inconsistent with the district court's ruling here. Unlike *Revision Military*, it is not a "close case" here as the designs are plainly dissimilar and readily distinguishable by the ordinary observer. *See supra* Argument I.A. Moreover, also unlike *Revision Military*, the court here ***did*** properly factor prior art into its analysis and find that the closeness of the prior art further supported summary judgment of non-infringement. *See supra* Counterstatement §VI.A.2. The court's analysis and judgment here were consistent with *Revision Military*.

Thus, while it is not necessary to even consider the prior art given the plain dissimilarity of the D'966 Patent and the Corinthian 16 appearances, reference to the prior art only strengthens the case for summary judgment. North Star's attempt to monopolize any use of a rectangular pool with a tanning ledge and deep end benches

flies in the face of the very limited scope of design patent protection and should be rejected. *See Mann*, 861 F.2d at 1582.

## II.    The District Court Did Not Abuse Its Discretion When It Excluded the Testimony of David Pain in Paragraphs 15-22 of the Pain Declaration

The district court properly excluded portions of Mr. Pain's expert testimony regarding the scope of the D'966 Patent and its comparison with the Corinthian 16 designs from the perspective of an ordinary observer. North Star's attempt to resurrect Pain's testimony by characterizing it as lay opinion testimony should be rejected, as it was by the district court. As set out below, the court's exclusion was based on appropriate application of Federal Rules of Civil Procedure and Evidence, and there is no ground for reversal, especially under the "highly deferential abuse-of-discretion standard." *See Baker Hughes*, 836 F.3d at 560 (citation omitted).

Witness testimony may be used to support or oppose a motion for summary judgment in two instances. First, a witness may provide factual testimony pursuant to Federal Rule of Civil Procedure 56(c)(4), which limits such testimony to "***facts*** that would be admissible in evidence" and "made on ***personal knowledge***." Fed. R. Civ. P. 56(c)(4) (emphasis added). Second, "[a] witness may testify based on opinion, as opposed to testifying to facts of which he has direct knowledge," as a lay person under Rule 701 or an expert under Rule 702. *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013). Where a witness applies his or her specialized knowledge to the facts of the case, such testimony is no longer lay person testimony

and becomes expert witness testimony under Rule 702 further requiring the expert to be qualified under the rule. *Id.* at 595-600.

As the district court found, the testimony in paragraphs 15-22 of the Pain Declaration is not permissible as fact or lay opinion testimony. North Star affirmatively chose to provide no expert testimony under the required expert disclosure schedule in the case. Appx1727 (30:6-9). Thus, Mr. Pain's testimony is admissible only if it satisfies the requirements for a fact declaration under Rule 56(c) or for lay witness testimony under Rule 701. Appx1727 (30:10-25). The court correctly found it does not. Appx1725-1734 (28:25-37:14).

## A.    The District Court Properly Concluded David Pain's Testimony was Inadmissible

The district court properly found Mr. Pain's testimony inadmissible on two, independent bases: (1) North Star provided insufficient evidence of personal knowledge necessary to lay a foundation for Mr. Pain's testimony; and (2) Mr. Pain's testimony was not lay witness testimony and was instead expert testimony under Rule 702 and thus was not admissible.[8]

---

[8]The court partially excluded the proffered testimony in the declaration of David Pain, the CEO of Leisure Pools. Earlier sections of this brief quote deposition testimony of Kerry Pain, the inventor of the D'966 Patent, testifying about the invention in his patent. Kerry Pain's testimony was not objected to and was properly considered by the court.

First, the court correctly excluded the Pain testimony after determining it was not based on his own personal knowledge and North Star "[had] not established the foundation for Mr. Pain's testimony regarding how an ordinary observer…would view, compare, recognize, consider, or distinguish the Corinthian 16 pool shell as opposed to the '966 patent pool shell." Appx1732 (35:2-12). Courts in the Sixth Circuit have found witness testimony inadmissible as factual testimony or lay opinion testimony where, as here, the witness "never specified personal experiences that led him to obtain his information but, instead, repeatedly relied on…general knowledge." *Freeman*, 730 F.3d at 596-97; *see also United States v. Lucas*, 2021 WL 4099241, at *17 (6th Cir. Sept. 9, 2021)(holding district court erred in admitting witness testimony when witness had "no 'personal experiences that led him to obtain his information'" (citation omitted)). A fact witness, like Mr. Pain, is limited to testifying to concrete facts based on personal knowledge obtained through his own observations and perceptions. *United States v. Ganier*, 468 F.3d 920, 926 (6th Cir. 2006).

The district court correctly determined Mr. Pain's testimony was not based on his personal knowledge or experiences. Specifically, while Mr. Pain's declaration includes numerous statements regarding how an "ordinary observer" would perceive the pool designs at issue in this case (*see* Appx1005-1007 (¶¶15-22)), Mr. Pain admitted he has limited *actual* experience working with customers, is not currently

involved in sales, and has no experience selling the Pinnacle (Appx1590 (28:16-22); Appx1592 (75:18-25); Appx1593 (76:12-22)). Moreover, Mr. Pain admitted he "ha[d] not discussed with a consumer the difference between the [accused product and the D'966 patent]." Appx1595 (120:5-6). Thus, as the court found, the record did not have any evidence sufficient to show Mr. Pain's testimony regarding the ordinary observer was based on his personal knowledge or experience. To be sure, the district court asked North Star if there was "any evidence in the record that Mr. Pain communicated with any ordinary observers about the relevant pool shells," and North Star was unable to identify any. Appx1719 (22:4-10). Thus, the district court's conclusion that Mr. Pain's testimony in paragraphs 15-22 lacked foundation was sufficient to support exclusion of that testimony. *E.g.*, *Freeman*, 730 F.3d 590 at 596-97.

Second, the court correctly held Mr. Pain's testimony was inadmissible expert testimony as opposed to lay testimony and properly exercised its discretion in precluding Mr. Pain from offering expert testimony given North Star's failure to follow the court's expert disclosure schedule without sufficient justification. Appx1732-1733. *See, e.g.*, *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land In Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016)(citation omitted).

Lay witnesses may not provide testimony that requires knowledge and familiarity "well beyond that of the average lay person." *United States v. White*, 492

F.3d 380, 403 (6th Cir. 2007)(citation omitted); *see also* Appx1729 (32:18-24).
North Star recognizes Mr. Pain's knowledge is beyond that of the average lay person,
stating "Pain has been in the business of selling fiberglass pool shells for over twenty
years" and "with that experience, [Mr. Pain] has grown to be extremely
knowledgeable as to the thought process of a purchaser or potential purchaser of
fiberglass pool sheets." (Br. at 4). Given Mr. Pain has never communicated with any
ordinary observers about the relevant pools, his "knowledge" was at best based on
"specialized knowledge" he claims to have obtained through his twenty years in the
fiberglass pool industry. The court properly excluded Mr. Pain's testimony under
Rule 701. *See White*, 492 F.3d at 403.

North Star's attempt to liken Mr. Pain's opinion testimony to lay opinion
testimony other courts have found admissible falls flat. (Br. at 62-63). For example,
in *United States v. Faulkenberry*, the witness summarized a large amount of data,
which the court deemed lay testimony because "that task required only everyday
reasoning rather than specialized knowledge." 614 F.3d 573, 588 (6th Cir. 2010).
The court further noted the witness did not draw any conclusions as to what the data
meant. *Id.* In contrast, Mr. Pain, with no personal knowledge from customers, draws
conclusions about the visual impressions of ordinary observers and, as the district
court found, does so based on specialized knowledge in the fiberglass pool industry.
Appx1731-1733 (34:14-36:8). The remaining cases North Star cites involve

testimony based on *personal* knowledge and not expert inferences, such as those Mr. Pain draws as to how a homeowner might view and compare two specific pool designs (Appx1005-1007 (¶¶16-22)). *See United States v. Munoz-Franco*, 487 F.3d 25, 35-36 (1st Cir. 2007)(holding admissible testimony on employer's objective business practices; *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 110-11 (2d Cir. 2002)(finding testimony on background information to be based on witness's personal knowledge and admissible); *B&G Plastics, Inc. v. E. Creative Indus.*, 2004 WL 307276, at *21-25 (S.D.N.Y. Feb. 18, 2004)(same); *Freeman*, 730 F.3d at 598 ("[A] case agent testifying as a lay witness may not explain to a jury what inferences to draw from recorded conversations involving ordinary language.").

To protect against the type of gamesmanship North Star is attempting here, Subsection (c) was added to Rule 701 to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Civ. P. 16 by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note (2000 Amendments). In light of this amendment, the Sixth Circuit has declined to follow even its own cases decided before the 2000 Amendments when navigating the distinction between Rule 701 and Rule 702. *See Ganier*, 468 F.3d at 926-27; *White*, 492 F.3d at 401.

Accordingly, North Star's arguments are unavailing and fail to demonstrate the district court abused its discretion in striking Mr. Pain's testimony.

### B.    Even If Mr. Pain's Declaration Had Been Considered, The District Court's Grant of Summary Judgment Is Still Proper

Even if this Court finds the exclusion of Mr. Pain's Declaration was an abuse of discretion, the district court's decision should not be overturned "if the error is harmless." *See Freeman*, 730 F.3d at 595 (citation omitted). An error is "harmless" if it can be shown "by a preponderance of the evidence that the error did not materially affect the verdict." *United States v. Young*, 847 F.3d 328, 349-50 (Fed. Cir. 2017). The exclusion of Paragraphs 15-22 of Mr. Pain's Declaration did not materially affect the grant of summary judgment because Mr. Pain's conclusory assertions do not—and cannot—create factual disputes on the issue of noninfringement sufficient to avoid summary judgment.

The Sixth Circuit has repeatedly held "conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017); *see also Lemon v. Norfolk S. Ry. Co.*, 958 FDA 417, 420 (6th Cir. 2020); *Pierce v. Ocwen Loan Servicing, LLC*, 2021 WL 4129526, at *2 (6th Cir. Sept. 10, 2021); *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1174-75 (Fed. Cir. 2017). Paragraphs 15-22 of the Pain Declaration consist of conclusory, unsupported assertions regarding the alleged similarity of the pool designs, the

unsubstantiated impressions of a hypothetical ordinary observer, and the ultimate issue of infringement. *See* Appx1005-1007 (¶¶15-22). Accordingly, even if Mr. Pain's testimony had been considered by the district court, the court would have reached the same result because the proffered testimony is insufficient to defeat summary judgment.

Moreover, the exclusion of Mr. Pain's declaration was harmless because, as set forth above, summary judgment of noninfringement was proper here based solely on a visual comparison of the designs. Thus, the self-serving statements in Mr. Pain's declaration, even if admissible, would not impact the conclusion that the Corinthian 16 does not infringe the D'966 Patent.

## <u>CONCLUSION</u>

For the foregoing reasons, Latham respectfully requests this Court affirm the district court's decisions granting summary judgment of noninfringement and striking paragraphs 15-22 of the Pain Declaration.

DATED: January 26, 2024

KILPATRICK TOWNSEND &
STOCKTON LLP
Megan E. Bussey
1114 Avenue of the Americas
New York, NY 10036
Telephone:  212-775-8700
Facsimile:   212-775-8800
mbussey@kilpatricktownsend.com

Respectfully submitted,

KILPATRICK TOWNSEND &
STOCKTON LLP

*/s/ Russell A. Korn*
Russell A. Korn
Michael A. Bertelson
Courtney S. Dabbiere
1100 Peachtree Street, Suite 2800

Atlanta, GA 30309-4530
Telephone: 404-815-6500
Facsimile: (404) 815-6555
rkorn@kilpatricktownsend.com
mbertelson@kilpatricktownsend.com
cdabbiere@kilpatricktownsend.com

*Attorneys for Appellees Latham Pool
Products, Inc.*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  23-2138

**Short Case Caption:**  North Star Technology International Ltd. v. Latham Pool Products, Inc.

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  13,824  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 01/26/2024

Signature:  /s/ Russell A. Korn

Name:  Russell A. Korn

Save for Filing