**NON-CONFIDENTIAL**

**2023-2138**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

NORTH STAR TECHNOLOGY INTERNATIONAL LTD.,
NORTH STAR TECHNOLOGY LTD.,
*Plaintiffs-Appellants,*

v.

LATHAM POOL PRODUCTS, INC.,
*Defendant-Appellee.*

On Appeal from the United States District Court for the Eastern
District of Tennessee, No. 3:19-cv-120-KAC-DCP

# REPLY BRIEF OF APPELLANTS
# NORTH STAR TECHNOLOGY INTERNATIONAL LTD.
# AND NORTH STAR TECHNOLOGY LTD.

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Ave., NW
Suite 1025
Washington, D.C. 20006
(202) 995-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

Perry J. Saidman
Perry Saidman, LLC
3 Island Ave.
Suite 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.com

Wade R. Orr
Michael J. Bradford
Luedeka Neely Group, P.C.
900 S. Gay Street, Suite 1504
Knoxville, Tennessee 37902
worr@luedeka.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... v

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 3

I.  Latham Identifies No Precedent Supporting Summary Judgment When The Purported Differences Are So Small Compared To The Entire Patented Design ..................................... 3

    A.  Precedent Confirms that a Reasonable Jury Could View Latham's Pool as "Substantially the Same" or a "Colorable Imitation" ................................................................. 3

    B.  The Overall Appearance of Each Pool Emphasizes the "Elegant," "Streamlined" "Balanced" Design ........................ 7

    C.  The Four Minor Differences Relied on By the District Court Do Not Support the "Sufficiently Distinct" Finding .................................................................................... 12

II.  Latham's Response Highlights Additional Factual Disputes That Should Have Precluded Summary Judgment ...................... 19

    A.  The Extensive Testimony from North Star's Witnesses, Including Lesa Kidd, and Their Knowledge of Customer Preferences ............................................................. 19

    B.  Boyer Mountain's Confusion with Latham's Accused Infringing Pool ....................................................................... 21

    C.  The Confusion of Latham's Expert Witness ......................... 23

    D.  Latham's Development of Its Pool Coincides with Its Copying of North Star's Pinnacle Pool ................................. 25

    E.  A Reasonable Jury Could Reject the Flawed Analysis of Latham's Expert Witness ...................................................... 27

III.  The Proper Comparison In View Of The Prior Art Illustrates
      Why A Jury Could Find Infringement ........................................... 29

      A.    A Three-Way Comparison Provides the Necessary
            Prior-Art Frame of Reference ................................................. 30

      B.    A Full Prior-Art Comparison Shows How a Reasonable
            Jury Could Find Latham's Corinthian 16 To Be
            Substantially the Same as the Patented Design .................. 33

IV.   The Court Improperly Excluded Mr. Pain's Testimony ................ 36

      A.    Pain's Extensive Personal Knowledge ................................... 36

      B.    Pain's Lay Witness Opinion ................................................... 39

      C.    The Error is Not Harmless .................................................... 39

V.    Conclusion ....................................................................................... 39

CERTIFICATE OF COMPLIANCE

**CONFIDENTIAL MATERIAL OMITTED**

In the non-confidential version of this brief, pages 25-27 omit materials relating to Appellee Latham Pool Products, Inc.'s internal product research and development activities and financial information.

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*AGI Realty Service Group, Inc. v. Red Robin International, Inc.*
   81 F.3d 160 (6th Cir. 1996)............................................................ 37, 38

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
   439 F.3d 1365 (Fed. Cir. 2006)........................................................ 7, 29

*Amini Innovation Corp. v. Anthony Cal., Inc.*,
   211 Fed. App'x 938 (Fed. Cir. 2007)............................. 7, 16, 21, 22, 28

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).............................................................................. 23

*Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*,
   26 F. Supp. 2d 834 (E.D. Va. 1998)..................................................... 27

*Braun, Inc. v. Dynamics Corp. of Am.*,
   975 F.2d 815 (Fed. Cir. 1992)..................................................... 5, 6, 16

*Catalina Lighting, Inc. v. Lamps Plus, Inc.*,
   295 F.3d 1277 (Fed. Cir. 2002)....................................................... 4, 5, 6

*Catawba Indian Tribe of South Carolina v. South Carolina*,
   978 F.2d 1334 (4th Cir. 1992)............................................................. 38

*Columbia Sportswear North America v.*
   *Seirus Innovative Accessories, Inc.*,
   942 F.3d 1119 (Fed. Cir. 2019).......................................................... 31

*Contessa Food Products, Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002).......................................................... 15

*Crocs, Inc. v. International Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010).......................................................... 32

*Door-Master Corp. v. Yorktowne, Inc.*,
   256 F.3d 1308 (Fed. Cir. 2001)......................................................... 6, 7

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) (en banc).............. 2, 6, 12, 29, 30, 33, 36

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015) ................................... 8, 9, 10

*Fambrough v. Wal-Mart Stores, Inc.*,
    611 Fed. App'x 322 (6th Cir. 2015) ................................... 37

*Fanimation, Inc. v. Dan's Fan City, Inc.*,
    No. 1:08-cv-1071-TWP-WGH
    2010 WL 5285305 (S.D. Ind. Dec. 16, 2010) ...................................... 33

*Gorham Co. v. White*,
    81 U.S. 511 (1871) ............................................ 4, 5, 6, 11, 24

*High Point Design LLC v. Buyers Direct, Inc.*,
    730 F.3d 1301 (Fed. Cir. 2013) ...................................... 11

*Lanard Toys Ltd. v. Toys "R" US-Delaware, Inc.*,
    958 F.3d 1337 (Fed. Cir. 2020) ............................................ 10

*OddzOn Prod., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ......................................... 11

*Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    739 F.3d 694 (Fed. Cir. 2014) .......................................... 4

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000) ............................................... 22

*Revision Military, Inc. v. Balboa Mfg. Co.*,
    700 F.3d 524 (Fed. Cir. 2012) .......................................... 32

*Richardson v. Stanley Works, Inc.*,
    597 F.3d 1288 (Fed. Cir. 2010) .......................................... 10

*Richardson v. Stanley Works, Inc.*,
    610 F. Supp. 2d 1046 (D. Ariz. 2009) ................................... 10

*Rockport Co., Inc. v. Deer Stags, Inc.*,
    65 F. Supp. 2d 189 (S.D.N.Y. 1999) ................................... 38

*Smith v. Whitman Saddle Co.*,
    148 U.S. 674 (1893) ............................................................................ 35

*Voltstar Technologies, Inc. v. Amazon.com, Inc.*,
    No. 13-C-5570, 2014 WL 3725860 (N.D. Ill. July 28, 2014) .............. 33

*WYCQ, Inc. v. National Music Marketing*,
    No. 3:05-cv-0979, 2008 WL 56027 (M.D. Tenn. Jan. 3, 2008) ........... 38

**Statutes**

35 U.S.C. § 289 .......................................................................................... 3

## INTRODUCTION

Latham repeats the district court's errors by overemphasizing small differences in the overall pool designs, without appreciating that small differences would minimally impact an ordinary observer's view of the pools. The district court and Latham were seeking near-identicality, but design-patent infringement can cover non-identical designs that are "substantially the same."

Importantly, based on the facts, the "substantially the same" issue was a triable question for the jury. Significant evidence speaks to design similarities, consumer confusion, customer demand, and Latham's copying. The testimony of Latham's own expert is internally conflicting. When considering all the evidence—and when reasonable inferences favor North Star, as they must—a reasonable jury could readily find that Latham's Corinthian 16 infringes the D'966 patent.

Whether viewed as a misapplication of the undefined "sufficiently distinct" standard or as a failure to appreciate genuine disputes of material facts, the district court's erroneous decision is confirmed by a visual "frame of reference" comparison of the patented design, the accused infringing design, and one of the closest prior-art pools.

| D'966 Patented Design | Accused Design: Corinthian 16 | Prior Art: Olympia Pool |
|---|---|---|
|  |  |  |
|  |  |  |

This prior-art-based comparison—an approach employing the preferred frame of reference endorsed in *Egyptian Goddess*, 543 F.3d at 676-77—confirms that an ordinary observer would view Latham's Corinthian 16 as infringing the patent because it is so much closer to the patented design than the prior-art pool.

Perhaps most tellingly, Latham does not once dispute the conclusion of infringement under the three-way comparison. Latham claims three-way comparisons are "subjective" but importantly does not dispute that the Corinthian 16 pool looks much more similar to the patented design than to any prior-art design.

Finally, the exclusion of CEO David Pain's testimony was an abuse of discretion.  His testimony supporting infringement rests on his personal knowledge drawn from his two decades of direct experience in the pool industry.

## ARGUMENT

## I.    Latham Identifies No Precedent Supporting Summary Judgment When The Purported Differences Are So Small Compared To The Entire Patented Design

Latham's response reinforces its misunderstanding of design-patent infringement.  When correctly applying this Court's precedent, the summary-judgment ruling is an unduly narrow, checklist-based focus on individual differences in the pool designs.  The court should have considered the designs as a whole, in the context of the prior art, and how an ordinary observer would see "substantial similarity" between the alleged infringing Corinthian 16 and the D'966 patent.

### A.    Precedent Confirms that a Reasonable Jury Could View Latham's Pool as "Substantially the Same" or a "Colorable Imitation"

To start, Latham's advancement of the "virtually no scope" position does not comport with the statute or precedent, especially when applied to the current facts.  Congress authorized design patents to have a modest scope.  35 U.S.C. § 289 (imposing liability for unauthorized use of "any

colorable imitation"); *Gorham Co. v. White*, 81 U.S. 511 (1871). As this Court has explained, a design patent's scope includes infringement under the doctrine of equivalents. *Pacific Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 700-02 (Fed. Cir. 2014) ("For design patents, the concepts of literal infringement and equivalents infringement are intertwined.").

*Gorham* is a perfect example. The Supreme Court listed several differences between the patented and accused designs. 81 U.S. at 529. The Court nevertheless held the infringing design to be substantially the same. *Id.* at 531. To make the ruling, the Court necessarily understood that a design patent has a reasonable scope beyond its literal drawings.

Here, the district court's overly narrow view of North Star's patent—as urged by Latham—conflicts with this Court's precedent. For instance, the summary-judgment ruling conflicts with *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277 (Fed. Cir. 2002). There, this Court affirmed a jury finding of design-patent infringement based on a lamp having stark differences in appearance. *Id.* at 1287.

| Lamps Plus Patent[1] | Catalina Infringing Lamp |
|---|---|
|  <br> FIG. 2 |  |

The Court explained that "no reason" was shown why the infringing lamp "alone does not provide substantial evidence of whether an ordinary observer would believe the patented lamp and the Catalina lamp to be substantially the same." *Id.* Despite the notable differences between the patented design and Catalina's competing lamp, a reasonable jury found infringement under the "substantially the same" standard. *Id.*

The Court used a similar approach in *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815 (Fed. Cir. 1992). The Court affirmed a jury's verdict of design-patent infringement, even though the infringing hand-

---

[1] To be clear, the Court's opinion does not specify a particular drawing from the design patent, but Figure 2 from the Court's opinion is the same in both the asserted utility and design patents, and the design patent had other images of its patented lamp.

held blender lacked the prominent handgrip indentation of the patented

design.

| Patented Design | Infringing Product |
|:---:|:---:|
|  | |

975 F.2d at 818 (Exs. A, B).

The outcomes in *Catalina* and *Braun* comport with *Gorham* and the

statutory scheme.  Design patents have scope, and small features in a

product of much larger size will logically have a lesser impact on the or-

dinary observer's assessment of infringement.  *See Egyptian Goddess,

Inc. v. Swisa, Inc.* 543 F.3d 665, 677 (Fed. Cir. 2008) (en banc) (explaining

that an ordinary observer "will attach importance to differences between

the claimed design and the prior art depending on the overall effect of

those differences on the design"); *Door-Master Corp. v. Yorktowne, Inc.*,

256 F.3d 1308, 1314 (Fed. Cir. 2001) (affirming jury verdict of infringe-

ment for door that had "an appearance similar to the prior art").[2]

## B. The Overall Appearance of Each Pool Emphasizes the "Elegant," "Streamlined" "Balanced" Design

Unlike the district court's check-list approach, the overall design of

the Corinthian 16 must be compared to the overall patented design.

When the overall appearances are analyzed, North Star had, at a mini-

mum, met its burden to identify factual disputes about whether the com-

peting Corinthian 16 is "substantially the same" or a "colorable imitation"

of North Star's patented design.

The district court's flawed analysis is encapsulated in one sentence

from its opinion: "But the Corinthian 16 design is curved." Appx0015.

That conclusion is plainly erroneous. Even Latham's expert recognized

that the "Corinthian 16 is generally rectangular" and "includes features

that are conceptually and functionally similar" to the patented design.

Appx1170. It is undisputed that the Corinthian 16 shares six identical

major design elements with the D'966 patent. Opening Br. 35-36;

---

[2] Additional cases, left unaddressed by Latham, confirm North Star's po-
sitions. *See Amini Innovation Corp. v. Anthony Cal., Inc.,* 211 Fed. App'x
938, 940 (Fed. Cir. 2007); *Amini Innovation Corp. v. Anthony Cal., Inc.*,
439 F.3d 1365, 1371-72 (Fed. Cir. 2006).

Appx0988-0989.   In addition, the Corinthian 16 and the D'966 patent share many of the design aesthetics Latham now invokes to argue against infringement: "a much cleaner look," "more in balance," "look very modern," "very straight edges, very sharp corners, very clean, modern, European-looking designs."   Resp. Br. 8-9.   In fact, the six shared major design elements are why the Corinthian 16 and the patented design look nearly identical.

The district court's finding that "the Corinthian 16 design is curved" shows that the court targeted individual elements instead of the overall designs.   By mischaracterizing the Corinthian 16 as "curved" and proceeding with an element-by-element comparison (as opposed to comparing the entire pools), the district court afforded too much weight to small features.   The court also overlooked Latham's expert's explanation that pools can have "focal points," understood in the context of the whole design.   Appx1396 ("Large access areas have a tendency to generate visual weight.").

Rather than confront the six major similarities and the district court's erroneous conclusion, Latham misapplies this Court's precedent. Latham places heavy reliance on *Ethicon Endo-Surgery, Inc. v. Covidien,*

*Inc.*, 796 F.3d 1312 (Fed. Cir. 2015), but fails to appreciate that decision's functional analysis. There, the patented design was to "a particular ornamental design of an inverted 'U'-shaped trigger" and "the particular ornamental design of a rounded and fluted torque knob positioned above and forward from the trigger." 726 F.3d at 1327. Critical to the Court's non-infringement affirmance was its view that, "because each of these components has a functional aspect, the underlying elements must be excluded from the scope of the design claims at this general conceptual level." *Id.* at 1336. Because the inverted trigger and the torque knob were primarily functional components, the differences in the ornamental features, such as the "unevenly tapered flutes," had a larger impact on how an ordinary observer would view the designs. *See id.* at 1336-37. Latham's response omits any mention of *Ethicon*'s ornamental-versus-functional distinctions.

*Ethicon* is further afield because, unlike here, the ornamental differences were the entireties of the claimed designs. The two claimed elements, the inverted trigger and a torque knob, had significant differences when compared to the accused product. In contrast to

*Ethicon*, Latham seeks to exploit minor differences of smaller features in a much larger pool design.

Latham also cites *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288 (Fed. Cir. 2010), but that case is similarly far different. *Richardson*'s outcome rests largely on functionality. As the district court explained: "[F]unctional necessity dictated the basic configuration of the Stepclaw's hammer-head, jaw, crow-bar, and handle." *Richardson v. Stanley Works, Inc.*, 610 F.Supp.2d 1046, 1053 (D. Ariz. 2009). Unlike there, Latham did not press any functionality-based argument on summary judgment, and the district court did not parse functional versus ornamental elements. Moreover, *Richardson* concerned a smaller hand-held tool in which nearly all design elements looked different—another key aspect absent here, given the six major, undisputed similarities and only four smaller, disputed differences.

Latham's other cases are equally inapplicable; they also involved much smaller products with many functional elements. *See, e.g.*, *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1342 (Fed. Cir. 2020) (affirming non-infringement where the patented design encompassed numerous functional elements, including the "conical tapered piece,"

"elongated body," "ferrule," "eraser," and "design's functional purpose as a writing utensil"); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1404 (Fed. Cir. 1997) (detailing the rocket football's multiple functional elements).

In a footnote, Latham oddly contends that *High Point Design* and *Gorham* "have little applicability here" based on the products at issue in those cases. Resp. Br. 50 n.7. To start, *High Point Design* was the district court's primary case cited in its summary-judgment decision. *See* Opening Br. 37-39. For Latham to now argue that *High Point Design* has "little applicability" suggests Latham's distancing itself from the district court's analysis.

Further, Latham's footnote incorrectly attempts to cabin cases based on the type of product at issue. It is a stretch to say that the Supreme Court's analysis has "little applicability here," simply because *Gorham* addressed silverware designs, as opposed to pool designs. The analytical framework does not change based on silverware, pools, or fuzzy slippers.

### C.    The Four Minor Differences Relied on By the District Court Do Not Support the "Sufficiently Distinct" Finding

As an initial point, any analysis of the individual design features must account for their relatively small size as compared to the overall size of the pools.  Both the Corinthian 16 and the Pinnacle pools are approximately 40 feet by 16 feet.  Appx0103.  A pool's large size (compared to the small design details) will naturally affect how an ordinary observer "will attach importance to differences" in the designs.  *Egyptian Goddess*, 543 F.3d at 677.

The district court identified only four slight differences (addressed below) between the Corinthian 16 and the patented design.  Two of the purported differences fully maintained the D'966 patent's use of rectangular shapes.  All four differences in the Corinthian 16's design maintained the same "modern," "balanced," "cleaner look."  Appx1170.  Importantly, the district court mischaracterized the Corinthian 16 as having "curved, rounded shapes." Appx0015.  Only two of its features contain a noticeable curved element, and even those (the entry steps and

deep-end benches) have linear, angular elements like the patented de-sign—and unlike the closest prior art.[3]

**Middle Steps.** The district court put heavy reliance on the pur-ported difference between the middle steps leading from the tanning ledge into the pool's shallow end. Appx0016-0017. But that issue was, at best, a factual dispute that should not have been resolved in Latham's favor at the summary-judgment stage.

The middle steps are nearly identical in each pool design. It is nearly impossible to observe any meaningful difference between the two sets of steps, when viewing the entire designs. *See* Resp. Br. 45. The district court nonetheless turned the purported differences into another factual basis for its "sufficiently distinct" conclusion, but without any clarification of where the boundary is for sufficient distinctiveness.

Moreover, David Pain, CEO of Leisure Pools,[4] explained how the miniscule differences in the middle steps made no meaningful difference.

---

[3] Latham's expert was "not aware of any earlier pool designs that incor-porate deep end benches that have the same aesthetic as the deep end benches of the North Star patents." Appx1174. This acknowledgement created another factual dispute.

[4] Leisure Pools sells the patented Pinnacle pool, and North Star is the patent owner.

*See* Appx1002-1007.  Based on his twenty years of industry experience, he was "unaware of any homeowners even recognizing or mentioning the Pinnacle's top step adjacent the ledge having a greater width than the second step."  Appx1006(¶18); Appx0641 (Inventor Kerry Pain: "There's no real reason for having that different."); Appx0645-0646(96:17-98:12); Appx0720 (Lesa Kidd testifying that no customer ever requested the steps to be the same width).

Moreover, Latham has not identified evidence establishing the steps' precise dimensions, which would enable a fair comparison. Appx0641(79:9-81:20); Appx1326; Appx0566-0567.  The imprecise testimony was insufficient for a finding, as a matter of law, that the minor difference in step-width was enough to avoid infringement.  Appx0016. A jury should have had the opportunity to make its own assessment.

**"Safety Ledge."**  Latham also attempts to make a mountain out of a molehill with the "safety ledge."  Both the patented design and Latham's Corinthian 16 pool have similar safety ledges, differing slightly in their respective positioning.  *See* Appx0023; Appx0768.

Neither the district court nor Latham addressed North Star's argument that the safety ledges are functional.  *See* Appx0997; Appx1006-

1007 (¶21).  As such, the ledges should not have much, if any, weight with

how an ordinary observer would compare the Corinthian 16 with the pa-

tented design.  As CEO David Pain explained, based on his two decades

of experience, the safety ledge is "a purely functional feature," and "the

vast majority of homeowners are not even aware of the ledge until the

pool shell is delivered and installed."  Appx1006-1007(¶21).

Nor is there any accounting for the safety ledges' submerged loca-

tion when the pools are in use.  Being underwater likely minimizes the

impact on the design's overall impression as seen by the ordinary ob-

server.  *See* Appx1389-1390 (Latham's expert explaining that the "turbu-

lence of the water" and "the reflection" impede his ability to discern pool

features); Appx1410(118:3-6); *cf. Contessa Food Prods., Inc. v. Conagra,

Inc.*, 282 F.3d 1370, 1381 (Fed. Cir. 2002) (ordinary-observer analysis

"must extend to all ornamental features visible during normal use").

Latham also claimed, without evidentiary support, that the ledges

were at a "very different height."  To be sure, the safety ledges are at

different heights.  *See* Appx0023; Appx0768.  But Latham's unsupported

mischaracterization of "very different heights" cannot support summary

judgment.  North Star expressly disputed "any significance of [the safety

ledge] attempted to be ascribed by Latham to the overall appearance of the pool." appx1328(¶¶33-34).

**"Entry Steps."**    One noticeable difference between the Corinthian 16 and the patented design is the difference between the entry steps.  But even this single minor difference does not warrant summary judgment when comparing the pool designs as a whole, and particularly when comparing the Corinthian 16 and patented designs to the prior-art pools.

Latham acknowledges that the Corinthian 16's entry steps are "tucked into the corners of the pool," Appx0546, making them less noticeable to the ordinary observer.  Because the entry steps are "tucked into the corners," an ordinary observer may not see the tucked-in steps as a meaningful difference when viewing the pool designs as a whole.  *See* Resp. Br. 35 (showing a perspective where entry steps are not very noticeable).

The minor difference in entry steps on the overall appearance is far less impactful as compared to other cases where infringement was reasonably found.  *See, e.g.*, *Braun*, 975 F.2d at 820; *Amini Innovation*, 211 Fed. App'x at 941.

Additionally, on appeal, Latham now contends that the tanning ledge is "not a complete rectangle," Resp. Br. 37, even though the district court did not agree with Latham, App0015-0016. "[T]he tanning ledge of Corinthian 16 would be viewed as rectangular by ordinary observers," as North Star explained. Appx1326. And as is clear from the images, the Corinthian 16's tanning ledge area has a readily identifiable rectangular shape. Latham's new contention also curiously contradicts the opinion of its own expert, who stated that the Corinthian 16 has a "rectangular tanning ledge." Appx1170.

**"Deep-End Benches."** A fourth purported "plainly dissimilar" feature was the deep-end bench. Appx0017. The parties again disputed whether an ordinary observer would view the deep-end benches as "rectangular." *See* Appx1327. Specifically, North Star expressly contended that the deep-end benches in the Corinthian 16 "would be considered rectangular by an ordinary observer." Appx1327(¶28).

A key piece of evidence overlooked by the district court was Latham's expert report, which offered an interpretation of "rectangular" that should have precluded summary judgment. *See* Appx1175-1176; Appx1179; Appx1403-1404. In the report, Latham's expert identified the

following prior-art pool as one that is "generally rectangular" and has a "generally rectangular full-width tanning ledge." Appx1175. As can be seen, the pool and the tanning ledge have notably rounded corners—noticeably more rounded than the Corinthian 16's deep-end benches.

 

Appx1175-1176. If Latham's expert believes that this pool has "generally rectangular" features based on its prominently rounded corners, then a reasonable juror could also conclude that the Corinthian 16's multiple features are generally rectangular. Based on Latham's expert's opinion of the above prior-art pool, the Corinthian 16's deep-end benches are "rectangular," with only one corner slightly rounded and another corner having an acute angle with the pool wall. And the absence of small steps on the Corinthian 16's deep-end benches does not detract from their generally rectangularly appearance.

## II.    Latham's Response Highlights Additional Factual Disputes That Should Have Precluded Summary Judgment

Additional evidence supports a reasonable jury's ability to find infringement. In almost every instance, however, the district court improperly found a reason not to credit the evidence. The court made inferences against the evidence's probative value—inferences that are impermissible at the summary-judgment stage.

### A.    The Extensive Testimony from North Star's Witnesses, Including Lesa Kidd, and Their Knowledge of Customer Preferences

The record had ample testimonial evidence from multiple witnesses demonstrating the likelihood of proving infringement or, at a minimum, the existence of material factual disputes. The witnesses' testimony was important, as some witnesses are the only ones with real-life experience with customers. The district court nonetheless failed to afford any weight to the testimonial evidence—a clear error at summary judgment.

One witness was Kerry Pain, the inventor of the D'966 patent. Appx0021. He explained that the patented design (as embodied in the Pinnacle and related pools) exhibited a "much cleaner look," was "going away from the free form style of pools in Australia," was an "elegant, streamlined design," and offered a "more balanced" look. Appx0626

(18:19-23); Appx0632(43:11-22); Appx0639-0640(73:5-74:21); Appx0646-0647(101:8-102:12).

All these design features and impressions could be used to support a finding of infringement. The Corinthian 16 certainly has a "much cleaner look," an "elegant, streamlined design," and a "more balanced" look, particularly when one compares the Corinthian 16 to Latham's older "free form style pools" and to the closest prior-art pools: the St. Thomas, Olympia, Barcelona, and Barrier Reef Outback.

The record also includes testimony from Lesa Kidd. Appx0703-0733. Kidd is Leisure's general manager of sales, and she has studied consumer demand and directly interacts with dealers and customers. Appx0704; Appx0727(100:10-17); Appx0729(107:15-108:25). She explained how customer demand centered on the "tanning ledge" of the Pinnacle pool. Appx0715. She further explained that there has been customer demand for modern designs, based on information coming from dealers and homeowners. Appx0718(64:18-23).

Kidd also explained how minor differences in smaller features were less important to consumers. Appx0723 (83:15-17) (Kidd: "Again, I don't think consumers spend a lot of time looking at a step. I think they're

looking at … the big thing.").  Additionally, while "a full-width step versus a step in the corner of a pool" "would create a different look slightly," she didn't "think consumers sit and look at a brochure and say, oh, wow, that's a step."  Appx0723(83:20-84:3).  Kidd explained that "they're looking at the tanning ledge or the spa or the big focal feature of that design."  Appx0723(83:20-84:3).

### B.    Boyer Mountain's Confusion with Latham's Accused Infringing Pool

Latham's response advances four points attempting to justify the district court's failure to consider the evidence of confusion.  None of the points has merit.

First, Latham goes all-in on the district court's "disregard" of the evidence of confusion.  Resp. Br. 53.  Latham claims that the district court was correct to completely disregard the confusion evidence, but Latham's response also disregards how this Court considers similar evidence of marketplace confusion.  In *Amini Innovation*, 211 Fed. App'x at 941, the patent owner had "offered testimonial evidence of actual confusion between the two pieces of furniture by an Amini sales representative."  *Id.* n.2.  "[U]nrebutted testimony of actual confusion," the Court explained,

"may be evidence from which a jury might reasonably conclude that an accused product meets the ordinary observer test." *Id.*[5]

Second, Latham oddly claims that "the district court properly *disregarded* the Instagram post . . . because it is not evidence." Resp. Br. 51 (emphasis added). To be clear, the Boyer Mountain Instagram post is certainly evidence. No party disputes its existence. Latham may dispute whether it is admissible, but the district court did not exclude it. Therefore, the Instagram post must be considered as indicative of infringement, consistent with this Court's precedent.

Third, Latham argues that the Instagram post has "little probative value," Resp. Br. 52, but factual evidence cannot be discounted at summary judgment. Latham wants this Court to weigh and discount the probative value of the Instagram post, but weighing evidence is not proper at summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

---

[5] The Court's reasoning in *Amini* directly refutes Latham's theory behind its contention that "the district court did not need to consider the Instagram post." Resp. Br. 50.

functions, not those of a judge." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))).[6]

Fourth, Latham complains that North Star did not present evidence that the consumer confusion (from the Instagram post) was due to the pool's ornamental features. *See* Resp. Br. 53. This point, like others, relies on the court's failure to make reasonable inferences in North Star's favor when ruling on Latham's motion for summary judgment. The question is not whether North Star, as the non-moving party, has proven consumer confusion with preponderant evidence. Instead, the question is whether a jury could reasonably infer consumer confusion based on the evidence presented at trial.

## C.    The Confusion of Latham's Expert Witness

The record also shows that Latham and its expert were confused between Latham's Corinthian 16 and the patented Pinnacle. As North Star explained to the district court, Latham had originally albeit mistakenly identified a photograph in one of its interrogatory responses as the

---

[6] Even Latham's heading—"The District Court Properly Drew Inferences"—highlights the district court's error on reasonable inferences. Resp. Br. 50. Had reasonable inferences been made in North Star's favor, the Instagram post is readily seen as evidence of infringement.

Corinthian 16, when in fact it was an altered image of North Star's Pinnacle. *See* Appx1008-1012; Appx1302-1303 (interrogatory response identifying documents relating to "the designs of the Accused Products," including the Corinthian 16); Appx1058-1059. Latham's interrogatory response referencing the photograph at issue was substantive evidence illustrating Latham's confusion between the appearances of its Corinthian 16 and the patented design.[7]

Latham's own expert believed that the photoshopped image was a "[p]hotograph[]" of the Corinthian 16 Pool." Appx1231(¶9); Appx1389-1390(34:13-41:25). Rare is the case when a defendant's expert makes such a telling mix-up, and that mix-up is highly probative of whether an ordinary observer would be similarly confused between the two pools. *See, e.g.*, *Gorham*, 81 U.S. at 528 ("[I]f the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

---

[7] If the two designs were, in fact, "plainly dissimilar" or "sufficiently distinct," no reasonable defendant would exhibit such confusion. At a minimum, Latham's pictorial confusion demonstrates another genuine dispute of material fact.

**CONFIDENTIAL MATERIAL OMITTED**

### D.    Latham's Development of Its Pool Coincides with Its Copying of North Star's Pinnacle Pool

Latham's response again relies on impermissible inferences and improper evidence weighing when it argues that Latham's development of its Corinthian 16 pool did not follow the development and sales of the patented Pinnacle pool.  *See* Resp. Br. 19-21.  Specifically, Latham contends that the evidence shows that the "features" in the Corinthian 16 "are based on the design and style of the Olympia."  *Id.* at 21.  But the testimony indicates that to be only partially accurate.

Michael Fox, Latham's 30(b)(6) witness, testified that Latham's Olympia pool has a " Research and Development ," Appx1028 (54:7-13), much like Latham's other older pools, *see* Appx0918-0922, and unlike the Corinthian 16.  Fox also explained how Latham developed the Corinthian 16 based on the " R & D [that was away from R&D ] to go towards a R&D R&D .  Appx1028(54:2-25); *id.*(56:1-11) (describing Latham's earlier Olympia pool as " R&D " and having "a R&D R&D , certainly," as compared to the Corinthian 16).

Latham's response about the development of the Corinthian 16 misses the point by relying on a single schematic allegedly from 2017.  *See* Resp. Br. 19-22.  North Star disputed that the 2017 date is correct,

as Latham's pool designer Thom Richards admitted that he sometimes modifies existing engineering drawings to create new pool designs "without changing the title block," which would contain an earlier date. Appx0845(115:20-23).

Regardless, even if someone at Latham created that single schematic in 2017, it was after Leisure's Pinnacle model went to market. The other evidence—including the June 2018 email exchange between Richards and Fox—confirms precisely what North Star contends: Once Boyer Mountain promoted Leisure's patented Pinnacle pool in 2018, Latham undertook a significant design pivot and accelerated the development of its "colorable imitation" of North Star's patented pool—and later sold it to Boyer Mountain at a ▮▮▮▮Pricing▮▮▮▮. *See* Appx1129-1134.[8]

In short, based on marketplace trends, Latham's witness Michael Fox acknowledged that Latham designed the Corinthian 16 to incorporate a full-width rectangular tanning ledge that was not in Latham's then-existing Olympia model, which, as Fox admitted, had "a ▮R&D▮

---

[8] Latham's 2017 schematic also shows that its earlier design is not the same as the Corinthian 16 that Latham later sold to compete with the patented Pinnacle. Appx1124-1127.

███████R&D███████," as compared to the Corinthian 16. *See* Appx1028 (56:1-11). From this testimony, a juror could reasonably infer that Latham redesigned its Olympia pool to be more like North Star's patented Pinnacle pool, with its modern, "balanced" appearance, and to be less like Latham's older "curved" pools.

### E.    A Reasonable Jury Could Reject the Flawed Analysis of Latham's Expert Witness

If the case is remanded for trial, this would not be one where the defendant has unrebutted expert testimony offering a valid theory of non-infringement. Here, a jury could rightfully reject Latham's flawed expert testimony.

Latham's expert summarized his approach as follows: "So all I'm doing is pointing out the differences between the vessels." Appx1394(54:4-6). But that is precisely what an expert should not do in a design-patent case. The infringement analysis must focus on the entire design; the analysis cannot be simply an exercise of "pointing out the differences." *See, e.g.*, *Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 859 (E.D. Va. 1998) (criticizing an expert's methodology of employing "a side-by-side comparison of the functional as well as nonfunctional differences between the two saws, instead of evaluating

the overall visual impression created by the ornamental features of each product standing alone").

\* \* \*

Ultimately, the parties hotly contest many material facts and the implication of the facts.  A reasonable jury could find that Latham's Corinthian 16 pool is "substantially the same" as, or a "colorable imitation" of, North Star's patented design.  *See, e.g., Amini Innovation*, 211 Fed. App'x at 941 (reversing summary judgment because providing "the '986 patent and photographs of the accused dresser" were "sufficient to raise a genuine issue of material fact as to whether an ordinary observer would be likely to purchase one dresser thinking it was the other").

In focusing on four relatively minor individual elements, the district court failed to compare the patented design's combination of six major design features also present in the Corinthian 16.  Latham's focus on plucking elements from separate prior-art pools, as an attempt to avoid infringement, is more akin to a veiled obviousness defense—which Latham did not press at summary judgment.

The major design elements are not "simply generic design concepts," as Latham contends.  When reasonable inferences are made in

North Star's favor—as they should have been—summary judgment should have been denied. Here, "conclusions about reasonable jurors are difficult to make on an issue of this factual dimension." *Amini Innovation*, 439 F.3d at 1371-72.

## III.    The Proper Comparison In View Of The Prior Art Illustrates Why A Jury Could Find Infringement

Comparing the D'966 patent, the Corinthian 16, and the closest prior-art pools further confirms why summary judgment was erroneous. A full comparison with the prior art—which the district court did not do—provides the most objective tool to ensure that the undefined "sufficiently distinct" label does not wrongfully deny a trial on a meritorious infringement claim. Given that Latham does not dispute that the Corinthian 16 looks much more like the D'966 design than to any of the closest prior-art designs, and that the Corinthian 16 incorporates the D'966 patent's combination of the six major design features, the facts here confirm the analytical value of the three-way comparison that this Court has countenanced in *Egyptian Goddess* and other cases.

### A. A Three-Way Comparison Provides the Necessary Prior-Art Frame of Reference

Latham disputes the need for a side-by-side comparison and contends that it is not required. Latham's position goes too far and overlooks the repeated use of a three-way comparison by this Court and numerous district courts.

First, the Federal Circuit has endorsed and used a three-way comparison when the patented design and accused infringing design are reasonably similar. While the Court may not have held that the three-way comparison is required in every instance, the weight of precedent—including *Egyptian Goddess*'s repeated emphasis of comparing the patented and accused designs "in the context of the prior art"—supports using the three-way comparison when the parties hotly contest the significance of small differences in the overall designs.

To be clear, the precedent does not precisely explain the "sufficiently distinct" standard and when the infringement analysis "will benefit from a comparison of the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678. The full Court seemed to suggest that the "sufficiently distinct" determination should be reserved for a minority of cases. *See id.* ("[i]n some instances"). And given the lack of

a reasonably objective "sufficiently distinct" standard, courts should reserve the entirely subjective "sufficiently distinct" approach to the clearest cases of non-infringement. Other than that minority of cases, a court should, as a default, follow this Court's guidance to use a three-way comparison so that a factfinder can reach a conclusion based on more than a subjective assessment.

For instance, in *Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363 (Fed. Cir. 2023), the Court quoted with approval the district court's three-way comparison of the patented design, accused design, and prior-art '949 design.



Columbia's D'093 patent            Seirus's HeatWave            '949 patent

*Id.* at 1370. "Comparison prior art can help highlight distinctions between the claimed and accused designs," the Court explained, and "such art can also cut the other way—*i.e.*, it can highlight similarities between the claimed and accused designs." *Id.* at 1377.

Similarly, in *Revision Military, Inc. v. Balboa Manufacturing Co.*, 700 F.3d 524 (Fed. Cir. 2012), this Court reversed and remanded when the district court refused to consider the prior art when determining whether to issue a preliminary injunction.  There, the Court identified the same "procedural" error that the district court committed in the present case:

> Although the district court stated the correct "overall design" standard, citing *Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010), the court focused on features that "stand out as dissimilar," reciting the shape and sizes of the lenses, the concavity of the nose bridge, and the venting along the top and bottoms.

*Id.* at 526-27.

Latham's conclusory response to *Revision Military* is telling.  Without any meaningful explanation, Latham asserts that any reliance on *Revision Military* is "misplaced" merely because, in Latham's view, the present case is not "close."  Resp. Br. 63.  But Latham's conclusory assertion overlooks the factual disputes rooted in the evidence and highlights a fundamental problem with overreliance on any "sufficiently distinct" conclusion, made without the proper prior-art context.  It provides no

objective (or even semi-objective) means to assess "sufficiently distinct."[9] Comparing the designs at issue to the prior art, side-by-side, offers a more objective, bounded paradigm for a factfinder to assess infringement.

For this reason, district courts have repeatedly employed the same analysis. *See, e.g.*, *Voltstar Techs., Inc. v. Amazon.com, Inc.*, No. 13-C-5570, 2014 WL 3725860, at *4 (N.D. Ill. July 28, 2014), *aff'd*, 599 Fed. App'x 385 (Fed. Cir. 2015)*; Fanimation, Inc. v. Dan's Fan City, Inc.*, No. 1:08-cv-1071-TWP-WGH, 2010 WL 5285304, at *3 (S.D. Ind. Dec. 16, 2010) (applying a three-way, side-by-side comparison because the design differences are "hotly contested" and "[i]t would be senseless" "to attempt to divine the significance of these differences without viewing the prior art"), *aff'd*, 444 Fed. App'x 449 (Fed. Cir. 2011).

### B.   A Full Prior-Art Comparison Shows How a Reasonable Jury Could Find Latham's Corinthian 16 To Be Substantially the Same as the Patented Design

Applying a side-by-side prior-art comparison here underscores how readily a reasonable jury could find infringement by the Corinthian 16. Latham declines to engage in or dispute any side-by-side comparison

---

[9] On this point, *Egyptian Goddess* mentions "sufficiently distinct" one time, without citation, and does not clarify how a court is to make that determination.  543 F.3d at 677.

with the prior art.  Resp. Br. 58.[10]  Its choice speaks volumes; the comparisons show how the Corinthian 16 is far more like the D'966 patented design than any prior-art pool.

When comparing the patented and accused designs to each of these prior-art pools, one must view the pools in their entireties to obtain the ordinary observer's proper frame of reference.  *See* Opening Br. 48-54.  An element-by-element comparison alone is not enough.  What matters is the overall appearance of the patented and accused designs as compared to the overall appearance of each prior-art pool.  The district court did not make any such comparison.  *See* Appx0019.  Instead, the court declared, without any citation to record evidence, that differences would be "important to the eye of a homeowner considering purchasing a swimming pool." *Id.*[11]

With the side-by-side comparisons, the impact of the six major common design features (of the Corinthian 16 and the D'966 patent) are contrasted with the starkly different prior-art designs.  The comparisons

---

[10] Latham does not dispute that the Olympia, St. Thomas, Barcelona, and Barrier Reef Outback are the closest prior-art designs. Resp. Br. 56-63.

[11] The district court's ruling did not consider Pain's testimony.  *See infra.*

speak for themselves: Latham's Corinthian 16 looks far more similar in overall appearance to the patented design than to any one of the prior-art pools. This side-by-side comparison is how an ordinary observer would view the designs when considering a purchase. It is this more objective comparison that allows a factfinder to assess—at least in close cases—whether a product is "substantially the same" or a "colorable imitation." It is a quintessential fact question for a jury.

Latham also goes to great pains to defend the district court's element-by-element focus, *e.g.*, with respect to the YouTube videos. There is no indication that the district court considered side-by-side comparisons of the Corinthian 16, the D'966 patented design, and any prior-art pool, including those in the YouTube videos. The court instead focused on individual design elements from various sources and then simply declared that differences are "important to the eye of a homeowner considering purchasing a swimming pool." Appx0019.

Finally, *Smith v. Whitman Saddle Co.*, 148 U.S. 674 (1893), does not help Latham. As this Court explained, the Supreme Court "invoked the ordinary observer test in which the observer was comparing the patented and accused designs in the context of similar designs found in the

prior art," *Egyptian Goddess*, 543 F.3d at 674.  That full, frame-of-reference comparison is what the district court should have done.

## IV.  The Court Improperly Excluded Mr. Pain's Testimony

Latham's response to the improper exclusion of David Pain's testimony does not cure the district court's error.  The court abused its discretion because Mr. Pain had sufficient personal knowledge of the facts included in this declaration, and his knowledge and testimony were permissible as lay witness testimony.  Mr. Pain's knowledge further establishes that a reasonable jury could reach a finding of infringement.

### A.   Pain's Extensive Personal Knowledge

First, Pain explained that he is "President/CEO" of Leisure Pools and has personally "been in the business of selling fiberglass pool shells for over twenty years."  Appx1002.  He also explained how "the business of designing and selling fiberglass pools is distinctly different than designing other types of pools such as concrete (commonly referred to as gunite pools) and vinyl pools."  Appx1003.

During his deposition, Pain further detailed that, in his role as CEO and president, he "oversee[s] the business in terms of its strategic direction, its financial performance, manufacturing styles, and operations of

the business." Appx1590.  In his CEO role, Pain is involved in the entire

company's sales.  Appx1592.  He noted how, until 2020 when he became

CEO, he was "assisting with the recruitment of dealers, talking to deal-

ers, [and] servicing dealers."  Appx1592.  Pain is still involved "in selling

the range of our products to our dealers" and "the range does include the

Pinnacle," which is the patented pool at issue here.  Appx1593.[12]

Despite his sworn testimony, the district court thought that Pain

lacked personal knowledge about North Star's Pinnacle pool.  Pain's di-

rect involvement with sales until 2020 should alone have been enough to

establish the foundation for the factual statements in this declaration.

*See* Appx1004-1007(¶¶ 15, 18-22).  The fact that Pain did not have direct

conversations with consumers is not a reason to strike his testimony flow-

ing from his personal, direct involvement with sales until at least 2020.

Furthermore, for purposes of admissibility, an officer of a company

is understood to have personal knowledge of the acts of the company.  *See,*

*e.g.*, *Fambrough v. Wal-Mart Stores, Inc.*, 611 Fed. App'x 322, 329-30 (6th

Cir. 2015) (non-precedential); *AGI Realty Serv. Grp., Inc. v. Red Robin*

---

[12] Latham cited Pain's deposition excerpts for the first time in its reply
but provided only ten out of about 140 transcript pages.  Appx1581-1596.

*Int'l, Inc.*, 81 F.3d 160, 163 (6th Cir. 1996) (non-precedential) ("Corporate officers are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment."); *WYCQ, Inc. v. Nat'l Music Mktg.*, No: 3:05-cv-0979, 2008 WL 56027, at *4 (M.D. Tenn. Jan. 3, 2008) (applying the rule to company president); *see also Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992) (holding that "ordinarily, officers would have personal knowledge of the acts of their corporations" sufficient to satisfy Rule 56's personal-knowledge requirement).

Thus, beyond his personal experience with the patented Pinnacle pool, Pain as CEO is deemed to have personal knowledge of North Star's interactions with the customers. As CEO, his testimony about the company's interactions with its dealers and customers were admissible and should have been considered. *See, e.g., Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 191-92 (S.D.N.Y. 1999) (denying motion to strike in a design-patent case because "[p]ersonal knowledge may be inferred from the affidavit itself").

## B.    Pain's Lay Witness Opinion

On the opinion-testimony position, Latham tries to have it both ways by claiming that Pain's testimony is "beyond that of the average lay person" and based on his years of experience in the field.  Latham's internally inconsistent response should be rejected.  Pain can provide a customer-based perspective about the pool's appearance.

## C.    The Error is Not Harmless

Finally, this is not harmless error.  As explained throughout this brief, Pain's testimony provides concrete, specific evidence based on his twenty years of experience in the pool industry.  His testimony is far from conclusory, as Latham now contends.  Latham should of course be free to challenge Pain's experience and knowledge on cross-examination, but a jury should also be permitted to independently weigh the testimony.

## V.    Conclusion

For the foregoing reasons, the district court's decisions should be reversed, and the case should be remanded to proceed to trial.[13]

---

[13] Contrary to Latham's contention, Resp. Br. 2, 5 n.1, North Star has not "attacked" "Latham's character" and has not made "accusations of misconduct."  North Star's opening brief provided a purely factual recitation, in contrast to Latham's fact statement that included multiple arguments. *Id.* at 9 ("plainly dissimilar"), 19 ("irrelevant"), 20 ("North Star's attorney

Date: March 8, 2024

Respectfully submitted,

By: */s/ Perry J. Saidman*
Perry J. Saidman

Wade R. Orr
Michael J. Bradford
Luedeka Neely Group, P.C.
900 S. Gay Street, Suite 1504
Knoxville, Tennessee 37902
worr@luedeka.com

Perry Saidman, LLC
3 Island Ave.
Suite 8i
Miami Beach, FL 33139
(202) 236-0753
ps@perrysaidman.com

Matthew J. Dowd
Robert J. Scheffel
Dowd Scheffel PLLC
1717 Pennsylvania Avenue, NW
Suite 1025
Washington, D.C. 20006
(202) 559-9175
mdowd@dowdscheffel.com
rscheffel@dowdscheffel.com

---

argument lacks evidence and merit"). These contentions highlight the
underlying factual disputes.

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** 2023-2138

**Short Case Caption:** North Star Technology International Ltd. v. Latham Pool Products, Inc.

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,998 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 03/08/2024

Signature: /s/ Perry Saidman

Name: Perry Saidman

**FORM 31. Certificate of Confidential Material**

Form 31
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2023-2138

**Short Case Caption:** North Star Technology International Ltd. v. Latham Pool Products, Inc.

---

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).

- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

---

The foregoing document contains ___11___ number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 03/08/2024

Signature: /s/ Perry Saidman

Name: Perry Saidman